Brewster S. Rawls
Glen H. Sturtevant Jr.
Melissa D. Kouri
Rawls Law Group, P.C.
211 Rocketts Way, Suite 100
Richmond, VA 23231
Virginia State Bar No. 23604
Virginia State Bar No. 73458
Virginia State Bar No. 99425
brawls@rawlslawgroup.com
gsturtevant@rawlslawgroup.com
mkouri@rawlslawgroup.com
(804) 344-0038 – Telephone
(804) 782-0133 – Facsimile

James C. Frogale
Frogale Law
5250 Cherokee Avenue, Suite 306
Alexandria, VA 22312
Virginia State Bar No. 79600
james@frogalelaw.com
(703) 488-7140 – Telephone
(703) 810-7679 – Facsimile

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brittany Crosby and David Crosby, on behalf of themselves and on behalf of their minor child P.C.,<br><br>               Plaintiffs,<br><br>v.<br><br>United States of America,<br><br>               Defendant. | No. 2:24-cv-03307-DJH<br><br><br><br><br><br>**AMENDED COMPLAINT** |

# I. <u>INTRODUCTION</u>

Plaintiffs Brittany and David Crosby, on behalf of themselves and on behalf of their minor child, P.C., by counsel, state as follows for their Amended Complaint against Defendant United States of America:

# II. <u>JURISDICTION, VENUE, AND PARTIES</u>

1.      This action arises under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq. This Court is vested with jurisdiction to adjudicate this dispute pursuant to 28 U.S.C. § 1346(b).

2.      This is a civil action against the United States of America under the FTCA, 28 U.S.C. § 2671 et seq. and 28 U.S.C. § 1346(b)(1), for negligent hiring, training, retention, and supervision, and for negligently allowing child abuse and neglect to occur at the Child Development Center at the Marine Corps Air Station ("MCAS CDC"), BLDG 1085, MCAS, Yuma, AZ 85365.

3.      All acts and omissions alleged against the United States occurred within the jurisdiction of this Court.

4.      Causes of action against Defendant are based on common law tort applicable through the FTCA.

5.      The underlying conduct in question meets the medical and legal criteria for physical and mental child abuse and neglect, including but not limited to, as defined by the Navy Child and Youth Programs Child Development Operating Manual Child Abuse Prevention, Education, and Reporting Standards (CAPER), dated April 2016; the Family Advocacy Program (FAP) in accordance with Department of the Navy

Instruction (OPNAVINST) 1752.2C p. 18-2, and The Navy Family Advocacy Program, dated 20 September 2020; OPNAVINST p. 3-1, Navy Child and Youth Programs (CYP), dated July 2021; and Department of Defense Instruction (DODI) 6400.01, Navy Family Advocacy Program, dated 20 May 2020. Plaintiffs on behalf of their son, P.C., a minor, assert causes of action for negligence, including but not limited to, negligent hiring, training, supervision, and retention, and for negligently allowing child abuse and neglect to occur and to be inflicted upon P.C.

6.     In compliance with 28 U.S.C. § 2675, Plaintiffs filed administrative tort claims with the Department of the Navy, which are attached as **Exhibit A**, on February 13, 2023.

7.     The Department of the Navy denied these claims on October 13, 2023. On March 15, 2024, Plaintiffs requested reconsideration of the denials from the Department of the Navy. On July 8, 2024, the Department of the Navy denied these claims a second time.

8.     Plaintiffs' original complaint was filed on November 26, 2024.

9.     Accordingly, Plaintiffs' causes of action are ripe to be litigated in this Court pursuant to 28 U.S.C. § 2675(a).

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1402(b) because the causes of action at issue in this case arose at the MCAS CDC, BLDG 1085, MCAS, Yuma, AZ 85365.

11.     At all times relevant to this action, the United States owned and operated the MCAS CDC and its affiliated premises.

12.    At all times relevant to this action, the agents, servants, employees, and personnel of the United States were acting within the course and scope of their employment in providing childcare to P.C.

13.    Plaintiff David Crosby was a member of the United States Armed Forces at the time of the events at issue and thus was entitled to childcare services at the MCAS Yuma CDC.

14.    The care described as follows was provided at the MCAS Yuma CDC unless otherwise stated.

### III. COMPLIANCE WITH THE FEDERAL TORT CLAIMS ACT

15.    Plaintiffs Brittany and David Crosby, on behalf of themselves and on behalf of their minor son, P.C., have fully complied with the provisions of 28 U.S.C. § 2675 of the FTCA. The FTCA's general waiver of immunity does not immunize the Government from liability for claims of direct negligence, i.e., claims that involve negligent hiring, training, retaining, and/or supervising of an employee. *Sheridan v. United States*, 487 U.S. 392, 409 (1988), *citing United States v. Muniz*, 374 U.S. 150 (1963) (holding that "a prisoner who was assaulted by other inmates could recover damages from the United States because prison officials were negligent in failing to prevent the assault that caused his injury"); *see Gatling v. United States*, 2016 U.S.Dist.LEXIS 86635, at *19 (D.Ariz 2016) (noting that "the Ninth Circuit has read *Sheridan* broadly, holding that a plaintiff may bring negligence claims rooted in the duty to prevent an employee's foreseeable intentional tort"); *Brock v. United States,* 64 F.3d 1421, 1425 (9th Cir. 1995)  (holding that the assault and battery exception to the

4

FTCA did not bar a claim of negligent supervision regarding a federal employee who raped another female employee during overnight field outings while in shared accommodations); *Morrill v. United States*, 821 F.2d 1426, 1427 (9th Cir. 1987) (holding that the "assault and battery" exception did not preclude U.S. government liability where the Navy hired a go-go dancer to perform in a club for enlisted men on an airbase but failed to provide adequate supervision and the dancer was raped in the women's bathroom); *Kearney v. United States*, 815 F.2d 535, 537 (9th Cir.1987) (holding that the "assault and battery" exception did not preclude U.S. government liability under the FTCA for negligent supervision where an army officer being held for rape was released by another government employee in violation of military regulations and subsequently murdered the plaintiff's wife); *Bennett v. United States,* 803 F.2d 1503,1505 (9th Cir. 1986) (holding that the government was liable under the FTCA for negligent hiring and supervision of a teacher that kidnapped and raped several children at the school where he taught).

## IV. <u>THE DISCRETIONARY FUNCTION EXCEPTION</u>

16.    The "discretionary function" exception to federal tort claim liability grants immunity for government choices that encompass political, social, economic, or public policy judgments in an agency exercising its regulatory function. *See e.g., Berkovitz v. United States*, 486 U.S. 531 (1988). However, as conduct cannot be discretionary unless it involves an element of judgment or choice, the discretionary function exception does not apply where the conduct is based upon violation or disregard of a mandate or directive. *See Berkovitz*, supra, 486 U.S. at 544.

MCAS Yuma CDC staff violated and/or disregarded several specific mandatory duties and policies. The mandatory directives required of MCAS Yuma CDC staff Plaintiffs have identified thus far as having been violated or disregarded by staff include but are not limited to:

**Navy CDC Operating Manual for Child Abuse Prevention, Education, and Reporting (CAPER) Standards for CDCs**

- "All CYP Professionals not only have an ethical and professional responsibility to carry out these duties, but they also have a legal mandate to report child abuse and neglect they suspect by caregivers, either in the home or within the Child Development Center (CDC) program."

- "Prevention refers to the safeguards put into place to minimize the risk of harm and maximize CYP's protective capacity for all children in care. In these Standards, prevention focuses on making the CYP environment safe and nurturing for all children and includes ensuring safe physical spaces and supervision through proper staff: child ratios and strict Line of Sight Supervision (LOSS) policies."

- "Prevention also involves ensuring positive, nurturing, and developmentally appropriate interactions between children and staff."

- "Grabbing a child who is about to run in front of a friend on the swings is contextually different from grabbing child who is not listening to instructions."

- "Note: All employees, contractors or volunteers of the CDC are considered as *acting in a caregiver role* since that is the purpose of the CDC program."

- "Monitor (e.g., via daily classroom visits and observations) CDC Professionals' activities, interactions, and decision-making processes to continuously assess and communicate with the CDC Professional about his/her strengths, areas for improvement, and potential training refreshers or needs, and to ensure that quality assurance practices are in effect."

- "Conduct regularly scheduled and ad hoc observations of all CDC Professionals in day-to-day activities and provide support, coaching, and other guidance."

- "Engage in developmentally appropriate interactions with children and maintain the physical environment (e.g., accountability, supervision, visibility) in accordance with CYP policies and procedures to promote a safe and healthy environment."

- "Each CDC Professional must take personal responsibility for children under CDC care through the routine use of systematic procedures and through implementation of a team-based approach to supervision."

- "The following types of interactions are considered inappropriate and are prohibited at all times . . . Bodily harm from forceful pulling/jerking and/or 'grabbing' a child from any position."

- "Inappropriate touch is physical contact that does not respect the child's personal space and is negative in context."

**DoDI 6060.02**

- "Staff do not use corporal punishment or other negative discipline methods that hurt, humiliate, or frighten children."

- "Children can be observed at all times by parents and supervisors."

- "There is visual access into and throughout activity rooms used for care, including nap time. Closed-circuit television, vision panels, and convex mirrors are used as necessary to facilitate visual access."

**Navy Child and Youth Programs (CYP) Local Child Abuse Reporting Procedure**

- "It is Navy policy to provide comprehensive and coordinated programs to promote early identification, intervention, and prevention of child maltreatment."

**Chief of Naval Operations Instruction OPNAVINST 1700.9E**

- "It is Navy policy to provide comprehensive and coordinated programs to prevent child abuse and promote early identification in cases of alleged abuse."

- "CCTV cameras shall not substitute for oversight . . . ."

- "As a general rule, CYP videotapes should be maintained for a period of not longer than 30 days. This provides a reasonable period of time for CYP staff to review the tapes for any internal business."

**Marine Corps Order (MCO) P1710.30E**

- "A written touch, discipline and guidance policy shall be provided to all parents and staff. This policy shall prohibit the use of corporal punishment, shaming, or other humiliating methods of discipline . . . ."

- "Closed circuit monitoring systems shall be in each activity room and monitors will be placed in an area where constant monitoring is available."

- "There will be no draperies, blinds or paperwork, which obstructs the view from the interior halls or passageways."

- "Children shall be supervised at all times."

- "All programs, regardless of setting, shall be operated and maintained to provide comprehensive programs to prevent child abuse . . . ."

**Navy CYP Parent Handbook.**

- "CY programs undergo rigorous daily, monthly, and annual inspections to include: Daily inspections of the facilities and grounds conducted by CYP professionals."

- "CYP professionals are trained to respect the personal privacy and space of others and use appropriate touching with all children and youth."

- "Inappropriate touching is not allowed in CYP settings by any individuals."

*See also*, Navy Family Advocacy Program (OPNAVINST) Instruction 1752.2C, 1–2, paras. 4-5.h; FAP 1752.2C, 2–2, paras. 2.b-c.(4); OPNAVINST 1752.2C, 2–8, para. 4(a); 1752.2C, 3–4, para. 3.a.; 1752.2C, 3–9, para. 7.a(3); 1752.2C, 6–1, paras. 1(a)-

4; 1752.2C, 6–2, paras. 6-7; FAP 1752.2C, 8–1, paras. 1-4; Department of Defense Instruction (DODI) 6060.02, Enclosure 3, paras. 6.a.(1), (referenced Table 1 requirements for standards of operation of CDCs), and Table 1, I (CDC); DODI 6060.02, Enclosure 3, Table 3, Background Check/Child Abuse Prevention – (BAC 02), and Training Requirements – (TRG 04); Chief of Naval Operations Instruction OPNAVINST 1700.9E, 15–8, 15-9, 15-12, 16-1, paras. 3.c, 5.a., 5.b., 5.c., 1.a., 2.a.– 3.f, and Table 16-1 requirements for background checks; DODI 6400.01, paras. 1.2, 2.4, 3.3; CYP OPNAVINST P1710.30E, paras. 2001, 2003.1, 2004.1-3, 4004.1-2, 4008.1, 4008.4, 4008.1, 4008.6, and Table 4–1; Navy CDC Operating Manual for Child Abuse Prevention, Education, and Reporting (CAPER) Standards for CDCs, paras. 1.2.3, 1.3.1, 1.4, 1.4.1, 2.2, 2.2.1, 2.2.2, 3.1.1, 4.1.1, 4.1.4, 4.2.1, 4.2.2, 5.2.1, 5.2.2, 5.3.2, 6.1.2, 6.2.1, 6.2.2; and Navy Child and Youth Programs (CYP) Local Child Abuse Reporting Procedure, para. 3. The Marine Corps Community Services (MCCS) Employee Handbook instructs that "safety is the responsibility of all employees. Any unsafe condition or injury, no matter how slight, must be reported to your supervisor immediately;" DODI 6060.02, Enclosure 3, Table 1, H (CDC only); Marine Corps Order (MCO) P1710.30E, paras. 2003.7, 2003.8, 2003.13; Navy CDC Operating Manual for Child Abuse Prevention, Education, and Reporting (CAPER) Standards, paras. 2.1, and 2.1.2. Further, the MCCS Employee Handbook contains the Audio and Closed-Circuit Television (CCTV) Recording Policy, stating that "CCTV recording is utilized at the [CDC]" serving as "protection of children." *See* OPNAVINST 1700.9E, 15-9, paras. 4(b), and 4(c). Parents are informed in the Navy CYP Parent Handbook

that the use of CCTV "[S]erve[s] as a significant child abuse deterrent and prevention mechanism for individuals working in the CYP."

17.    As alleged, in its operation of military childcare centers, the Government stands in loco parentis and with a "special relationship" relative to the minor children, including Plaintiffs' minor child, entrusted to its care.

18.    Defendant had a duty to provide a safe and nurturing environment, both physically and mentally, including protection from abuse and neglect while under its care at MCAS CDC, which was a facility secured and monitored for this purpose.

19.    Plaintiffs had the right to, and were reasonable in relying on, Defendant to meet that duty as stated.

## V. <u>GENERAL ALLEGATIONS</u>

20.    Plaintiffs incorporate by reference each of the allegations in the preceding paragraphs of this Amended Complaint as though fully set forth herein.

21.    Plaintiffs David and Brittany Crosby entrusted the care of their son, P.C., to the MCAS Yuma CDC for daycare purposes from 2020 through March 2, 2021. Throughout this time, P.C. was between the ages of a few months and two years old

22.    Plaintiffs signed an agreement with MCAS Yuma CDC, attached as **Exhibit B**.

23.    The events at issue took place in the MCAS Yuma CDC "Tiny Tots" room for children up  to two years old. At all times while P.C. was under the care of the CDC, the Tiny Tots room remained supervised by more than one CDC staff member at a time, under video surveillance, and openly visible to supervisors and outside staff

members through windows surrounding the childcare area. Navy and Marine Corps Child Development Center Facilities Criteria FC 4-740-14N, 5-2.3 Layout.

24.     Law enforcement developed a police report based on video footage recorded over 90 days on six different security cameras on MCAS Yuma CDC premises in the Tiny Tots area. All footage dating further than 90 days prior to law enforcement being called on March 2, 2021, had been erased. The police report recounts at least twenty-nine instances of P.C. being subject to abuse and neglect while under the care of CDC staff.

25.     Among other instances, the police report recounts concerning behavior toward P.C. from one provider, Valerie McKinstry ("McKinstry") on February 22, 2021. First, she aggressively pushed P.C. to force him to sit down and then struck him. Later the same morning, the behavior became more severe. The police report recounts that McKinstry approached P.C. while he was seated for snack time. She then "shoved the cup towards [P.C.'s] face […] forced [his] head backwards, and […] forced the cup in his mouth." She further proceeded to "tilt the contents of the cup into the child's mouth." Notably, the police report recounts that immediately afterwards P.C. appeared "stunned for a moment, and he did not move for approximately 5 seconds." No other CDC staff intervened or reported this event.

26.     On February 23, 2021, the police report recounts that McKinstry handled P.C. roughly while changing his diaper. In doing so, she manipulated his legs in an unnecessarily aggressive fashion, bending his knees and jerking his arm above his head

on the changing table and causing his own hand to strike him in the face. Another staff member witnessed the behavior without intervening or reporting it.

27.     The police report demonstrates that this behavior continued to escalate, reaching its peak on March 2, 2021.The video recording shows that McKinstry jerked and pulled P.C. by his underarms to maneuver him across the room at several instances, after which P.C. cried and grabbed his own arm where he had been handled, displaying signs of physical pain. Later, when handling P.C. by the sink, presumably while he was attempting to wash and dry his hands, McKinstry forcibly held the child's head under the sink faucet for several seconds. The report described the action as "duck[ing] his head under the faucet with running water and rub[bing] his head back and forth a few times." No CDC staff intervened to stop or address this behavior.

28.     Later that same morning, while P.C. was sitting up with his legs over the edge of his cot, presumably during nap time, McKinstry appeared to become frustrated that the child was not asleep. In response, she grabbed his arms and "push[ed] his upper body down face first into the cot […] and plac[ed] his legs on the cot with some force." She then placed his blanket on top of his body and head and began "smacking" his back repeatedly, "raising her hand approximately one foot from his back and bringing it back down approximately 12-13 times," appearing to use "the heel of her palm." This repeated motion continued for some time, with the police report describing the motion as being performed "from a higher-than-normal height and at a faster frequency than normal when comforting a child." No other CDC staff intervened to stop or address this behavior.

13

29.    McKinstry was again recorded later that same day aggressively dragging P.C. across the room to his chair, lifting him off the ground, "forcefully" placing him in the chair, and "forcefully" pushing the chair into the table causing the table to jostle, after which P.C. appeared visibly uncomfortable. The police report describes her movements as "jerky and harsh." Another CDC staff member observed the behavior without interfering. P.C. continued to be subject to abuse and neglect from McKinstry without interference until law enforcement arrived at the CDC facility on the afternoon of March 2.

30.    On March 2, 2021, after months of ongoing abuse and neglect against several different children in the Tiny Tots program, law enforcement arrived at the MCAS Yuma CDC, responding to a report from CDC director Laura Frank ("Frank") of abuse and neglect she observed McKinstry carry out. Throughout the months leading up to this report, Frank had an open view of the childcare area from her office, which overlooked the area and all surrounding classrooms. Navy and Marine Corps Child Development Center Facilities Criteria FC 4-740-14N, 5-2.3 Layout.

31.    Law enforcement initiated a review of video footage recorded over the previous 90 days on six different security cameras on MCAS Yuma CDC premises in the Tiny Tots area, The police report resulting from this review recounts at least twenty-nine instances of P.C. being subject to abuse and neglect while under the care of CDC staff over those 90 days leading up to Frank's reporting the incidents to law enforcement on March 2, 2021.

14

32.    In the days following March 2, 2021, Family Advocate Personnel informed Plaintiffs that their son P.C. had been the victim of abuse and neglect by the CDC staff while under CDC supervision. However, the CDC provided minimal information regarding the neglect and abuse to the Crosby family. Plaintiffs were told that video footage existed dating back only 90 days prior to March 2, but the family was not able to view the recordings independently for some time.

33.    As a result of the prolonged abuse and neglect he endured while under the care of the MCAS Yuma CDC, P.C. developed behavioral issues and stunted emotional growth. He began displaying new behaviors including self-injury, screaming, and elopement.

34.    As a result of the abuse and neglect P.C. endured while under the care of the MCAS Yuma CDC, P.C.'s relationship with his parents has been significantly altered, depriving them of companionship, comfort, love, and society otherwise expected. Accordingly, Plaintiffs David Crosby and Brittany Crosby have suffered damages.

35.    The Crosby family has and is expected to continue to incur significant medical expenses to address and treat the psychological impact of the prolonged trauma P.C. suffered at the MCAS Yuma CDC.

36.    P.C.'s new behavioral, developmental, and mental health issues, along with the associated damages to his relationship with his parents, are the direct and proximate result of the negligent care provided to him by his childcare providers at the MCAS Yuma CDC.

# FIRST CLAIM FOR RELIEF
## (NEGLIGENCE)

37.    Defendant owed Plaintiffs a duty of care to provide a safe and nurturing environment for P.C. at MCAS CDC.

38.    To ensure that this duty was being met, the Daycare was required to have a manager/supervisor on site to provide oversight during the program operating hours.

39.    The Daycare had a duty to ensure that rooms occupied by children such as P.C. were equipped with closed-circuit television systems that were appropriately monitored by management-level staff during the Daycare's hours of operation.

40.    The Daycare failed to provide regular and continuous monitoring of the closed-circuit television cameras to ensure that its staff was protecting children, such as P.C., from abuse, neglect, and harm.

41.    The United States had a duty under directives discussed above as well as applicable law, including but not limited to Ariz. Rev. Stat. § 13-3623 and Ariz. Rev. Stat. § 13-3620, to monitor the health, safety, and well-being of children in licensed childcare facilities and to regulate, establish and enforce rules and regulations to protect children from harm.

42.    The United States had a duty under applicable Arizona common law to protect P.C. from foreseeable harm.

43.    The United States breached its duty in several respects as follows:

a.   Defendant failed to hire qualified staff.

16

b.  Defendant failed to train its staff on how to properly and timely identify, recognize, and report child abuse and neglect.

c.  Defendant failed to train its staff on how to provide appropriate care for children, such as P.C., and to protect such children from abuse and neglect.

d.  Defendant failed to supervise staff, namely Valerie McKinstry and Laura Frank.

e.  Defendant failed to intervene or otherwise remove staff to prevent harm to P.C.

f.  Defendant failed to remove Laura Frank and Valerie McKinstry, who each failed to ensure that P.C. was not subjected to abuse, neglect, and harm.

g.  Defendant failed to implement a system to ensure that all children were properly supervised and protected from abuse and neglect.

h.  Defendant failed to operate in a manner that was designed to minimize the risk of abuse and neglect to children.

i.  Defendant failed to protect P.C., a minor, from abuse and neglect while at MCAS CDC.

j.  Defendant failed to timely report abuse and neglect of P.C. at MCAS CDC.

k.  Defendant failed to enforce its policies and procedures for operating MCAS CDC.

l.  Defendant failed to exercise reasonable care and acted in a negligent manner by failing to have appropriately trained employees review live and recorded

video feeds from each classroom on a regular basis to detect abuse and neglect within the Daycare.

m. Defendant failed to ensure that McKinstry and Frank were adequately trained in appropriate touch policy and procedures, child safety, and other areas to prevent harm to P.C.

n. Defendant allowed misconduct of its employees to persist for months before incidents were reported to administrators and authorities as required by law.

44. Defendant's breach of duty was the proximate cause of P.C.'s physical and emotional injuries and damages.

45. Defendant's breach of duty further constituted a violation of Defendant's own policy and applicable rules and statutes regarding provision of childcare and reporting of neglect and abuse of children, specifically P.C.

46. Plaintiffs were damaged in an amount to be proven at trial.

47. WHEREFORE, Plaintiffs claim the following damages, individually and on behalf of their minor son P.C.:

a. All such damages that will reasonably and fairly compensate Plaintiffs individually and on behalf of their minor son P.C. for each of the available elements of damages proved by the evidence to have resulted from the fault of Defendant;

b. For compensatory damages in a reasonable and appropriate amount, and all available economic and non-economic damages;

c.  Economic losses, including lost earnings, financial support, and future household services and emotional support;

d.  Compensation for pain, suffering, discomfort, disfigurement, sorrow, emotional distress, mental anguish, and anxiety already experienced, and reasonably probable to be incurred in the future;

e.  Loss of love, care, affection, companionship, and other pleasures of the parent-child relationship;

f.  Loss of enjoyment of life, that is, the participation in life's activities to the quality and extent normally enjoyed before the injury;

g.  For reimbursement for past and future medical care and other services necessitated by Defendant's negligence and other wrongful conduct; and

h.  For such further relief as the Court deems appropriate.

## SECOND CLAIM FOR RELIEF
### (NEGLIGENT HIRING)

48.  Plaintiffs incorporate by reference each of the allegations in the preceding paragraphs of this Amended Complaint as though fully set forth herein.

49.  Defendant owed Plaintiffs a duty of care to provide a safe and nurturing environment for P.C. at MCAS CDC. Defendant has failed to uphold numerous mandatory duties as outlined above.

50.  Defendant owed a non-delegable and continuing duty to Plaintiffs, P.C., and the general public to reasonably, carefully, and conscientiously secure the services of qualified employees, and to reasonably hire employees and agents to ensure, *inter*

19

*alia*, that such employees and agents performed on behalf of Defendant in a reasonably prudent manner and in a manner that complied with applicable law, policies, procedures, and standards of care.

51.    Defendant, pledging to provide a safe and nourishing environment as a caregiver, stood in a position of trust with Plaintiffs, who reasonably relied on Defendant's representation of its mission.

52.    Defendant knew or should have known that Laura Frank, Valerie McKinstry, and other agents and employees of Defendant, were incompetent and/or unfit to perform the work of providing childcare services to children such as P.C., as demonstrated by the existence of video recordings of numerous acts of abuse and neglect within Defendant's possession at the time of the investigation by authorities.

53.    Defendant knew or should have known that childcare providers were unfit, and child abuse was occurring in light of the policies and procedures outlined herein.

54.    Defendant breached its duty to Plaintiffs by failing to prevent such abuse through appropriate hiring and to inform authorities and P.C.'s parents of known abuse and neglect in a timely manner.

55.    Defendant knew or should have known that such individuals were not appropriate candidates or adequately trained in providing safe childcare services to children; Defendant knew or should have known that it failed to provide reasonably competent training and to verify the competencies of such individuals.

56.    Defendant knew or should have known that it employed incompetent agents and employees and that its failure to reasonably and carefully hire, employ, train, and supervise its staff would lead to children entrusted to its care, including P.C., sustaining serious injuries.

57.    As a direct and proximate cause of Defendant's unreasonable and otherwise negligent actions, inactions, and decisions in hiring, training, retaining, and supervising its agents and employees, P.C. suffered injuries, including but not limited to actual physical injury and emotional injury manifested by P.C.'s behavioral changes.

58.    WHEREFORE, Plaintiffs claim the following damages, individually and on behalf of their minor son P.C.:

a.  All such damages that will reasonably and fairly compensate Plaintiffs individually and on behalf of their minor son P.C. for each of the available elements of damages proved by the evidence to have resulted from the fault of Defendant;

b.  For compensatory damages in a reasonable and appropriate amount, and all available economic and non-economic damages;

c.  Economic losses, including lost earnings, financial support, and future household services and emotional support;

d.  Compensation for pain, suffering, discomfort, disfigurement, sorrow, emotional distress, mental anguish, and anxiety already experienced, and reasonably probable to be incurred in the future;

e.  Loss of love, care, affection, companionship, and other pleasures of the parent-child relationship;

f.  Loss of enjoyment of life, that is, the participation in life's activities to the quality and extent normally enjoyed before the injury;

g.  For reimbursement for past and future medical care and other services necessitated by Defendant's negligence and other wrongful conduct; and

h.  For such further relief as the Court deems appropriate.

### THIRD CLAIM FOR RELIEF
### (NEGLIGENT TRAINING)

59.  Plaintiffs incorporate by reference each of the allegations in the preceding paragraphs of this Amended Complaint as though fully set forth herein.

60.  Defendant owed Plaintiffs a duty of care to provide a safe and nurturing environment for P.C. at MCAS CDC. Defendant failed to uphold numerous mandatory duties outlined above.

61.  Defendant owed Plaintiffs a duty of care to train employees at MCAS CDC to perform services in a manner that would provide a safe and nurturing environment, including training on proper interaction with children and proper interventions to promote the safety and well-being of P.C.

62.  Defendant breached said duty by failing to provide sufficient training to its employees.

63.  The conduct as alleged herein were foreseeable acts directly related to inadequate training as described above.

64.    Defendant knew or should have known that inadequate training would pose a risk of harm to P.C.

65.    Defendant's breach of duty was the proximate cause of Plaintiffs' injuries.

66.    Plaintiffs have been damaged in an amount to be proven at trial.

67.    WHEREFORE, Plaintiffs claim the following damages, individually and on behalf of their minor son P.C.:

a.  All such damages that will reasonably and fairly compensate Plaintiffs individually and on behalf of their minor son P.C. for each of the available elements of damages proved by the evidence to have resulted from the fault of Defendant;

b.  For compensatory damages in a reasonable and appropriate amount, and all available economic and non-economic damages;

c.  Economic losses, including lost earnings, financial support, and future household services and emotional support;

d.  Compensation for pain, suffering, discomfort, disfigurement, sorrow, emotional distress, mental anguish, and anxiety already experienced, and reasonably probable to be incurred in the future;

e.  Loss of love, care, affection, companionship, and other pleasures of the parent-child relationship;

f.  Loss of enjoyment of life, that is, the participation in life's activities to the quality and extent normally enjoyed before the injury;

g.  For reimbursement for past and future medical care and other services necessitated by Defendant's negligence and other wrongful conduct; and

h.  For such further relief as the Court deems appropriate.

## FOURTH CLAIM FOR RELIEF
### (NEGLIGENT SUPERVISION)

68.     Plaintiffs incorporate by reference each of the allegations in the preceding paragraphs of this Amended Complaint as though fully set forth herein.

69.     Defendant owed Plaintiffs a duty of care to provide a safe and nurturing environment for P.C. at MCAS CDC. Defendant failed to uphold numerous mandatory duties outlined above.

70.     Defendant owed Plaintiffs a duty of reasonable care to supervise Valerie McKinstry and Laura Frank and their conduct as they cared for P.C.

71.     Defendant knew or should have known that Valerie McKinstry and Laura Frank were not competent to perform the tasks attendant to their employ.

72.     Defendant had a duty to monitor the Tiny Tots room for the purpose of ensuring the safety and wellbeing of P.C.

73.     Defendant had a duty to monitor in person and review the video surveillance of the Tiny Tots room regularly to identify inappropriate conduct of its employees or otherwise abuse and neglect of P.C.

74.     Defendant had a duty to promptly report any abuse or neglect witnessed at MCAS CDC to administration of MCAS CDC, authorities, and Plaintiffs.

75. The negligent conduct, actions, and omissions of Defendant served to create an environment in which trainers, teachers, instructors, counselors, directors, faculty members, childcare providers, administrators, and the like were afforded months of continuous access to minor children, including P.C., who was between the ages of a few months and two years old at the time he was repeatedly abused and neglected at the CDC.

76. Defendant breached each of these duties, resulting in numerous acts of abuse and neglect as described above.

77. Defendant's failure to regularly monitor the Tiny Tots room and failure to intervene and to report neglect and abuse at the time of each occurrence resulted in numerous acts of abuse and neglect.

78. Defendant's breach was the proximate cause of Plaintiffs' damages.

79. WHEREFORE, Plaintiffs claim the following damages, individually and on behalf of their minor son P.C.:

a. All such damages that will reasonably and fairly compensate Plaintiffs individually and on behalf of their minor son P.C. for each of the available elements of damages proved by the evidence to have resulted from the fault of Defendant;

b. For compensatory damages in a reasonable and appropriate amount, and all available economic and non-economic damages;

c. Economic losses, including lost earnings, financial support, and future household services and emotional support;

d. Compensation for pain, suffering, discomfort, disfigurement, sorrow, emotional distress, mental anguish, and anxiety already experienced, and reasonably probable to be incurred in the future;

e. Loss of love, care, affection, companionship, and other pleasures of the parent-child relationship;

f. Loss of enjoyment of life, that is, the participation in life's activities to the quality and extent normally enjoyed before the injury;

g. For reimbursement for past and future medical care and other services necessitated by Defendant's negligence and other wrongful conduct; and

h. For such further relief as the Court deems appropriate.

**FIFTH CLAIM FOR RELIEF**
**(NEGLIGENT RETENTION)**

80.     Plaintiffs incorporate by reference each of the allegations in the preceding paragraphs of this Amended Complaint as though fully set forth herein.

81.     Defendant owed Plaintiffs a duty of care to provide a safe and nurturing environment for P.C. at MCAS CDC. Defendant failed to uphold numerous mandatory duties outlined as above.

82.     Defendant owed Plaintiffs a duty of care to ensure that Valerie McKinstry and Laura Frank properly cared for P.C. as a part of their employ.

83.     Defendant knew or should have known that Valerie McKinstry and Laura Frank were unfit for their positions based on the ongoing pattern of abuse, neglect, and

inappropriate interventions with P.C., all of which were captured on video surveillance footage.

84.    Defendant's abusive acts were foreseeable.

85.    Defendant failed to intervene to correct or otherwise discharge Valerie McKinstry and Laura Frank as unfit.

86.    Defendant's breach was the proximate cause of Plaintiffs' damages.

87.    WHEREFORE, Plaintiffs claim the following damages, individually and on behalf of their minor son P.C.:

a.  All such damages that will reasonably and fairly compensate Plaintiffs individually and on behalf of their minor son P.C. for each of the available elements of damages proved by the evidence to have resulted from the fault of Defendant;

b.  For compensatory damages in a reasonable and appropriate amount, and all available economic and non-economic damages;

c.  Economic losses, including lost earnings, financial support, and future household services and emotional support;

d.  Compensation for pain, suffering, discomfort, disfigurement, sorrow, emotional distress, mental anguish, and anxiety already experienced, and reasonably probable to be incurred in the future;

e.  Loss of love, care, affection, companionship, and other pleasures of the parent-child relationship;

f.   Loss of enjoyment of life, that is, the participation in life's activities to the quality and extent normally enjoyed before the injury;

g.   For reimbursement for past and future medical care and other services necessitated by Defendant's negligence and other wrongful conduct; and

h.   For such further relief as the Court deems appropriate.

### SIXTH CLAIM FOR RELIEF
### (GROSS NEGLIGENCE)

88.   Plaintiffs incorporate by reference each of the allegations in the preceding paragraphs of this Amended Complaint as though fully set forth herein.

89.   Defendant owed Plaintiffs a duty of care to protect the safety and well-being of P.C. Defendant failed to uphold numerous mandatory duties outlined above.

90.   Defendant's conduct as described above was negligent.

91.   Defendant had a duty of care to assure continued compliance of MCAS Yuma CDC with the applicable policies, regulations, statutes, and rules, including but not limited to those outlined herein and Ariz. Rev. Stat. § 13-3623 and Ariz. Rev. Stat. § 13-3620.

92.   Violations, as detailed above, presented emotional and physical danger and harm to P.C. and other children attending MCAS Yuma CDC.

93.   Defendant ignored known, foreseeable, and unjustifiable risks of serious injury to P.C. and other children attending MCAS Yuma CDC.

94.   Being in a childcare relationship with P.C. and by extension his parents, Defendant and its agents, servants, or employees at the CDC at MCAS Yuma held a

position of trust and owed a duty of care to protect P.C. and to not subject P.C. to harm including abuse and neglect.

95.    Defendant's repeated and pervasive displays of child abuse and neglect occurring in openly observable areas and recorded on months of video surveillance were the direct and proximate cause of Plaintiffs' damages.

96.    WHEREFORE, Plaintiffs claim the following damages, individually and on behalf of their minor son P.C.:

a.  All such damages that will reasonably and fairly compensate Plaintiffs individually and on behalf of their minor son P.C. for each of the available elements of damages proved by the evidence to have resulted from the fault of Defendant;

b.  For compensatory damages in a reasonable and appropriate amount, and all available economic and non-economic damages;

c.  Economic losses, including lost earnings, financial support, and future household services and emotional support;

d.  Compensation for pain, suffering, discomfort, disfigurement, sorrow, emotional distress, mental anguish, and anxiety already experienced, and reasonably probable to be incurred in the future;

e.  Loss of love, care, affection, companionship, and other pleasures of the parent-child relationship;

f.  Loss of enjoyment of life, that is, the participation in life's activities to the quality and extent normally enjoyed before the injury;

g.  For reimbursement for past and future medical care and other services necessitated by Defendant's negligence and other wrongful conduct; and

h.  For such further relief as the Court deems appropriate.

## SEVENTH CLAIM FOR RELIEF
## (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

97.    Plaintiffs incorporate by reference each of the allegations in the preceding paragraphs of this Amended Complaint as though fully set forth herein.

98.    Defendant owed P.C. a duty of care to provide a safe and nurturing environment for P.C. at MCAS CDC. Defendant failed to uphold numerous mandatory duties outlined above.

99.    Defendant's actions and omissions as alleged herein were negligent.

100.    Defendant's negligence posed an unreasonable risk of harm to P.C. in the form of neglect and abuse as alleged herein.

101.    Plaintiff P.C. suffered physical injury and illness due to the emotional distress, including P.C.'s behavioral and developmental issues, trauma symptoms, and stunted emotional growth. As a result of the abuse, he has displayed new behaviors including self-injury, screaming, and elopement.

102.    Defendant's negligence was the direct and proximate cause of Plaintiff P.C.'s physical illness and emotional harm.

103.    As a direct and proximate result of the negligence of Defendant, P.C. has suffered permanent psychological, behavioral, and emotional development injuries.

104.    Had MCAS Yuma CDC staff had proper precautions in place to identify, address, and report the behavior to law enforcement and family members at an earlier time, P.C. likely would not have suffered the same level of trauma he and his family are now left to deal with. The facility's delay in addressing the issue, and their withholding of information in the days and weeks immediately following the discovery, allowed P.C. to be subject to at least twenty-nine instances of abuse and neglect, and for his associated trauma symptoms to worsen to an extent which he would not have endured otherwise.

105.    Plaintiffs were damaged in an amount to be proven at trial.

106.    WHEREFORE, Plaintiffs claim the following damages on behalf of their minor son P.C.:

a.  All such damages that will reasonably and fairly compensate Plaintiffs on behalf of their minor son P.C. for each of the available elements of damages proved by the evidence to have resulted from the fault of Defendant;

b.  For compensatory damages in a reasonable and appropriate amount, and all available economic and non-economic damages;

c.  Economic losses, including lost earnings, financial support, and future household services and emotional support;

d.  Compensation for pain, suffering, discomfort, disfigurement, sorrow, emotional distress, mental anguish, and anxiety already experienced, and reasonably probable to be incurred in the future;

e.  Loss of enjoyment of life, that is, the participation in life's activities to the quality and extent normally enjoyed before the injury;

f.  For reimbursement for past and future medical care and other services necessitated by Defendant's negligence and other wrongful conduct; and

g.  For such further relief as the Court deems appropriate.

For these damages, Plaintiffs demand monetary relief in an amount deemed appropriate and just by the Court.

DATED this 21st day of March, 2025.

Respectfully submitted,

Brittany and David Crosby, on behalf of themselves and on behalf of their minor child, P.C.

By:  _____

Brewster S. Rawls
Glen H. Sturtevant Jr.
Melissa D. Kouri
Rawls Law Group, P.C.
211 Rocketts Way, Suite 100
Richmond, VA 23231
Virginia State Bar No. 23604
Virginia State Bar No. 73458
Virginia State Bar No. 99425
brawls@rawlslawgroup.com
gsturtevant@rawlslawgroup.com
mkouri@rawlslawgroup.com
(804) 344-0038 – Telephone

James C. Frogale
Frogale Law
5250 Cherokee Avenue, Suite 306
Alexandria, VA 22312
Virginia State Bar No. 79600
james@frogalelaw.com
(703) 488-7140 – Telephone