TIMOTHY COURCHAINE
United States Attorney
District of Arizona
NEIL SINGH
Arizona State Bar No. 021327
LINDSEY E. GILMAN
Arizona State Bar No. 034003
Assistant United States Attorneys
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4449
Telephone: (602) 514-7500
Email: neil.singh@usdoj.gov
Email: lindsey.gilman@usdoj.gov
*Attorneys for Defendant United States*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| Brittany Crosby, et al., | No. 2:24-cv-03307-CDB |
|---|---|
| Plaintiffs, | Member cases: |
| v. | 2:24-cv-03362-DJH |
| | 2:24-cv-03363-DJH |
| United States of America, | 2:24-cv-03364-DJH |
| | 2:24-cv-03365-DJH |
| Defendant. | |
| | **MOTION TO DISMISS** |
| | **SPECIFIED CLAIMS** |

Plaintiffs allege that two federal daycare employees at a miliary base inflicted abuse on their children. The Federal Tort Claims Act creates exceptions to sovereign immunity for certain tort claims against the United States, but an act of assault and battery by federal employees is not such an exception. Nor does Congress permit an exception when liability stems from fluid questions of policy and discretion by federal decision-makers. The United States accordingly requests dismissal of all claims arising from discretionary matters and from assaults on grounds of sovereign immunity. Plaintiffs' negligent infliction of emotional distress claim, also, fails to state a claim. Fed. R. Civ. P. 12(b)(1) 12(b)(6).

**MEMORANDUM OF POINTS AND AUTHORITIES**

The United States moves for dismissal for all claims asserted by Plaintiffs in the consolidated actions with the exception of one category. First, dismissal is appropriate of claims based on the discretionary acts of supervising, hiring, or training daycare employees. Nearly all of Plaintiffs' allegations in this action fall into this category, such as their theory that the United States is liable because supervisory-level officials at the daycare center did not more closely supervise the two employees who committed these criminal acts. The discretionary function exception ("DFE") bars such claims. Second, the United States does not move, at this time, for dismissal of those claims that arise from criminal acts of child abuse that were allegedly witnessed by a federal employee but not promptly reported to law enforcement.[1] Third, Plaintiffs' claims rely on Arizona tort law, and their assertion of the Arizona tort of negligent infliction of emotional distress ("NIED") fails to state a claim because none of Plaintiffs meet the elements of that tort as defined by the Arizona Supreme Court.

**I.     Factual Background.**

   **a.   The Subject Incidents.**

Plaintiffs in this consolidated action are five families who sent their minor children to a daycare facility, located at the Marine Corps Air Station ("MCAS") Yuma in Yuma, Arizona.[2] MCAS-Yuma "is one of the few Marine Corps air stations that operates 24 hours a day, 365 days a year, supporting military training, emergency landings, commercial

---

[1] Such claims may still be barred by the DFE. *See Mott v. United States*, 16-cv-02503, 2017 WL 4641867 (M.D. Tenn. Oct. 17, 2017). However, the United States does not view this argument as feasible for resolution through a motion to dismiss.

[2] The five actions are: *Crosby v. United States*, 2:24-cv-03307 (lead action); *Hitchcock v. United States*, 2:24-cv-03362; *Lucero v. United States*, 2:24-cv-03364; *Johnson v. United States*, 2:24-cv-03363; and *Wilson v. United States*, 2:24-cv-03365. The Court consolidated these actions for discovery purposes while deferring on a decision to consolidate for post-discovery and trial purposes. Doc. 20.

- 2 -

airlines, and civilian aviation through Yuma International Airport."[3]

The five children of the plaintiff families were each approximately two years old. The relevant time period at issue begins in 2020 and ends on March 2, 2021. *See, e.g., Crosby* Doc. 17, ¶ 21. On March 1, 2021, a staff member of the Child Development Center ("CDC") at MCAS-Yuma witnessed CDC employee Valerie McKinstry roughly handling a child. Exhibit 1, Yuma Police Report (redacted for names of victims and minors)[4]. The following day, CDC staff reviewed video footage of the CDC's daycare areas. The footage revealed not just one concerning incident by McKinstry but many. As the nature of the footage became apparent to CDC staff, they realized that criminal acts may have taken place and called the police on that same date, March 2, 2021. They first contacted the Yuma MCAS Provost Marshal's Office. The Provost Marshal's Office then contacted the Yuma Police Department. Exhibit 1.

During the ensuing investigation, a Marine Corps committee, the Yuma Police, and the Yuma County Attorney's Office conducted a review of hundreds of potential incidents visible on video as constituting possible acts of physical child abuse in violation of Arizona's criminal statutes. Each of the five families has alleged the number of incidents that they attribute to solely their child, in the five complaints. *See, e.g., Crosby* Doc. 17 at 31 (alleging 29 incidents). The vast majority of incidents were attributed to one CDC employee, Valerie McKinstry. A smaller number were attributed to employee Katherine McCombs. Following the reviews and investigation, the Yuma County Attorney's Office filed criminal charges against McKinstry and McCombs. McKinstry pleaded guilty to several counts of child endangerment and child abuse, in the Arizona Superior Court for Yuma County. *State v. McKinstry*, S-1400-CR-202200151 (Yuma County Sup. Ct.).

---

[3] Official MCAS-Yuma news release, "Shadow Behind the Tower," dated March 31, 2025, https://www.mcasyuma.marines.mil/News/Article/Article/4139839/shadow-behind-the-tower/ (last visited April 25, 2025).

[4] Plaintiffs have previously filed redacted versions of additional police reports to their complaints. *See* Doc. 17-1 at 30-43; Doc. 17-2 at 1-37; Doc. 17-3 at 1-49.

1  McCombs pleaded guilty as well, on the same charges, also in Yuma County. *State v.*
2  *McCombs*, S-1400-CR-202200150 (Yuma County Sup. Ct.).

### b. Policies Targeting Child Abuse by Congress and the Marine Corps.

Congress and the United States Navy have attempted to address the topic of child abuse for years. One method of doing so was the creation of the Family Advocacy Program ("FAP"). The Navy created the FAP in 1976, originally naming it the Child Advocacy Program, to "protect abused children of military families." *Matthews v. United States*, No. CIV. 07-00030, 2011 WL 3471140, at *3 (D. Guam Aug. 5, 2011) (summarizing the history of the Navy's efforts to address child abuse), *aff'd*, 586 F. App'x 366 (9th Cir. 2014). In 1981, the Department of Defense reorganized this program into the FAP in order to carry out a Congressional mandate contained in the Child Abuse Prevention and Treatment Act. *Id.* The Secretary of Defense "tasked the military departments with implementing the program." *Id.* However, as the *Matthews* court recognized as part of its DFE analysis, "Congress did not demand a specific course of action to be followed" on the subject of child abuse. *Id.* As is true presently, the Navy at the time *Matthews* issued its 2011 ruling implemented directives that further outlined "procedures to be followed when a report of family or child abuse is made." *Id.*

Relevant to the timing of the subject incidents here, the Navy's implementing directive at issue is known as the Department of Navy, Marine Corps Order ("MCO") 1710.30, with an effective date of August 5, 2015.[5] Exhibit 2, Attachment 2. The CDC at MCAS-Yuma operates according to the directives and instructions contained in this MCO, as reflected by the attached Declaration of the Director of the Yuma CDC, Laura Frank. Exhibit 2. The order explicitly provides "Procedural Guidance" for Marine Corps Child and Youth Programs, of which the CDC is a part. Exhibit 2, Attachment 2, MCO at page 1. In chapter 5 of the MCO, entitled "Facility, Health, Safety and Risk Management," the

---

[5] Plaintiffs have already been in possession of this Marine Corps order, or at least a related or similar version of it. They have quoted from MCO P1710.30E on page 9 of the Crosby complaint, for example. Doc. 17 at 9.

MCO addresses topics including background checks, oversight and inspection, the use of closed circuit television ("CCTV"), and child abuse reporting. Exhibit 2, Attachment 2, MCO at 5-1 through 5-4.

As to background checks more specifically, the MCO requires all persons making regular contact with children to undergo a check for criminal history. Exhibit 2, Attachment 2, MCO at 5-2, ¶ 4. Furthermore, any person who has not yet cleared a full background check must be supervised under a "Line of Sight Supervision (LOSS)" standard, while wearing distinctive red apparel. Exhibit 2 at 5-2, ¶ 4(a). Both McKinstry and McComb, however, were long-time employees of the CDC who had passed their full background check years earlier. Exhibit 2, Frank Declaration ¶ 12. As to training, the MCO addressed this in chapter 4, "CYP Mandatory Training." Exhibit 2, Attachment 2, MCO at 4-1, ¶ 4. The exact nature of this training is left to the discretion of the Marine Corps. Exhibit 2, Frank Declaration ¶ 13.

On the broader topic of supervision, similarly, the exact manner in which CDC employees should be "supervised, monitored, and overseen" by CDC supervisors is, according to the CDC's Director, within the discretion of the CDC's leadership structure. Exhibit 2, Frank Decl. ¶ 14. A key document governing supervision is what the CDC identifies as a "Supervision and Accountability protocol," which the Government attaches here. Exhibit 2, Attachment 4. This protocol more specifically governs various aspects of how the CDC should supervise not just employees but also the children, such as facility ratios, group size requirements, name-to-face procedures, indoor versus outdoor supervision, and transportation. *Id.* None of these more specific courses of direction, however, contain mandatory aspects of child abuse prevention or detection.

**II.     Law and Argument.**

    **a.  Standard of Review.**

The United States has sovereign immunity, which Congress has waived through passage of the FTCA according to the specified terms of that Act. Plaintiffs bear the burden of persuading this Court of subject matter jurisdiction under "the FTCA's general waiver

of immunity." *Abbey v. United States*, 112 F.4th 1141, 1145 (9th Cir. 2024) (quotation omitted). The United States bear the burden of proving that a waiver exception applies. *Id.* Nonetheless, the FTCA "did not waive the sovereign immunity of the United States in all respects; [and] Congress was careful to except from the Act's broad waiver of immunity several important classes of tort claims." *Esquivel v. United States*, 21 F.4th 565, 573 (9th Cir. 2021) (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984)). The discretionary function exception is one such example. *Esquivel*, 21 F.4th at 573. A waiver of the United States' sovereign immunity is to be strictly construed in favor of the sovereign. *E.V. v. Robinson*, 906 F.3d 1082, 1098 (9th Cir. 2018).

Rule 12(b)(1) is the appropriate rule of procedure for dismissal for lack of subject matter jurisdiction. *Lee v. United States Dep't of the Navy*, 716 F. Supp. 3d 911, 914 (S.D. Cal. 2024) (citing *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015); *Tobar v. United States*, 639 F.3d 1191, 1194 (9th Cir. 2011)). Under this rule, a jurisdictional challenge may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When the challenge is factual, the Court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment, and the Court need not presume the truthfulness of the complaint allegations. *Id.* The Government asserts that this challenge here is factual. "When a factual attack is mounted, the responding party 'must support her jurisdictional allegations with 'competent proof' ... under the same evidentiary standard that governs in the summary judgment context.'" *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) (citations omitted).

The Government's challenge of Plaintiffs' NIED claim is more properly reviewed under Rule 12(b)(6), Fed. R. Civ. P. "At the motion to dismiss phase, the trial court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff." *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

### b. The FTCA's Discretionary Function Exception.

Plaintiffs' claims premised on hiring, training, and supervision are generally barred

by the DFE, as the Ninth Circuit has repeatedly held. Moreover, federal courts analyzing FTCA claims of physical or sexual abuse against a person by a tortfeasor have also consistently dismissed them under the DFE, when the allegation is based on a failure-to-prevent theory. The same result is required here as to Plaintiffs' claims of abuse that a supervisory-level official should have somehow prevented through training, hiring practices, or supervisory practices in the day-to-day operations of the CDC. The United States notes, again, that it is *not* moving for dismissal of claims that any specific incidents of abuse were actively witnessed by another federal employee. Claims premised on the operational structure or supervisory practices of the CDC, however, are clearly barred.

### 1. *Overview of the DFE.*

The DFE is statutory. The FTCA expressly excepts from its waiver of sovereign immunity "[a]ny claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The DFE "marks the boundary between Congress' willingness to impose tort liability on the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *Varig Airlines*, 467 U.S. at 808. The Ninth Circuit recognizes the DFE as "an important exception to the FTCA." *Lam v. United States*, 979 F.3d 665, 672 (9th Cir. 2020).

The Supreme Court has established a two-step process for evaluating whether a claim falls within the DFE. First, this Court should examine whether the Government's actions are "discretionary in nature" and "acts that involve an element of judgment or choice." *Chadd v. United States*, 794 F.3d 1104, 1109 (9th Cir. 2015) (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)). In making this examination, it is "the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." *Varig*, 467 U.S. at 813. "If there is ... a statute or policy directing mandatory and specific action, the inquiry comes to an end because there can be no element of discretion when an employee has no rightful option but to adhere

to the directive." *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008) (internal quotation marks omitted).

Second, the Court examines "whether [the] judgment is of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322-23. The focus here is on "the nature of the actions taken and on whether they are susceptible to policy analysis." Gaubert, 499 U.S. at 325. The decision "'need not actually be grounded in policy considerations' so long as it is, 'by its nature, susceptible to a policy analysis.'" *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir.2000) (quoting *Miller v. United States*, 163 F.3d 591, 593 (9th Cir.1998)). When a statute or regulation allows a federal employee to act with discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324, 111 S.Ct. 1267. "Whether a challenged action falls within the discretionary function exception requires a particularized analysis of the specific agency action challenged." *GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1174 (9th Cir. 2002).

In addition, "it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies . . . ."  *Varig Airlines*, 467 U.S. at 813. "Discretionary conduct is not confined to the policy or planning level . . . ." *Gaubert*, 499 U.S. at 325. "[L]ow-level employees making discretionary day-to-day management decisions based on policy considerations also fall within the [DFE]." *Childers v. United States*, 40 F.3d 973, 974 n.1 (9th Cir. 1994), *as amended* (Jan. 17, 1995). Further, "decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield." *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000) (citing *Gager v. United States*, 149 F.3d 918, 920–22 (9th Cir. 1998); *Nurse v. United States*, 226 F.3d 996 (9th Cir.2000); *Burkhart v. Washington Metropolitan Area Transit Authority*, 112 F.3d 1207, 1216–17 (D.C.Cir.1997); *Tonelli v. United States*, 60 F.3d 492, 496 (8th Cir.1995); *Richman v. Straley*, 48 F.3d 1139, 1146 (10th Cir.1995); and *Attallah v. United States*, 955 F.2d 776, 784–85 (1st Cir.1992).

### 2. *DFE Decisions in the Context of Abuse Allegations Specifically.*

The United States cites below multiple FTCA precedents involving allegations of abusive conduct by a tortfeasor and a theory that the United States failed to detect or somehow prevent the abuse. Repeatedly, federal courts hold that the DFE bars such claims in the absence of a mandatory course of direction.

First, in *Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018), the plaintiffs alleged that a federally-employed military priest sexually assaulted their minor child, and that the Government was liable for "negligent supervision." Much like the Ninth Circuit, the Eighth Circuit recognized that "supervising employees typically involves policy considerations." *Id.* at 381. Citing in part a Ninth Circuit precedent, the Eighth Circuit concluded, "The Government's conduct here is within the discretionary function exception. Though there may be disagreements how these interests should be balanced, 'the FTCA does not empower judges to second guess such decisions via tort action.'" *Id.* at 382 (citing *Doe v. Holy See*, 557 F.3d 1066, 1085 (9th Cir. 2009)).[6] *See also Hinsley v. Standing Rock Child Protective Services*, 516 F.3d 668 (8th Cir. 2008) (applying DFE to bar claims that federal Bureau of Indian Affairs negligently placed a 17-year old boy in a home where he sexually assaulted a three-year old girl).

Second and particularly instructive here is *Strand v. United States*, 233 F. Supp. 3d 446 (D. Md. 2017). In *Strand*, a parent sued the United States on negligence theories because her minor son was assaulted inside a locker room at an Army camp. The plaintiffs alleged that the Government had failed "to provide adequate supervision of the campers in the locker room." *Id.* at 456. After reviewing a Youth Program Handbook that the court determined was a source of authority on employee conduct, the court was unable to identify

---

[6] The Ninth Circuit's *Holy See* decision is instructive here as well, for the same reasons the Eighth Circuit found it instructive. Although it concerned the Foreign Sovereign Immunities Act and not the FTCA, the Ninth Circuit recognized that the "language of the discretionary function exclusion closely parallels the language of a similar exclusion in the [FTCA], so we look to case law on the FTCA when interpreting the FSIA's discretionary function exclusion." *Holy See*, 557 F.3d at 1083.

- 9 -

any mandatory course of instruction that was relevant. *Id.* at 457-58. Instead, the court found that judgment by camp counselors as to how to supervise the locker room "was precisely the type of discretion that the [DFE] was designed to shield and was based on considerations of policy." *Id.* at 457. Such decisions reflected "budgetary, safety, and privacy concerns associated with the extent to which the campers should be supervised . . . ." *Id.* (citing *Varig Airlines*, 467 U.S. at 819-20).

Third, in *Walding v. United States*, 955 F. Supp. 2d 759, 762 (W.D. Tex. 2013), eleven plaintiffs alleged that as minor children they were the victims of "grave and repeated sexual, physical and emotional abuse" at an immigration detention facility. The plaintiffs sued on various grounds including "negligent selection and negligent supervision." *Id.* at 768. Citing precedents involving the negligent hiring of contractors and negligent classification of prisoners, the court dismissed the negligent selection claim on DFE grounds. *Id.* at 772-73. Turning next to the negligent supervision claim, the Texas federal court cited the Ninth Circuit's decision in *Vickers*, 228 F.3d at 950, to conclude the DFE barred it as well. *Walding*, 955 F. Supp. 2d at 782. Addressing claims that the Government should have monitored individual staff more closely, the court recognized that a monitoring program did exist but that "decisions regarding implementation of the monitoring program are also discretionary and protected by the [DFE]." *Id.* at 784.

Fourth, in *Tebault v. United States*, an Army veteran with PTSD and other mental health issues alleged that a federal social worker at the VA pursued an inappropriate romantic and physical relationship with him, leading to depression, increased substance abuse, and a suicide attempt. *Tebault v. United States*, No. 3:23-CV-560-DJH-RSE, 2025 WL 974099, at *1 (W.D. Ky. Mar. 31, 2025). The plaintiffs' theories included a negligence count for "failure to train, monitor, and terminate" the social worker's employment. *Id.* Finding that the plaintiff "has not alleged that the government's training, supervision, or retention of Dawkins 'violated a mandatory regulation or policy that allowed no judgment or choice,'" the Kentucky federal district court held that the DFE applied and such claims were barred. *Id.* at *4.

- 10 -

Finally, in *Bryant v. United States*, the plaintiff alleged that she was sexually assaulted and harassed by an employee of the Veterans Administration, for which the United States should be liable under a failure-to-warn theory. No. CV 20-4 (JEB), 2022 WL 2713269, at *1 (D.D.C. July 13, 2022). The federal district court in D.C. concluded that the plaintiff "failed to cite any regulation or policies that prescribed a nondiscretionary duty to warn," and the DFE therefore barred the failure-to-warn claim. *Id.* at *3 (quoting *Loughlin v. United States*, 393 F.3d 155, 163 (D.C. Cir. 2004)). The Government notes here that the *Bryant* court in a separate ruling also dismissed the plaintiff's claims for negligent training, hiring, supervision, and retention, but it did so under a separate analysis of the assault and battery exception that is not applicable here. *Bryant v. United States*, No. CV 20-4 (JEB), 2020 WL 5969241, at *4 (D.D.C. Oct. 8, 2020).

To summarize these precedents, two appellate decisions from the Eighth Circuit involved abuse claims specifically and have interpreted the DFE in the United States' favor here, in addition to the federal district court opinions from other districts. *Croyle*, 908 F.3d at 380; *Hinsley*, 516 F.3d at 673. As for the Ninth Circuit, its holding in *Holy See*, 557 F.3d at 1085, similarly governs the FTCA and DFE standards here on negligent failure-to-prevent claims of abuse, for the same outcome. *Vickers*, in addition, recognizes that negligent hiring, training and supervision theories are, in general, barred by the DFE. 228 F.3d at 950.

  **c. <u>Applying the DFE Here Bars Plaintiffs' Hiring, Training, and Supervision Claims.</u>**

A review of MCO 1710.30 and the supporting declaration of the CDC's Director, Laura Frank, point to no mandatory course of direction here that Congress intended to create liability for, other than (arguably) Plaintiffs' failure-to-report allegations. The Government submits that the claims may be organized as follows: In paragraph 43 of the *Crosby* complaint (Doc. 17), Plaintiffs have listed a number of legal duties that they believe the Marine Corps and CDC owed. Plaintiffs have mirrored this same list of 14 specific duties in the remaining four complaints: in *Hitchcock*, Doc. 17 at ¶ 48; in *Lucero*, Doc. 18

at ¶ 49; in *Johnson*, Doc. 15 at ¶ 47; and in *Wilson*, Doc. 17 at ¶ 41. Although they are 14 in number, they fall into the three categories at issue here. Subsection (a) concerns hiring. Subsections (b), (c), and (m) concern training. Finally, subsections (d), (e), (f), (g), (h), (i), (j), (k), (l), and (n) concern supervision.[7] All three categories are subject to the DFE, as the Ninth Circuit has recognized they "usually" are. *Vickers*, 228 F.3d at 950.

As the Ninth Circuit held in *Terbush*, the Court's inquiry here under the first step of the DFE analysis is to ask whether there is a "statute or policy directing mandatory and specific action…" 516 F.3d at 1129. If there is, "the inquiry comes to an end because there can be no element of discretion when an employee has no rightful option but to adhere to the directive." *Id.* The only mandates that apply here are the general obligations to report child abuse that a person has witnessed, which the United States is not moving for dismissal of at this time. But this is not the bulk of Plaintiffs' factual-legal theories in their five complaints. Those theories are premised on the notion that better supervision, better training, or better hiring practices could arguably have prevented two criminal child abusers from roughly handling their children. The history of the Navy's attempts to address what these better strategies might be, dating back to at least 1976, plainly illustrates the point: a better strategy, or even the best strategy if one exists, requires the judgment and discretion of professionals.

Plaintiffs' theory about video monitoring best illustrates the purpose behind the DFE in particular. They assert, on page 9 of the *Crosby* complaint, that a Marine Corps Order states that video monitoring systems "shall be in each activity room" and that "monitors will be placed in an area where constant monitoring is available." Doc. 17 at 9. But even this language, which Plaintiffs chose to quote, contains no specific mandate that Plaintiffs allege the United States has violated. Indeed, Plaintiffs repeatedly acknowledge that video

---

[7] Subsections (e) and (j) are ambiguously worded and could apply to different scenarios. The Government is not moving for dismissal to the extent paragraphs (e) and (j) assert failure-to-report claims, i.e., claims that a co-employee actively witnessed an act of child abuse and failed to report it.

monitoring *was* in place, and *did* detect the acts of abuse, albeit not immediately. Doc. 17, ¶¶ 23, 24, 27, 31, 32, 43(l), 52, 73, 83, 95 (references to the existence of video recordings). The failure to place video systems within the CDC would constitute an example of a mandatory policy obligation that the CDC had ignored. But Plaintiffs do not so allege, and the same is true as to every other mandatory provision they have quoted within their complaints. How frequently to monitor video feeds is a difficult and complex logistical question in the first instance, and moreover, neither MCO 1710.30 nor Plaintiffs' allegations contain any mandates on that subject. Similarly, what strategy of supervising employees could have detected the abuse at issue here is, inherently, complex and difficult. Plaintiffs' claims alleging negligent training, negligent hiring, and negligent supervision should therefore be dismissed, pursuant to the DFE.

The second and final step of the DFE analysis requires the Court to ask whether the Government's judgment "is of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322-23. The analysis here is even more clearly in favor of the United States. The policy considerations behind the best and most effective way to reduce the incidence of child abuse, in a daycare setting in particular, are complex, have been the subject of statutes passed by Congress, and numerous versions of departmental orders issued by the United States Navy. *See Matthews*, 2011 WL 3471140, at *3 (summarizing Navy's and Congress' history of addressing child abuse). And again, the Ninth Circuit has already held that claims of negligent training, hiring, and supervision are usually considerations that the DFE was, indeed, designed to shield. *Vickers*, 228 F.3d at 950.

### d.  **Plaintiffs' NIED Claim Fails to State a Claim.**

All five sets of Plaintiffs in the five actions assert negligent infliction of emotional distress claims as their Seventh Claim For Relief. *See* Doc. 17, ¶¶ 98-104. Their theory asserts that the United States' negligence "posed an unreasonable risk of harm" to the minor children, that emotional distress by the children has resulted in physical injury and

illness, and that this has in turn led to "permanent psychological, behavioral, and emotional development injuries." Doc. 17, ¶¶ 100-103.

It appears from these allegations that Plaintiffs seek to assert direct emotional distress claims on behalf of the children, as opposed to the bystander claim that Arizona law permits. The Arizona Supreme Court holds that there are three elements of the NIED tort: (1) witnessing an injury to a closely related person, (2) suffering mental anguish manifested as physical injury, and (3) being within the zone of danger so as to be subject to an unreasonable risk of bodily harm created by the defendant. *Snyder v. United States*, No. CV-12-01405-PHX-DGC, 2013 WL 1867008, at *2 (D. Ariz. May 2, 2013) (citing *Pierce v. Casas Adobes Baptist Church*, 782 P.2d 1162, 1165 (Ariz. 1989)). *Snyder* was an FTCA action against the United States in which the plaintiff alleged that she watched her husband suffer from health problems, caused by the medical malpractice of the VA, which caused her emotional distress. *Snyder, supra*. This Court, with Judge Campbell presiding, held that such allegations failed to assert the zone-of-danger element required by Arizona law. *Id.*

This Court, for the District of Arizona, has repeatedly rejected improperly stated Arizona NIED claims where plaintiffs have failed to assert the zone-of-danger element. *See, e.g., Dougherty v. Lincare, Inc.*, No. CV10-0978-DGC, 2011 WL 3510903, at *4 (D. Ariz. Aug. 10, 2011) ("Nor do Plaintiffs present evidence that Mr. Dougherty was within the zone of danger created by Defendant's alleged negligence."); *Marquez v. City of Phoenix*, No. CV-08-1132-PHX-NVW, 2008 WL 11338817, at *1 (D. Ariz. Aug. 11, 2008) (rejecting NIED claim where plaintiffs were not in the same room as their sibling when he was tased); *see also Meador v. Aramark Sport and Entertainment Services, LLC*, 562 F. Supp. 3d 221, 247 (D. Ariz. 2022) (noting in dicta that Arizona applies the zone of danger test to NIED claims). Since all Plaintiffs in the five actions are doing the same here, their NIED claims in each of the five actions should be dismissed as a matter of law.

## **CONCLUSION**

For the reasons set forth herein, the United States moves for dismissal of all of Plaintiffs' claims that rely on theories of negligent hiring, negligent training, and negligent supervision, leaving for discovery their failure-to-report claims of abuse that were allegedly witnessed by any federal employee. In addition, the United States moves for dismissal of Plaintiffs' count for negligent infliction of emotional distress.

Respectfully submitted on April 28, 2025.

                          TIMOTHY COURCHAINE
                          United States Attorney
                          District of Arizona

                          s/*Neil Singh*
                          NEIL SINGH
                          LINDSEY E. GILMAN
                          Assistant United States Attorneys
                          *Attorneys for Defendant United States*