Brewster S. Rawls (VA State Bar No. 23604)
Glen H. Sturtevant Jr. (VA State Bar No. 73458)
Melissa D. Kouri (VA State Bar No. 99425)
Rawls Law Group, P.C.
211 Rocketts Way, Suite 100
Richmond, VA 23231
brawls@rawlslawgroup.com
gsturtevant@rawlslawgroup.com
mkouri@rawlslawgroup.com
(804) 344-0038 – Telephone
(804) 782-0133 – Facsimile

James C. Frogale (VA State Bar No. 79600)
Frogale Law
5250 Cherokee Avenue, Suite 306
Alexandria, VA 22312
james@frogalelaw.com
(703) 488-7140 – Telephone
(703) 810-7679 – Facsimile
*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Brittany Crosby and David Crosby, on behalf of themselves and on behalf of their minor child P.C., et al., <br><br>      Plaintiffs,<br>v.<br><br>United States of America,<br>      Defendant. | No. 2:24-cv-03307-DJH<br>Member Cases:<br> 2:24-cv-03362-DJH<br> 2:24-cv-03363-DJH<br> 2:24-cv-03364-DJH<br> 2:24-cv-03365-DJH<br><br>**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

Plaintiffs' claims arise from documented failures by the Child Development Center staff at Marine Corps Air Station Yuma to protect Plaintiffs' children from repeated child abuse. Police reports and video footage confirm this abuse and led to criminal convictions of CDC staff.

The United States moves to dismiss asserting Plaintiffs' claims for negligent hiring, training, supervision, and retention are barred by the discretionary function exception. In doing so, the government mischaracterizes the federal directives at issue as "discretionary." In fact, they are mandatory requirements designed to protect children. The government also incorrectly argues Arizona law only recognizes indirect claims for negligent infliction of emotional distress by third-party bystanders. Arizona law recognizes direct claims of negligent infliction of emotional distress. For these reasons, the Court should deny the United States' motion to dismiss.

## BACKGROUND

The CDC provided daycare for Plaintiffs' children. These events took place in the CDC "Tiny Tots" room from 2020 to March 2, 2021. During this period, Plaintiffs' children were subjected to repeated abuse by CDC staff members under the supervision of Laura Frank. On March 2, 2021, Yuma law enforcement became involved after CDC staff were recorded pushing, dragging, and jerking P.C. around the classroom. A police report was prepared based on the review of over 90 days of video footage from multiple security cameras. Notably, all earlier footage had been erased. The Yuma Police Report confirms numerous instances of abuse of Plaintiffs' children perpetrated by CDC staff. The police report further demonstrates mandatory inspections and video monitoring were not conducted as required. *See* Yuma Police Report, attached as **Exhibit A**. The video surveillance footage of the abuse is attached as **Exhibit B**.

As described in the amended complaints, CDC staff violated and disregarded several specific mandatory directives:

**Marine Corps Order (MCO) P1710.30E, 2–7, 2–9, paras. 2002(2), 2003(7), attached as Exhibit C:**

- "This policy *shall* prohibit the use of corporal punishment, shaming, or other humiliating methods of discipline . . . ."

- "Closed circuit monitoring systems *shall* be in each activity room and monitors will be placed in an area where constant monitoring is available."

**Navy CDC Operating Manual for Child Abuse Prevention, Education, and Reporting (CAPER) Standards for CDCs, p. 1, 11, 22, paras. 1, 1.4.1, 2.2.1, attached as Exhibit D:**

- "CDC Directors' duties related to CAPER include the following: . . . daily classroom visits and observations."

- "All CYP Professionals not only have an ethical and professional responsibility to carry out these duties, but they also have a *legal mandate* to report child abuse and neglect they suspect by caregivers, either in the home or within the Child Development Center (CDC) program."

- "The following types of interactions are considered inappropriate and are *prohibited* at all times . . . Bodily harm from forceful pulling/jerking and/or 'grabbing' a child from any position."

**Department of Defense Instruction 6060.02, p. 42, Table 1-I, attached as Exhibit E:**

- "Staff *do not* use corporal punishment or other negative discipline methods that hurt, humiliate, or frighten children."

**OPNAVINST 1752.2C, 3–5, para. 3(c)(2), attached as Exhibit F:**

- "Report all allegations of . . . child abuse immediately . . . ."

**Marine Corps Community Services Employee Handbook, p. 36, attached as Exhibit G:**

- "Safety is the responsibility of all employees. Any unsafe condition or injury, no matter how slight, *must* be reported to your supervisor immediately."

## STANDARD OF REVIEW

A motion under Rule 12(b)(1) challenges the Court's subject matter jurisdiction and may be either facial or factual. In a facial challenge, the Court accepts the allegations in the complaint as true. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a factual challenge, the government may present evidence outside the pleadings to dispute the jurisdictional facts. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

## ARGUMENT

### I.  THE DISCRETIONARY FUNCTION EXCEPTION DOES NOT SHIELD THE CDC STAFF'S CONDUCT.

#### a.  *Staff Conduct Was Governed by Mandatory Directives and Involved Implementation Failures.*

The FTCA's discretionary function exception does not apply when (1) a government employee's conduct is governed by mandatory directives that leave no room for individual judgment on whether to act, or (2) the nature of the actions are not susceptible to policy analysis. *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988); *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991). When a directive "specifically prescribes a course of action for an employee to follow," the employee "has no rightful option but to adhere to the directive," and the discretionary function exception does not apply. *Berkovitz*, 486 U.S. at 536. "[T]he reason for this rule is obvious—a federal employee cannot be operating within his discretion if he is in fact violating a nondiscretionary policy." *Spotts v. United States*, 613 F.3d 559, 568 (5th Cir. 2010).

Here, federal directives governing the CDC's operations and staff use unequivocal, mandatory language—such as "shall," "must," and "will"—to impose specific nondiscretionary obligations on staff to protect children in their care. These directives

*require* staff to implement and monitor continuous CCTV video recordings, conduct inspections and observations, prohibit corporal punishment, and immediately report suspected child abuse to appropriate authorities. The language of these federal directives leaves no room for staff discretion. *See, e.g.*, *Anthony v. United States*, 632 F. Supp. 3d 1017, 1035 (D. Ariz. 2022) ("The use of the word 'shall' in a provision generally removes any discretion in a directive"); *Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1031 (9th Cir. 1989) (indicating the use of "shall" in a directive can create a mandatory obligation that removes discretion).

In *Lobisch v. United States*, 2021 U.S. Dist. LEXIS 63268, *1 (D. Haw. Mar. 31, 2021), the court rejected the government's discretionary function defense where military childcare staff failed to follow explicit regulatory directives. *Id.* at *23. The court held Army Regulation 608-10, which governs childcare services on Army bases, imposed mandatory duties using terms such as "must" and "will," leaving no room for discretion. *Id.*

Even if some element of judgment might have been involved, the acts and omissions alleged here involved mandatory federal directives relating to child safety. They were operational in nature, not policy decisions. The discretionary function exception does not shield failures to implement established safety measures. *See Whisnant v. United States*, 400 F.3d 1177, 1185 (9th Cir. 2005) (holding government's failure to implement safety regulations cannot invoke discretionary function exception even when there is discretion on how to carry out those directives); *Bear Med. v. United States*, 241 F.3d 1280, 1215

5

(allowing claims of negligent supervision and management regarding safety standards to survive where government "fail[ed] to effectuate policy choices already made").

In *Ariz. Maint. Co. v. United States*, 864 F.2d 1497 (9th Cir. 1989), the Ninth Circuit set forth "[t]he appropriate analysis laid down by our own Ninth Circuit cases[:]"

> Conduct of a government agency or employee is not immune from scrutiny as a "discretionary function" simply because it involves an element of choice. *It must be a choice rooted in social, economic or political policy. If it is a choice to be exercised within established objective safety standards, and the plaintiffs claim negligence in failure to follow such standards, the discretionary function exception does not apply*.

864 F.2d at 1504 (emphasis added).

In *Kim v. United States*, 940 F.3d 484 (9th Cir. 2019), the court emphasized that although park officials had some discretion in choosing how to abate a tree hazard, such as pruning, fencing, or removing the tree, the applicable directive imposed a mandatory obligation to take some action once a tree was rated "high or above." *Id.* at 488. The court held even if the directive gave officials discretion about which mitigation measure to use, they had no discretion to ignore the hazard entirely. *Id.* at 491 ("The government's argument ignores the families' contention that Park officials failed to satisfy their baseline duty to do something about the tree.").

Similarly, in *Bear Med. v. United States*, 241 F.3d 1280, 1215 (9th Cir. 2001), the Ninth Circuit noted "once the Government has undertaken responsibility for the safety of a project, the execution of that responsibility is not subject to the discretionary function exception. The decision to adopt safety precautions may be based in policy considerations, but the implementation of those precautions is not." *Id*. at 1215. The court further noted

"[t]he Government cannot claim that both the decision to take safety measures and the negligent implementation of those measures are protected by policy decisions." *Id.*

In *Navarette v. United States*, 500 F.3d 914 (9th Cir. 2007), the Ninth Circuit held the discretionary function exception did not apply where the Army Corps of Engineers failed to fence or mark a known 30-foot drop-off near a campsite. *Id.* at 920. A safety plan required that "dangerous terrain conditions, such as drop-offs, will be properly marked or fenced," and the court found this directive to be mandatory. *Id.* at 917-18. Although the agency had discretion in identifying hazards, it had no discretion to ignore one once identified. *Id.*

Here, the applicable directives required CDC staff to take action—through inspections, CCTV monitoring, and reporting of suspected abuse—leaving them with no discretion to ignore these mandatory safety obligations. The government also contends that how frequently to monitor video feeds is a discretionary judgment. But the directive requires monitors "will be placed in an area where constant monitoring is available." Exh. C, MCO P1710.30E. The staff's failure to adequately monitor, despite hundreds of examples on video, constitutes operational negligence. Once the government made the policy decision to adopt this comprehensive child safety framework, the day-to-day implementation of ensuring that staff performed inspections, monitored cameras and video footage, and reported abuse, was operational in nature. The staff had no discretion to ignore compliance with these requirements.

The government made the policy decision to adopt a comprehensive set of child safety directives. The plain language of these federal directives intended to protect children

7

from abuse makes clear the government did not intend to leave decisions about the appropriateness of physical touch, or about intervening and reporting problematic instances, up to the discretion of CDC staff. And yet CDC staff repeatedly and materially deviated from these mandatory directives, using physical force to punish children and in failing to intervene or report such abuse. The staff's failure to follow those directives is exactly the type of operational negligence that is *not* shielded by the discretionary function exception. Accordingly, the government's reliance on the discretionary function exception is misplaced, and its motion should be denied.

      **b.**    *Claims of Negligent Supervision, Hiring, and Training Overcome the Discretionary Function Exception When Based on Mandatory Directives or Operational Failures.*

The government contends all claims of negligent supervision, hiring, and training are barred by the discretionary function exception because such functions "usually" fall within its scope. *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000). While the Ninth Circuit in *Vickers* acknowledged that hiring, training, and supervision decisions can fall within the discretionary function exception when grounded in policy considerations, it made clear this protection does not extend to failures to follow mandatory directives or to justify inaction with any policy rationale. *Id.* at 950–51.

For instance, although the *Vickers* court found that excusing a firearm requalification based on prior proficiency was a reasoned, policy-based decision, it rejected the government's attempt to invoke the discretionary function exception for its year-long delay in acting on a termination recommendation. *Id.* at 951. The record showed no policy-based judgment, just unexplained bureaucratic inaction. *Id.*

More directly relevant here, *Vickers* also held agency officials had no discretion to ignore mandatory reporting and investigation obligations concerning firearm misuse and, therefore, the discretionary function exception did *not* apply to such failures. *Id.* at 953–54. The court emphasized that even if officials had discretion in how to investigate, they lacked discretion whether to act when regulations required it. *Id.*

In *Anthony v. United States*, 632 F. Supp. 3d 1017 (D. Ariz. 2022), the Court analyzed a contractor's failure to review background checks before hiring staff, a task governed by the contractor's own mandatory policy. *Id.* at 1032. Although hiring decisions can involve policy considerations, the Court held once the policy required background checks, staff had no discretion to skip them.[1] *Id.* at 1033-34. The Court allowed the plaintiffs to proceed with the claims of negligent hiring, retention, and supervision. *Id.* at 1034.

In *Whisnant v. United States*, 400 F.3d 1177 (9th Cir. 2005), the plaintiff did "not allege that the government was negligent in designing its safety inspection procedures; rather, he charge[d] that the government was negligent in following through on those procedures to safeguard the health of employees and customers." *Id.* at 1183. The Ninth Circuit noted, "we have generally held that the *design* of a course of governmental action is shielded by the discretionary function exception, whereas the *implementation* of that course of action is not." *Id.* at 1181. And relatedly, "matters of . . . professional judgment—

---

[1] The Eighth Circuit acknowledged the "failure to act after notice of illegal action does not represent a choice based on plausible policy considerations." *Tonelli v. United States*, 60 F.3d 492, 496 (8th Cir. 1995). The decision in *Anthony*, 632 F. Supp. 3d at 1033, is consistent with this principle, holding that inaction is not susceptible to policy analysis.

particularly judgments concerning safety—are rarely considered to be susceptible to social, economic, or political policy." *Id.* The court noted "removing an obvious health hazard is a matter of safety and not policy," and therefore cannot be protected under the discretionary function exception, and further clarified "the crux of our holdings on this issue is that a failure to adhere to accepted professional standards is not susceptible to a policy analysis." *Id.* at 1183.

In *ARA Leisure Servs. v. United States*, 831 F.2d 193 (9th Cir. 1987), the Ninth Circuit made clear "where the challenged governmental activity involves safety considerations under an established policy rather than the balancing of competing public policy considerations, the rationale for the [discretionary function] exception falls away and the United States will be held responsible for the negligence of its employees." *Id.* at 195. Further, the court noted, "it is insufficient 'for the government to show merely that some choice was involved in the decision-making process . . . The balancing of policy considerations is a necessary prerequisite." *Id.*

Other circuits and district courts have reached similar conclusions, rejecting discretionary function defenses in the absence of a specific policy rationale. In another FTCA action, *Brignac v. United States*, 239 F. Supp. 3d 1367 (N.D. Ga. 2017), the court allowed claims for negligent hiring and retention to proceed where federal prison authorities ignored known misconduct and failed to act despite clear warning signs, emphasizing that inaction unsupported by policy reasoning is not shielded. *Id.* at 1381.

In this case, Plaintiffs have identified multiple specific directives that required immediate reporting of abuse, constant supervision, and structured oversight measures.

These unambiguous directives removed staff discretion, transforming the nature of the supervision into a mandatory operational duty. The manifest failure to carry out these child protection directives was not a high-level policy judgment which Congress intended to protect through the discretionary function exception. While supervision, hiring, and training may fall within the discretionary function exception in certain circumstances, that exception does not apply where mandatory directives govern conduct and where the government cannot offer any policy rationale for its acts and omissions. Because Plaintiffs' claims arise from staff failures to comply with explicit, mandatory directives—and not from protected policy judgments—they fall outside the scope of the discretionary function exception. The government's motion to dismiss these claims should therefore be denied.

        c.    *The Record Demonstrates Non-Discretionary Failures to Act.*

The government's motion mischaracterizes the abuse of Plaintiffs' children as "roughly handling a child," shockingly minimizing the severity of the staff's misconduct. Def.'s Br. at 12. The Yuma Police Report (Exhibit A) and video footage (Exhibit B) show repeated, deliberate acts of physical abuse, including striking, grabbing, dragging, submerging children under water, and throwing children into objects, yanking their arms, and subjecting them to pain and fear. Staff members involved were criminally prosecuted and convicted for such obvious abuse. Given that unequivocal abuse occurred, CDC staff had no discretion but to comply with mandatory directives concerning child safety. The government's attempt to reframe this conduct as discretionary determinations of child abuse is directly contradicted by the actual record. The staff's failures to monitor CCTV,

11

report abuse, and perform inspections were operational failures, not discretionary policy decisions.

## II. THE CASES CITED BY THE GOVERNMENT ARE DISTINGUISHABLE.

The United States relies on several FTCA discretionary function exception cases, but none of them involve mandatory directives. Each case is distinguishable because they either (1) involved general supervisory decisions without any mandatory directive, or (2) did not involve documented failures to follow directives.

In *Croyle*, the plaintiffs alleged negligent supervision after a military priest sexually assaulted their child. 908 F.3d at 377. This priest had been accused twice of sexual assault but had no criminal convictions. *Id.* at 380. While the plaintiffs asserted the government had a duty to warn, it was not alleged the government knew about the misconduct, nor did they identify any governing directive, regulation, or policy. *Id.* at 381. The court held the decision whether to warn of the priest's propensities or what actions to take to restrict contact with children were susceptible to policy analysis. *Id.* at 381. The *Croyle* court did acknowledge, "however, the failure to act after notice of an employee's ongoing illegal conduct is not a choice based on plausible policy considerations." *Id.* at 381-82. Here, it is alleged that CDC staff and Director Laura Frank knew or should have known of the ongoing misconduct. The government's reliance on *Croyle* is misplaced because the plaintiffs in that case did not identify any federal directive governing the priest's supervision. *See id.*

The government also cites *Doe v. Holy See*, 557 F.3d 1066 (9th Cir. 2009), but *Doe* also is distinguishable. There, the Ninth Circuit held negligent hiring, supervision, and

12

failure-to-warn claims were barred because the plaintiff failed to identify any directive, regulation, or policy at all. *Id.* at 1085.

In another case the government relies on, *Strand v. United States*, 233 F. Supp. 3d 446 (D. Md. 2017), the court rejected a negligence claim arising from an assault in an Army camp's locker room because the Youth Program Handbook contained no mandatory supervision requirement relevant to locker room oversight. *Id.* at 452–53. The handbook specified supervision of teens did not always require line of sight supervision. *Id.* at 457. The court found the handbook allowed discretionary judgments regarding privacy and resource allocation. *Id.* Unlike *Strand*, Plaintiffs have cited multiple federal directives explicitly requiring inspections, monitoring, and immediate reporting of abuse.[2]

In *Walding v. United States*, 955 F. Supp. 2d 759 (W.D. Tex. 2013), the plaintiffs alleged abuse at an immigration detention facility and cited general failures of supervision. *Id.* at 773-74. The court found implementing a monitoring program was discretionary because the plaintiffs did not identify any mandatory directive dictating how the program had to be executed. *Id.* at 785.

---

[2] The Government has not identified any authority that the discretionary function exception bars claims for negligent supervision, training, and hiring when there are mandatory directives in place. *See, e.g.*, *Hinsley v. Standing Rock Child Protective Servs.*, 516 F.3d 668, 673 (8th Cir. 2008) (holding CPS had no mandatory duty to warn about a discharged juvenile's abusive propensities in the absence of any directive at all); *Tebault v. United States*, 2025 U.S. Dist. LEXIS 60414, *8 (W.D. Ky. Mar. 31, 2025) (applying discretionary function exception to supervision, training, and retention claims because plaintiff could not identify any directive, policy, or regulation at all); *Bryant v. United States*, 2022 U.S. Dist. LEXIS 124094, *8-9 (D.D.C. July 13, 2022) (holding no duty to warn of employee's abusive propensities because plaintiff failed to identify any directive, policy, or regulation at all).

In each of the cases relied upon by the government, the courts applied the discretionary function exception only because the plaintiffs failed to identify any directives governing the conduct at issue. Here, by contrast, Plaintiffs cite multiple explicit, mandatory directives requiring monitoring, reporting, and other child safety measures—duties that left no room for discretion. The CDC staff's failures to follow these mandatory directives are precisely the type of operational failures that are *not* shielded by the discretionary function exception. While the government contends that how frequently to monitor video feeds is a discretionary judgment, the mandatory directives require monitors "will be placed in an area where constant monitoring is available." (Exhibit C). The language of the directive leaves no discretion to skip or reduce monitoring. The staff's failure to monitor daily—despite hundreds of instances of video evidence of abuse over 90 days—constitutes clear operational negligence.

Because the cases the government relies on either involved broad policy judgments about staffing or did not involve any mandatory directives at all, those cases are inapposite. In contrast, Plaintiffs' claims here relate to failures to comply with nondiscretionary, mandatory safety measures designed to prevent harm to children. Those failures fall outside the discretionary function exception.

### III. FACTUAL DISPUTES PRECLUDE DISMISSAL UNDER RULE 12(b)(1).

Even if the Court were to construe the government's motion as a factual challenge to subject matter jurisdiction under Rule 12(b)(1), dismissal would not be appropriate at this stage because there would be genuine factual disputes that would require resolution. The Ninth Circuit has held courts may consider extrinsic evidence on a factual

jurisdictional challenge, but where material facts are disputed, particularly when intertwined with the merits, dismissal is improper. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The Ninth Circuit also has held government employees' conduct cannot be discretionary if it violates a legal mandate. In *Nurse v. United States*, 226 F.3d 996 (9th Cir. 2000), the Ninth Circuit reversed dismissal of FTCA claims where the complaint alleged unconstitutional and discriminatory policies. 226 F.3d at 1002. The court emphasized where constitutional or statutory violations are alleged, dismissal at the pleading stage is premature because factual development may show the government's actions were non-discretionary. *Id.* This principle applies here, where Plaintiffs allege violations of binding federal directives and reporting mandates.

The government's motion also relies heavily on the Declaration of Laura Frank, the CDC Director during the relevant period. Ms. Frank is directly implicated in Plaintiffs' allegations of negligence. While her declaration attempts to sanitize the CDC staff's conduct as merely discretionary, the Yuma Police Report and video footage contradict her assertions. The report documents numerous failures to conduct inspections, adequately monitor CCTV systems, and report suspected abuse as required by multiple mandatory child safety directives. These failures culminated in criminal convictions of CDC staff, further underscoring the operational nature of the misconduct and the staff's failure to implement and adhere to the government's own mandatory child safety framework. At the very least, these conflicts create genuine and material factual disputes central to the applicability of the discretionary function exception.

Any factual dispute over whether CDC staff had discretion to ignore inspections, CCTV monitoring, and reporting obligations strikes at the heart of both jurisdictional issues and the merits. The Court should deny the government's motion to dismiss as the discretionary function exception is inapplicable here; but, at a minimum, the Court should permit discovery to resolve factual disputes intertwined with the merits of Plaintiffs' claims.

IV. **PLAINTIFFS STATE VALID CLAIMS FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS.**

The United States contends Plaintiffs failed to state claims for negligent infliction of emotional distress because Arizona law only recognizes indirect claims, which a plaintiff can only bring if she is a bystander.[3] Arizona law, however, *does* recognize direct claims of negligent infliction of emotional distress. *Quinn v. Turner*, 155 Ariz. 225 (Ct. App. 1987) ("[R]eject[ing] the defendants' contention that a cause of action for negligent infliction of emotional distress exists only where the plaintiff witnesses an injury to another person."); *Loos v. Lowe's HIW, Inc.*, 796 F. Supp. 2d 1013 (D. Ariz. 2011) (finding "a cause of action for negligent infliction of emotional distress also exists if a plaintiff's shock

---

[3] The Government cites cases where there were neither direct claims nor a valid claim for bystander emotional distress. *See Snyder v. United States*, 2013 U.S. Dist. LEXIS 62902, *2 (D. Ariz. May 2, 2013) (holding plaintiff could not assert NIED as a result of watching her husband experience health problems); *Dougherty v. Lincare, Inc.*, 2011 U.S. Dist. LEXIS 89342, *9 (D. Ariz. Aug. 10, 2011) (granting summary judgment where plaintiff could not provide evidence of emotional distress); *Marquez v. City of Phx.*, 2008 U.S. Dist. LEXIS 126421, *5 (D. Ariz. Aug. 11, 2008) (failing to state claim for NIED where physical injury never manifested); *Meador v. Aramark Sport and Entertain. Servs., LLC*, 562 F. Supp. 3d 221, 247 (holding award for NIED improper where physical injury never manifested).

or mental anguish developed solely from a threat to the plaintiff's personal security without witnessing an injury to another person").

The elements for a direct negligent infliction of emotional distress claim are established in *Loos* as requiring (1) the defendant was negligent; (2) the defendant's negligence created an unreasonable risk of bodily harm to the plaintiff; (3) the defendant's negligence was a cause of emotional distress to the plaintiff; and (4) the plaintiff's emotional distress resulted in physical injury or illness. *Id.* at 1020.

Plaintiffs allege the United States' negligence created an unreasonable risk of bodily harm to the minor children entrusted to its care by way of repeated instances of both apprehension of and actual bodily injury. This negligence caused lasting emotional distress resulting in physical injury to those children. Accordingly, Plaintiffs have stated direct claims for negligent infliction of emotional distress under Arizona law, and the United States' motion to dismiss should be denied.

## CONCLUSION

The government's motion to dismiss mischaracterizes the nature of Plaintiffs' claims and the legal standards governing the discretionary function exception. Plaintiffs have identified multiple mandatory federal directives that required staff to monitor, supervise, and report abuse. The record contains extensive evidence, including police reports and video footage, confirming these duties were not followed. For these reasons, the Court should deny the government's motion in full. In the alternative, Plaintiffs respectfully request the Court allow jurisdictional discovery to resolve the material factual disputes bearing on subject matter jurisdiction.

DATED this 16th day of June, 2025.

Respectfully submitted,

Brittany and David Crosby, on behalf of themselves and on behalf of their minor child, P.C.,
Katelyn and Caleb Hitchcock, on behalf of themselves and on behalf of their minor child, A.R.,
London and Zackery Johnson, on behalf of themselves and on behalf of their minor child, A.J.,
Hannah Lucero and Joseph Lucero, on behalf of themselves and on behalf of their minor child, H.L., and
Mariah Wilson and Caleb Wilson, on behalf themselves and on behalf of their minor child, I.W.

By: */s/ Brewster S. Rawls*
Brewster S. Rawls (VSB No. 23604)
Glen H. Sturtevant Jr. (VSB No. 73458)
Melissa Kouri (VSB No. 99425)
Rawls Law Group, P.C.
211 Rocketts Way, Suite 100
Richmond, VA 23231
(804) 344-0038
(804) 782-0133
brawls@rawlslawgroup.com
gsturtevant@rawlslawgroup.com
mkouri@rawlslawgroup.com

James C. Frogale (VSB No. 79600)
Frogale Law
5250 Cherokee Avenue, Suite 306
Alexandria, VA 22312
james@frogalelaw.com
(703) 488-7140 – Telephone
(703) 810-7679 – Facsimile
*Attorneys for Plaintiffs*