OPNAVINST 1752.2C
20 May 2020

# Navy Family Advocacy Program





**DEPARTMENT OF THE NAVY**
**OFFICE OF THE CHIEF OF NAVAL OPERATIONS**
**2000 NAVY PENTAGON**
**WASHINGTON DC 20350-2000**

OPNAVINST 1752.2C
N170
20 May 2020

OPNAV INSTRUCTION 1752.2C

From:  Chief of Naval Operations

Subj:  FAMILY ADVOCACY PROGRAM

Ref:  See Appendix A

1.  <u>Purpose</u>.  To establish policies to aid in the prevention of domestic and child abuse throughout the Navy; provide support to victims; hold abusers appropriately accountable; and define the Family Advocacy Program (FAP) required by references (a) through (f).  References (g) through (z) provide additional guidance.

   a.  Major changes are summarized in subparagraphs 1a(1) through 1a(5).

   (1) Eliminates the Case Review Committee and replaces it with the Incident Determination Committee (IDC) and clinical case staff meeting (CCSM).

   (2) Incorporates Department of Defense (DoD) Instruction 5525.19 requirement for using the National Crime Information Center to ensure civilian law enforcement is aware of military protective orders (MPO) that are issued.

   (3) Provides guidance on accreditation and inspection reviews required by the DoD with an annual summary submitted to the Office of the Secretary of Defense.

   (4) Adds the identification and tracking of high risk for violence-coordinated community response cases in response to DoD Integrated Product Team recommendations to reduce domestic and child abuse incidents.

   (5) Incorporates the child abuse reporting requirements required by section 20341 of Title 34, U.S.C., and section 575 of Public Law 114-328.

   b.  This instruction is a complete revision and should be reviewed in its entirety.

2.  <u>Cancellation</u>.  OPNAVINST 1752.2B.

3.  <u>Scope and Applicability</u>.  See Appendix B.

4.  <u>Acronyms and Definitions</u>.  Acronyms and definitions relating to FAP used in this instruction have been expanded and clarified in Appendix C.

OPNAVINST 1752.2C
20 May 2020

5.   <u>Reporting Non-Domestic Adult Sexual Assault</u>.  Non-domestic sexual assault occurs when the assault is outside of a marriage, home, or involving someone other than a spouse or intimate partner.  Non-domestic adult sexual assault falls under the Sexual Assault Prevention and Response (SAPR) program.  The FAP must inform the sexual assault response coordinator (SARC) within 24 hours on any incident of adult (non-domestic) sexual assault.  Fleet and family support center (FFSC) counseling staff provides counseling and advocacy services for all adult sexual assault victims.  This report does not rescind the victim's option to submit a restricted report when allowed by State law or status-of-forces agreement (SOFA).

6.   <u>FAP Implementation Guidance</u>.  Commander, Navy Installations Command (CNIC) is the Navy's executor of FAP and provides implementation guidance for the FAP program.

7.   <u>Records Management</u>.  Records Management paragrah is contained in Appendix D.

8.   <u>Review and Effective Date</u>.  Per OPNAVINST 5215.17A, Director, 21st Century Sailor Office (OPNAV N17) will review this instruction annually around the anniversary of its issuance date to ensure applicability, currency, and consistency with Federal, DoD, Secretary of the Navy, and Navy policy and statutory authority using OPNAV 5215/40 Review of Instruction.  This instruction will be in effect for 10 years, unless revised or cancelled in the interim, and will be reissued by the 10-year anniversary date if it is still required, unless it meets one of the exceptions in OPNAVINST 5215.17A, paragraph 9.  Otherwise, if the instruction is no longer required, it will be processed for cancellation as soon as the need for cancellation is known following the guidance in OPNAV Manual 5215.1 of May 2016.

9.   <u>Forms and Information Management Control</u>.  Forms and Information Management Control paragraph is contained in Appendix D.

JOHN B. NOWELL, JR.
Deputy Chief of Naval Operations
(Manpower, Personnel, Training
and Education)

Releasability and distribution:
This instruction is cleared for public release and is available electronically only via Department of the Navy Issuances Web site, https://www.secnav.navy.mil/doni/default.aspx

OPNAVINST 1752.2C
20 May 2020

TABLE OF CONTENTS

| Chapter 1 | Introduction to the Navy Family Advocacy Program | Page |
|---|---|---|
| 1 | General | 1-1 |
| 2 | Program Components | 1-1 |
| 3 | New Parent Support Program (NPSP) | 1-2 |
| 4 | IDC and CCSM Model Implementation | 1-2 |
| 5 | Domestic or Child Abuse Allegations | 1-2 |

| Chapter 2 | Responsibilities | |
|---|---|---|
| 1 | General | 2-1 |
| 2 | Responsibilities | 2-1 |

| Chapter 3 | Commander Responsibilities | |
|---|---|---|
| 1 | General | 3-1 |
| 2 | Primary Role in Preventing and Responding to Domestic and Child Abuse | 3-1 |
| 3 | Maintain the Command FAP | 3-4 |
| 4 | Response to Reports of Domestic and Child Abuse | 3-5 |
| 5 | Commander Actions with Alleged Abuser | 3-6 |
| 6 | MPO Guidance | 3-8 |
| 7 | Special Victim Investigation and Prosecution (SVIP) Capability Covered Offenses | 3-9 |
| 8 | Restricted and Unrestricted Reporting | 3-10 |
| 9 | Safety Move and Expedited Transfer | 3-10 |
| 10 | Domestic Violence Misdemeanor (Lautenberg Amendment to the Gun Control Act) | 3-10 |
| 11 | Use of IDC Information | 3-12 |
| 12 | FAP Training | 3-12 |
| 13 | Child Sexual Abuse | 3-12 |
| 14 | Service Member Abuser Accountability | 3-13 |
| 15 | Domestic Violence Incidents and Consequent Command Action | 3-14 |
| 16 | Domestic Violence Incidents Count and Consequent Command Actions Reports | 3-15 |
| 17 | Guidance for Overseas and Remote Areas Screening | 3-15 |

| Chapter 4 | Installation Commander Responsibilities and FAC | |
|---|---|---|
| 1 | General | 4-1 |
| 2 | Installation Response to Reports of Child Abuse | 4-2 |
| 3 | Emergency Removal of a Child from the Home | 4-3 |
| 4 | Assistance in Responding to Reports of Multiple Victim CSA in DoD-Sanctioned Out-of-Home Care | 4-3 |
| 5 | MPOs, Civilian Protection Orders, and Installation | |

OPNAVINST 1752.2C
20 May 2020

|  | Law Enforcement Responsibility | 4-3 |
| 6 | Installation FAC | 4-4 |

| Chapter 5 | Restricted and Unrestricted Reporting Options | |
| 1 | General | 5-1 |
| 2 | Restricted and Unrestricted Report | 5-1 |
| 3 | Victim Acknowledgement | 5-1 |
| 4 | Communications Between Chaplains and Legal Personnel | 5-1 |
| 5 | Exceptions to Confidential Restricted Reporting | 5-2 |
| 6 | Disclosure of Confidential Communications | 5-2 |
| 7 | Disclosure Rights | 5-3 |
| 8 | Impact of Restricted Reporting | 5-3 |
| 9 | Sexual Assault Forensic Examination Kit | 5-3 |

| Chapter 6 | Operational and Administrative Reporting | |
| 1 | Reporting Abuse | 6-1 |
| 2 | Required Reporting | 6-1 |
| 3 | Suspected Criminal Conduct | 6-1 |
| 4 | Mandatory Reporting | 6-2 |
| 5 | Reports of Domestic Abuse | 6-2 |
| 6 | Reports of Child Abuse | 6-2 |
| 7 | Reporting of CSA | 6-3 |
| 8 | FAP Annual Report | 6-3 |

| Chapter 7 | Domestic Abuse Response | |
| 1 | General | 7-1 |
| 2 | Immediate Victim Safety or Well-Being | 7-1 |
| 3 | Interviews | 7-1 |

| Chapter 8 | Child Abuse Response | |
| 1 | Child Abuse Reporting | 8-1 |
| 2 | Allegations of Child Abuse | 8-1 |
| 3 | FAP Communication with Military Law Enforcement | 8-1 |
| 4 | Protection of Children | 8-2 |
| 5 | Emergency Removal of a Child from the Home | 8-2 |
| 6 | FAP's Responsibilities during Emergency Removal of a Child from the Home | 8-2 |
| 7 | Responsibilities in Responding to Reports of Child Abuse Involving Infants and Toddlers from Birth to Age 3 | 8-3 |
| 8 | Assistance in Responding to Reports of Multiple Victims CSA in DoD-Sanctioned Out-of-Home Care | 8-3 |

| Chapter 9 | FAP VA Response to Domestic or Child Abuse | |

OPNAVINST 1752.2C
20 May 2020

| | | |
|---|---|---|
| 1 | General | 9-1 |
| 2 | Response Capability | 9-1 |
| 3 | FAP VA Initial Crisis Response | 9-2 |
| 4 | FAP VA Ongoing Support Services | 9-3 |
| 5 | Coordinated Community Response, Education, and Training | 9-4 |
| 6 | FAR's Role with the FAP VA | 9-4 |
| 7 | FAP VAs Relationship with FAP Staff and Medical | 9-4 |
| 8 | FAP VAs, SAPR VAs, and SARCs | 9-5 |
| 9 | Education, Training, and Public Awareness | 9-5 |
| | | |
| Chapter 10 | Investigative and Legal Response | |
| 1 | SVIP Capability | 10-1 |
| 2 | SVIP Personnel | 10-1 |
| 3 | Victims' Legal Counsel (VLC) | 10-1 |
| | | |
| Chapter 11 | Incident Determination Committee (IDC) | |
| 1 | General | 11-1 |
| 2 | IDC Purpose | 11-1 |
| 3 | IDC Methodology | 11-1 |
| 4 | IDC Member Training | 11-1 |
| 5 | IDC Membership and Responsibilities | 11-2 |
| 6 | IDC Attendance | 11-3 |
| 7 | Notice of IDC Meeting | 11-3 |
| 8 | Deliberations | 11-4 |
| 9 | ISD Voting | 11-4 |
| 10 | ISDs | 11-5 |
| 11 | ISD Criterion Status | 11-5 |
| 12 | IDC Determination Letter | 11-5 |
| 13 | Record of IDC Deliberations | 11-5 |
| 14 | Navy FAP Central Registry and Personnel Flagging | 11-6 |
| 15 | Confidentiality of IDC Deliberations | 11-6 |
| 16 | Reconsideration of ISDs | 11-7 |
| 17 | Quality Assurance (QA) and Oversight | 11-7 |
| | | |
| Chapter 12 | Clinical Case Staff Meeting (CCSM) | |
| 1 | Safety Planning, Supportive Services, and Clinical Treatment | 12-1 |
| 2 | CCSM Purpose | 12-1 |
| 3 | CCSM Responsibilities | 12-2 |
| 4 | CCSM Treatment Notification Letter | 12-2 |
| 5 | CCSM Attendees | 12-2 |
| 6 | CCSM Agenda | 12-3 |
| 7 | CCSM Review of Treatment Progress and Command Updates | 12-3 |
| 8 | CCSM Discussions | 12-4 |

OPNAVINST 1752.2C
20 May 2020

| 9 | Record of CCSM Discussions | 12-5 |
| 10 | Confidentiality of CCSM Discussions | 12-5 |
| 11 | CCSM Process | 12-6 |
| 12 | Personnel Control Flag | 12-6 |
| 13 | Continuity of Services | 12-7 |
| 14 | Treatment Termination, Treatment Failure, or Case Closure | 12-7 |
| 15 | Communication of Treatment Termination or Case Closure | 12-7 |
| 16 | General Principles for Clinical Intervention | 12-8 |
| 17 | Command Responsibility | 12-8 |
| 18 | Complaints | 12-8 |
| 19 | Quality Assurance (QA) and Oversight | 12-8 |

Chapter 13    Procedures for Review of IDC Determinations
| 1 | General | 13-1 |
| 2 | Applicability | 13-1 |
| 3 | Process for Requesting Review | 13-1 |
| 4 | Installation IDC Review Requirements | 13-2 |
| 5 | Installation ISD Review | 13-2 |
| 6 | CNIC Headquarters Review Team ISD Review Requirements | 13-3 |
| 7 | CNIC Headquarters Review Team Membership | 13-4 |
| 8 | CNIC Headquarters Review Team Member Training | 13-5 |
| 9 | CNIC Headquarters Review Team Review Authority | 13-5 |
| 10 | CNIC Headquarters Review Team Correspondence | 13-6 |

Chapter 14    Clinical Response to Domestic or Child Abuse
| 1 | High Risk for Violence-Coordinated Community Response | 14-1 |
| 2 | Informed Consent | 14-1 |
| 3 | General Clinical Counseling | 14-2 |
| 4 | Clinical Case Management and Risk Management | 14-2 |
| 5 | Clinical Assessment | 14-4 |
| 6 | Intervention Strategy and Treatment Plan | 14-5 |
| 7 | Intervention and Treatment for Eligible Beneficiaries | 14-6 |
| 8 | Criteria for Evaluating Treatment Progress and Risk Reduction | 14-9 |
| 9 | Communication of Case Closure | 14-10 |
| 10 | Special Case Requirements | 14-11 |

Chapter 15    Management of Child Sexual Abuse (CSA) Cases
| 1 | CSA Case Notifications | 15-1 |
| 2 | Allegations Meeting Criteria | 15-2 |
| 3 | Allegations Not Meeting Criteria | 15-2 |

Chapter 16    Temporary Removal of Child from a Home and Overseas and
Isolated Areas Guidance

OPNAVINST 1752.2C
20 May 2020

| 1 | General | 16-1 |
| 2 | Temporary Removal of the Child from the Home by Order of the Installation Commander | 16-1 |
| 3 | Medical or Diagnostic Needs | 16-2 |
| 4 | Long-Term Care or Treatment | 16-3 |
| 5 | Early Returns | 16-3 |
| 6 | Documentation | 16-4 |

| Chapter 17 | Fatality Notification and Review | |
| 1 | Fatality Notification | 17-1 |
| 2 | Review of Fatalities | 17-1 |
| 3 | Review of Navy-Related Fatalities | 17-1 |
| 4 | Cooperation with Non-DON Fatality Review Teams | 17-3 |

| Chapter 18 | Documentation and Records Management | |
| 1 | Documentation of Reported Incidents | 18-1 |
| 2 | Navy FAP Central Registry of Domestic and Child Abuse Incidents | 18-1 |
| 3 | Documentation of Restricted Reports of Domestic Abuse | 18-1 |
| 4 | Reportable Incident Criteria | 18-2 |

| Chapter 19 | FAP Training | |
| 1 | General | 19-1 |
| 2 | FAP Training Policy | 19-1 |
| 3 | Implementation of Training Requirements | 19-2 |
| 4 | FAP Training for Supervisors | 19-2 |
| 5 | Leadership Training | 19-2 |
| 6 | Training for FAP Support Personnel | 19-2 |

| Chapter 20 | FAP Personnel Qualifications and Training | |
| 1 | General | 20-1 |
| 2 | Content of Training | 20-2 |
| 3 | Clinical Service Provider Levels | 20-3 |

| Chapter 21 | Research and Evaluation | |
| 1 | General | 21-1 |
| 2 | Research | 21-1 |
| 3 | Evaluation | 21-1 |
| 4 | QA | 21-2 |
| 5 | QA Procedures | 21-2 |
| 6 | Certifications | 21-2 |

| Appendix A | References | |
| | References | A-1 |

OPNAVINST 1752.2C
20 May 2020

Appendix B    Scope, Applicability, and Confidentiality
              Scope                                                          B-1
              Applicability                                                  B-2
              Confidentiality                                                B-2

Appendix C    Acronyms and Definitions
              Acronyms                                                       C-1
              Definitions                                                    C-3

Appendix D    Records Management and Forms and Information Management Control
              Records Management                                            D-1
              Forms and Information Management Control                       D-1

OPNAVINST 1752.2C
20 May 2020

CHAPTER 1
INTRODUCTION TO THE NAVY FAMILY ADVOCACY PROGRAM

1. <u>General</u>.  Domestic and child abuse have a negative effect upon military readiness, effectiveness, and good order and discipline.  All Navy commands must be knowledgeable of, adhere to, and support all domestic and child abuse prevention and response requirements contained in this instruction in order to reduce and eliminate domestic and child abuse at every level of the command.

   a.  FAP is a command-directed program that provides clinical assessment, treatment, and services for Service members and their families involved in incidents of domestic and child abuse.  The FAP office at the local FFSC provides program management, training, and data on domestic and child abuse.  The primary goals of FAP are prevention, victim safety and support, rehabilitative interventions, command and abuser accountability, and to provide a consistent and appropriate response.

   b.  All Navy personnel are responsible for understanding family advocacy policy, the penalties and consequences for engaging in any form of domestic or child abuse, and the adverse impact of this abuse to command and Navy mission accomplishment as specified in references (a) through (k).

2. <u>Program Components</u>.  FAP principal components are prevention, intervention and treatment, and research and evaluation.

   a.  <u>Prevention</u>.  The goal of FAP prevention is to decrease behaviors that contribute to family maltreatment and enhance behaviors that foster a healthy lifestyle to facilitate family, community, and mission readiness.  The FAP prevention team collaborates with key military and community leaders to provide services that enhance the resilience of Navy communities and reduce the incidence of domestic and child abuse.  These services are primary and secondary prevention services that include education and skill development, advocacy, collaboration, community intervention, referral links to community resources, and marketing the FAP.

   b.  <u>Intervention and Treatment</u>.  The installation FAP provides and coordinates identification, assessment, intervention, treatment, and case management services to all eligible victims of domestic or child abuse.  FAP providers collaborate with command, military, and community resources.

   c.  <u>Research and Evaluation</u>.  FAP sponsors system-wide research and evaluation of prevention and intervention services.  Research projects are conducted through collaborative partnerships with prominent domestic abuse and child maltreatment researchers who understand the unique needs of military families.  Projects are selected based on their potential to inform FAP prevention, outreach, and intervention practice.

OPNAVINST 1752.2C
20 May 2020

3.  <u>New Parent Support Program (NPSP)</u>.  The NPSP offers parenting education and support services to expectant parents and families with children below the age of 3.  The NPSP is a non-clinical FAP secondary prevention program; families are screened for eligibility, and enrollment is voluntary.  The NPSP collaborates with military, civilian, and private agencies to offer efficient and effective services without duplication.  NPSPs at joint bases collaborate with their peers and ensure appropriate services are offered to all eligible families.

4.  <u>Incident Determination Committee (IDC) and CCSM Model Implementation</u>.  Reference (l) requires FAP to use the IDC and CCSM model to review and recommend appropriate clinical responses, if applicable, to allegations of domestic and child abuse.  The IDC and CCSM model divides administrative and clinical FAP functions into two separate reviews.

   a.  The IDC will determine whether a case meets or does not meet DoD-specified criteria for domestic or child abuse.  All cases that meet abuse criteria must be recorded in the Navy FAP Central Registry and staffed to an installation CCSM.  Cases that do not meet abuse criteria will be staffed at the CSSM, referred to appropriate services, recorded in the Navy FAP Central Registry without identifying information, and closed.  IDC must be convened within 60 days of the incident report.

   b.  The purpose of the CCSM is to recommend clinical intervention, safety planning, support services, and appropriate treatment for domestic or child abusers and family.  The CCSM also determines the severity of FAP cases, performs periodic case reviews, recommends flagging and case closures, and makes rehabilitation treatment failure determinations.  CCSM attendees must be limited to individuals with clinical or professional expertise in domestic and child abuse.

5.  <u>Domestic or Child Abuse Allegations</u>.  When an act of abuse allegedly has occurred, the local FAP office must be notified immediately and will in turn, ensure implementation of the procedures in subparagraphs 5a through 5h:

   a.  Medical assessment and treatment for all family members by appropriately trained personnel.

   b.  Notification of the Service member's commanding officer (CO), military law enforcement, and investigative agencies.

   c.  Notification of the local public Child Protective Services (CPS) agency (in alleged child abuse cases only) in the United States and, where covered by agreement, in foreign nations.

   d.  Observance of the applicable rights of alleged abusers.

   e.  Access to appropriate case management and treatment services for all alleged abusers and their families.

OPNAVINST 1752.2C
20 May 2020

f.   The IDC reviews all reports and case records of alleged domestic and child abuse that meet the criteria for reasonable suspicion and makes an incident status determination (ISD) of "met criteria" or "does not meet criteria."

g.   The CCSM reviews the ISD and makes recommendation to the Service member's CO regarding the clinical intervention treatment program.  The primary goals of clinical intervention in domestic abuse are to ensure the safety of the victim and community and promote the cessation of abusive behaviors.

h.   The local FAP must ensure that commanders have timely access to case information when considering appropriate disposition of allegations, to include prognosis for treatment, as determined by a clinician with expertise in the diagnosis and management of the abuse (i.e., child abuse, child neglect, child sexual abuse (CSA), spouse abuse).

OPNAVINST 1752.2C
20 May 2020

CHAPTER 2
RESPONSIBILITIES

1. <u>General</u>. FAP is a command managed program operating under the direction of Deputy Assistant Secretary of Defense (Military Community & Family Programs) (DASD (MC&FP)). Policy for this multi-disciplinary program is under the purview of the Deputy Chief of Naval Operations (Manpower, Personnel, Training and Education) (CNO N1), management of this program lies with CNIC Fleet and Family Readiness (CNIC N9), and execution is the responsibility of all Navy commands and personnel.

2. <u>Responsibilities</u>

   a. <u>OPNAV N17</u>

     (1) Set and maintain Navy strategic vision for family readiness.

     (2) Develop and coordinate overall policy and strategic communications for Navy FAP.

     (3) Establish policy and guidance on the development of FAP, including case management and monitoring that supports the Navy's FAP objectives and meet command, Service member, family member, and victim needs.

     (4) Provide technical assistance, oversight, and support to key FAP stakeholders so they can adequately plan and distribute fiscal, personnel, and program resources necessary for effective FAPs and monitor use of associated funds.

     (5) Designate a FAP manager (FAPM) to manage the FAP.

     (6) Coordinate efforts and resources among all activities serving families to provide the optimal delivery of services, and promote awareness of FAP services.

     (7) Establish standardized criteria, consistent with references (c), (m), and (n), for credentialing and privileging FAP healthcare providers (HCP) who provide clinical services to individuals and families. Such staff must be designated as HCPs who may receive restricted reports from victims of domestic abuse as set forth in reference (d).

     (8) Oversee the notification of DASD (MC&FP) of any cases of extra-familial CSA in a DoD-sanctioned activity within 72 hours.

     (9) Oversee the submission of quarterly domestic and child abuse incident data from the Navy FAP Central Registry of domestic and child abuse incidents to the Director of the Defense Manpower Data Center as set forth in reference (o).

OPNAVINST 1752.2C
20 May 2020

(10)  Ensure the submission of DoD-related fatalities known or suspected to have resulted from an act of domestic violence, child abuse, or suicide related to an act of domestic violence or child abuse on DD Form 2901 Child Abuse or Domestic Violence Related Fatality Notification, by fax to the number provided on the form within 72 hours to DASD (MC&FP).

(11)  Ensure that fatalities known or suspected to have resulted from acts of domestic or child abuse are reviewed annually in line with reference (d).

(12)  Ensure essential data and program information is provided to the Under Secretary of Defense (Personnel and Readiness) (USD (P&R)) to enable the monitoring and evaluation of the FAP in line with references (a) and (n).

(13)  Ensure that personally identifiable information (PII) collected in the course of FAP activities is safeguarded to prevent any unauthorized use or disclosure and that the collection, use, and release of PII is in compliance with references (i) through (k).

(14)  Coordinate annual FAP training with Commander, Naval Education and Training Command (NETC), and CNIC for Service members, as required by references (a) and (b).

(a)  Ensure that awareness and prevention training is being conducted throughout the military leadership continuum.  Assess awareness and prevention training on a regular basis.

(b)  Ensure FAP training is incorporated into leadership development training with content tailored to the level of supervisory responsibility.

b.  Naval Criminal Investigative Service (NCIS)

(1) In line with SECNAVINST 5430.107, maintain and assess quality standards for domestic and child abuse investigations, including an ongoing process for the timely review of these investigations.  The quality standards must incorporate factors most strongly associated with victim cooperation or noncooperation, and track the time to completion for all domestic and child abuse investigations.

(2) Per reference (p), designate Special Victim Investigation and Prosecution (SVIP) military criminal investigation organization investigators to closely interact with assigned specially trained judge advocates, family advocacy representatives (FAR), FAP victim advocates (VA), SARCs, and SAPR VAs, as appropriate, during all stages of the investigative and military justice process for all covered offenses that occur within their jurisdiction, subject to limitations concerning use of restricted reports.

(3) In line with SECNAVINST 5430.107, ensure appropriate response to domestic abuse reports to include:

OPNAVINST 1752.2C
20 May 2020

(a) The documentation of the investigative results and the provision of these results to the Service member's CO to ensure proper adjudication of the incident; and

(b) As lead investigative agent of domestic and child abuse incidents, facilitate access to alleged abusers and victims for FAP and civilian service agencies only when such access will not hamper investigative efforts.

(4) Ensure NCIS special agents and investigators receive domestic and child abuse responder training as outlined in references (a), (c), and (d); and liaise with civilian law enforcement agencies (e.g., obtain documents or information relative to a case) to facilitate effective coordination on all domestic or child abuse cases.

(5) In line with reference (q), facilitate the entry and removal of MPOs in the National Crime Information Center for the duration of the order.

(6) In line with references (d) and (r), comply with DoD fatality notification requirements to include participation on the Department of the Navy (DON) fatality review team.

(7) Provide an NCIS member for the CNIC headquarters review team if requested. The local NCIS special agent in charge designates an NCIS agent to provide pertinent, case-specific information at the IDC meeting under references (c) and (l). The NCIS agent on the installation IDC will be a non-voting member.

c. <u>Office of the Judge Advocate General (OJAG)</u>

(1) Maintain a timely, effective, worldwide SVIP capability and a Victims' Legal Counsel (VLC) program to provide independent legal counsel to support the investigation and prosecution of covered offenses as set forth in JAGINST 5810.3A.

(2) Conduct regular reviews of military justice training, manning, processes, and reporting to ensure all requirements are met.

(3) Ensure all victims participating in court-martial proceedings are informed of their rights under the victim witness assistance program throughout court-martial proceedings in line with reference (s).

(4) Ensure judge advocates are assigned to participate on installation Family Advocacy Committees (FAC), IDCs, and the CNIC review team, and those judge advocates receive initial and annual refresher training.

(5) Maintain procedures to ensure that, in the case of a general or special court-martial involving sexual assault for domestic or child abuse incidents, a copy of the prepared record of the proceedings of the court-martial (not to include sealed materials, unless otherwise approved

OPNAVINST 1752.2C
20 May 2020

by the presiding military judge or appellate court) are given to the victim of the offense, if requested, when the victim testifies during the proceedings.

(6) Provide judge advocate consultation to the FAP VAs and HCPs regarding the presence or absence of exceptions under restricted reporting policy for incidents of domestic abuse.

d. <u>Chief, Bureau of Medicine and Surgery (BUMED)</u>

(1) Establish guidance and protocols for medical response to incidents of alleged child abuse, and restricted and unrestricted reports of domestic abuse, reinforcing policy set forth in references (a) through (d).

(2) Provide resources, professional services, and technical assistance to support the medical aspects of domestic and child abuse, the IDC, and the CCSM.

(3) Establish processes to support coordination between HCPs and FAP, ensuring medical care provided to domestic or child abuse victims by HCPs is gender-responsive, culturally sensitive, and recovery-oriented.

(4) Ensure victims of domestic or child abuse receive timely access to comprehensive medical and psychological treatment, including emergency care treatment and services.

(5) Develop guidance that requires HCPs, including psychotherapists, to contact the FAR or a FAP VA in every incident of domestic abuse for which treatment is sought at the military medical treatment facility (MTF), regardless of reporting option.

(6) Reinforce policy to minimize secondary victimization and establish guidance and protocols for medical response to domestic abuse. HCPs giving medical care to domestic abuse victims must be trained to recognize the high prevalence of pre-existing trauma (prior to present incident) and the concept of trauma-informed care.

(7) Ensure MTF COs appoint a Medical Service Corps social worker as the FAP liaison to serve as a primary point of contact concerning DoD and Navy FAP policy and domestic abuse; to participate on the DON fatality review team and CNIC IDC under references (c), (d), and (l); and consult on the CNIC CCSM as appropriate.

(8) Publicize availability of medical treatment (to include behavioral health), and referral services for alleged abusers who are active duty Service members.

(9) Develop and disseminate first responder FAP training for all military and civilian HCPs.

(10)  Ensure HCPs receive baseline initial and periodic refresher responder training, incorporating the roles and responsibilities of HCPs as outlined in references (a), (c), and (d).

e.  <u>Chief of Chaplains of the Navy/Director of Religious Ministries (CNO N097)</u>

(1) In coordination with OPNAV N17, establish and provide standards for initial and periodic domestic and child abuse training for chaplains and religious ministry personnel.

(2) Require that all chaplains, religious program specialists, and chaplains' assistants receive domestic and child abuse responder training including:  law and policy regarding confidentiality and privileged communication; reporting options and community support services for domestic and child abuse victims and accused; and content required by references (a), (c), and (d).

f.  <u>Shore Readiness (OPNAV N46)</u>.  OPNAV N46 must ensure security forces receive initial and annual refresher first-responder domestic and child abuse training.  This training must include victim witness assistance program policies and requirement to provide victims and witnesses with DD Form 2701 Initial Information for Victims and Witnesses of Crimes, in line with reference (s).

g.  <u>CNIC</u>

(1) Publish guidance to regional and installation commands for management and implementation of the program to:

(a)  Ensure the installation commander or the deputy installation commander chair the IDC and that installations are operating IDCs and CCSMs.

(b)  Ensure installation FAPs incorporate a coordinated approach among medical, legal, investigations, security, chaplains, FFSCs, operational and tenant commands, and civilian resources.

(c)  Establish implementing guidance, as set forth in reference (d), ensuring both timely access to appropriate victim services and procedures that outline FAP VA and other first responder responsibilities.

(d)  Ensure procedures are followed to protect victim's rights and provide support and advocacy services.

(e)  Establish procedures to provide adequate safeguards to shield PII from unauthorized disclosure.

OPNAVINST 1752.2C
20 May 2020

(f)  Develop written FAP response protocols and procedures ensuring timely access to available victim services.  The protocols must include 24 hours a day, 7 days a week services and the responsibilities of the FARs, FAP VAs and other responders under CNIC cognizance.

(g) Ensure that SARCs and FARs coordinate response to sexual assault incidents, in line with references (d), (e), and (f).  Sexual abuse or assault cases involving Service members, spouses, intimate partners, or military dependents 18 years of age or older not perpetrated by a spouse, intimate partner, or family member must be referred to the SAPR program.

(h) Distribute fiscal, personnel, and program resources in coordination with regional commanders and DoD guidance.

(2) Oversee and manage assignment and allocation of deployed resiliency counselors to aircraft carriers and large deck amphibious ships.

(3) Develop procedures, in coordination with Commander, Navy Personnel Command (COMNAVPERSCOM) Career Progression Branch (PERS-8), which clearly outline the processes for:

(a)  Notifying the parent command and Navy Personnel Command (NAVPERSCOM) Personnel, Performance and Transition Division (PERS-83) of all allegations of CSA and the required personnel actions for incidents that meet criteria.

(b)  Directing the installation CCSM to review all domestic abuse incidents that meet criteria and assign a severity level using DoD FAP incident severity scale.  Cases that meet the reportable incident criteria must be reported to the parent command of the Service member via the CCSM treatment notification letter and recorded in the Navy FAP Central Registry.  These cases may be flagged and documented in the Service member's personnel record.

(c)  Coordinating with COMNAVPERSCOM on administrative separation cases when domestic or child abuse or FAP rehabilitation failure is the basis for separation.

(d)  Transferring open FAP or closed unresolved high risk cases to ensure a Service member or family member can continue to receive treatment during permanent change of station (PCS) transitions and deployments.  This must include tracking deployed personnel with active FAP or closed unresolved high risk cases through the same process as PCS transfers, i.e., the case is either tracked to resolution or transferred to FAP at the next command.

(4) Provide assistance in evaluating and assessing training requests for presentation to flag and senior executive service planning boards for training.

(5) Assist Office of the Chief of Navy Reserve, Commander, Navy Recruiting Command (COMNAVCRUITCOM), NETC, Naval Service Training Command (NSTC), and other

OPNAVINST 1752.2C
20 May 2020

commands not on or near Navy installations in developing policies and procedures required to ensure compliance with references (a), (c), (d), and (m).

(6)  Ensure establishment of memorandums of understanding (MOU) and memorandums of agreement (MOA) with local community providers and other Military Services as outlined in references (a) and (d).  Where appropriate or required by MOU or MOA, facilitate training for civilian service providers on FAP policies, roles, and responsibilities.

(7)  Coordinate with the U.S. Marine Corps FAPM to ensure compliance with DON fatality review requirements under references (c) and (d).

(8)  Conduct research on prevention and intervention services for the purpose of program evaluation, accountability, improvement, and quality assurance (QA).

(a)  Ensure research projects are conducted through collaborative partnerships with military and civilian researchers who understand the unique needs of military families.

(b)  Research or assess civilian domestic and child abuse prevention programs for incorporation into Navy efforts.

(9)  Maintain a central database for restricted and unrestricted incidents of abuse reported to the FAP, as well as analyzing data for required reporting to DoD, as required by references (a) and (o).

(a)  Establish data collection and issue policies to ensure standardized release of information and data regarding Navy metrics.

(b)  Coordinate collection and submission of the quarterly and annual FAP incident data and analysis as outlined in references (a) and (o).

(10)  Report to the CNO N1 FAP any germane information (e.g., network issues, best practices, lessons learned, aggregate data) to inform stakeholders and drive policy, training, and resourcing.

(11)  Ensure regional commanders facilitate close coordination between local victim witness assistance program representatives from NCIS, base security personnel, staff judge advocates (SJA), legal assistance attorneys, COs, HCPs at MTFs, corrections facilities staff, FFSC staffs, and chaplains as set forth in reference (s).

h.  NETC

(1)  Provide assistance with general military training (GMT) topics and in evaluating and assessing training requests for presentation to flag and senior executive service planning board.

OPNAVINST 1752.2C
20 May 2020

(2) Provide training data collected in NETC systems to meet DoD requirements.

i. <u>COMNAVPERSCOM</u>

(1) Exercise oversight and overall administration of the victim witness assistance program in the Navy under reference (s).

(2) Coordinate administrative separations in cases of domestic or child abuse, or FAP rehabilitation treatment failure.

(3) Maintain minimum standards for overseas screening that would disqualify high-risk families from transferring to outside the continental United States (OCONUS) locations with limited access to FAP resources, and ensure all Service members pass screening prior to executing overseas orders.

(4) Maintain procedures, in coordination with CNIC, which clearly outline the processes for:

(a) Notification of all FAP cases involving allegations of adult sexual assault offenses; domestic violence involving sexual assault or aggravated assault with grievous bodily harm; and child abuse involving sexual assault or grievous bodily harm. In these cases, a flag must be placed in the personnel system on the Service member who is an alleged abuser. A "flag" is an indicator placed in Service member's file in the assignment control system upon notification of an alleged offense. It indicates to detailing personnel that the individual must have clearance prior to issuing PCS orders. This process is intended to prevent further stress on the Sailor and family members, prevent recurring abuse, and ensure assignment to a geographic location that has adequate services available.

(b) The transfer of open FAP or closed unresolved high risk cases to ensure a Service member or family member can continue to receive treatment during both PCS transitions and deployments, to include tracking those deployed with open FAP or closed unresolved high risk cases through the same process as PCS transfers, i.e., the case is either tracked to resolution, or transferred to FAP at the next command.

(c) Process Freedom of Information Act and Privacy Act requests for agency information regarding domestic and child abuse, under references (c), (i), and (k).

(5) Process, track, and provide quarterly updates to Total Sailor Fitness Office (OPNAV (N170)) as indicated in subparagraphs 2i(5)(a) and 2i(5)(b):

(a) Administrative separation actions involving Service members involved in serious domestic violence incidents or any CSA cases.

OPNAVINST 1752.2C
20 May 2020

(b) Separation of convicted abusers from the Navy.

j. <u>Echelon 2 Commanders</u>.  Commanders must establish family advocacy liaisons throughout their enterprises to facilitate timely reporting of domestic violence incident count-consequent command action reports and also follow-up on missing reports when required.

k. <u>CNIC Regional Commanders</u>

(1) Ensure an effective FAP is established at all installations that incorporates a coordinated community response approach between medical, legal, investigative, security, chaplains, FFSCs, and civilian resources.

(2) Ensure all installations immediately report domestic abuse allegations that are in violation of local, State, and Federal laws to the appropriate law enforcement authority.

(3) Ensure all installations establish a FAC and appoint a FAC chairperson.

(4) Ensure that installation agencies have collaborated with counterpart agencies on military installations in close geographical proximity to ensure coordination in providing FAP services to military families.  This includes developing inter-Service or inter-installation agreements or MOUs between the installations, as appropriate.

(5) Ensure that domestic abuse victims have access to domestic abuse victim advocacy services 24 hours a day through personal or telephonic contact.

(6) Ensure there are a sufficient number of qualified personnel to provide domestic abuse victim advocacy services.

(7) Issue a written policy setting forth a 24-hour emergency response plan for domestic and child abuse incidents.  This plan should set forth the procedures and criteria for:

(a) The removal of child victims of abuse or other children in the household when they are in danger of continued abuse.

(b) Safe transit of such children to appropriate care when the installation is located OCONUS, which includes procedures for transit to a location with appropriate care in continental United States (CONUS).

l. <u>Remote Navy Commands</u>

(1) Navy commands supported by other Services' FAP personnel must, at a minimum, be in compliance with the respective Service's FAP requirements.  Joint bases are under the FAP of

OPNAVINST 1752.2C
20 May 2020

the Service which is the lead agency.  Some reporting requirements may still have to be made to Navy headquarters.

(2) Reserve, Recruiting, Naval Reserve Officer Training Corps (NROTC), and other commands not on or near Navy installations and not serviced by another Services' FAP assets must develop effective victim response procedures that utilize local community resources to meet the unique needs of command and personnel assigned.

m.  <u>Family Advocacy Officer (FAO)</u>

(1) Have basic knowledge and general understanding of FAP policies and processes.

(2) Be appointed by the commander of each installation as the designated official responsible for administrative management and effective implementation of the FAP under reference (c).

(3) Facilitate the development, oversight, coordination, administration, and evaluation of the FAP under current policy and guidance.

(4) Be responsible for maintaining clear lines of authority and accountability in the FAP to ensure coordination of the FAP functions and the integration of services.

(a)  This includes drafting local instructions, coordinating MOUs with non-law enforcement civilian agencies, and ensuring there are written case protocols.

(b)  The FAO does not decide clinical issues but might, for example, ensure that IDCs and CCSMs meet regularly.  They do not become involved in case intervention plans.

n.  <u>FAR or Clinical Site Director</u>

(1) Serve as the point of contact for identification, rehabilitation or behavioral counseling, and intervention.

(2) Provide recommendations to the local commander and assist the command in coordinating actions to ensure the safety and protection of victims and witnesses.

(3) Ensure FAP case status determinations, case dispositions, and case management of each reported domestic and child abuse incident is in compliance with current policy and guidance.

(4) Assign an FFSC clinical service provider as FAP case manager for each FAP case upon entry of the case into the FAP system.

OPNAVINST 1752.2C
20 May 2020

    o.  <u>FAP VAs</u>

    (1) Be the primary means of ongoing education and support to the victim.

    (2) Be directly accountable to the FAR or clinical site director while carrying out domestic abuse advocacy responsibilities.

    (3) Provide victim advocacy for all victims of domestic abuse.  In cases where children and dependents of Service members are victims of abuse not necessarily characterized as a FAP incident, FAP VAs may provide services as eligibility and resources support.

    (4) Provide support services to the non-offending parents involved in child maltreatment cases.

    (5) Acknowledge understanding of advocacy roles and responsibilities.

    (6) Respond immediately upon notification of a report of domestic abuse.

    (7) Provide non-clinical crisis intervention and ongoing support, in addition to referrals for victims of domestic abuse regardless of service affiliation.

    (8) Assist the victim in navigating those processes required to obtain care and services needed.  FAP VAs will not serve as the victim's mental health provider, act as an investigator, or provide legal advice.

    p.  <u>Family Advocacy Liaison</u>

    (1) Be the command-designated person responsible for administrative coordination between command and FAP.

    (2) Have a clear understanding of the FAP.

    (3) Adhere to FAP confidentiality requirements.

    (4) Facilitate timely reporting of domestic violence incident count consequent command action reports and follow-up on missing reports.

    q.  <u>Deployed Resiliency Counselor</u>

    (1) Serve as a liaison to the homeport FAP executing safety plans by conducting interviews and treatment as recommended by the FAP.  As liaison to the homeport FAP, deployed resiliency counselors are considered HCPs, and therefore may take restricted reports of domestic abuse.

OPNAVINST 1752.2C
20 May 2020

(2) Provide non-medical, short-term counseling and make appropriate referrals to assist Service members and their families.

(3) Conduct psycho-educational training consistent with the training provided at FFSCs for personnel resiliency programs such as SAPR, FAP, suicide prevention, alcohol and drug abuse, and other related topics as needed.

(4) Ensure compliance with privileging and credentialing, background security checks, training, and any other regulatory requirements to maintain an ability to conduct non-medical counseling services aboard ships and on Navy installations.

OPNAVINST 1752.2C
20 May 2020

CHAPTER 3
COMMANDER RESPONSIBILITIES

1.  <u>General</u>.  When an incident of suspected domestic or child abuse by a Service member comes to the commander's attention, prompt action must be taken to provide for the safety of victims and hold abusers appropriately accountable for their behavior.  Additionally, commanders must undertake measures to prevent further abuse to the victim and promote victim safety.  For purposes of this instruction, commanders, COs, and officers in charge in billets designated with command responsibility and nonjudicial punishment (NJP) authority will be referred to as commanders.  All incidents of domestic and child abuse must be reported by the command to the responsible echelon 2 command through the required chain of command using an Operational Report (OPREP)-3 Navy Unit Situation Report (SITREP) or OPREP-3 Navy Blue, as outlined in reference (r).

2.  <u>Preventing and Responding to Domestic and Child Abuse</u>.  Commanders must:

    a.  Ensure alleged military abusers are held appropriately accountable for their conduct through appropriate disposition under the Uniform Code of Military Justice (UCMJ) and administrative regulations, as applicable.

    b.  Ensure familiarity with the responsibilities delineated in this instruction.  If necessary, the commander must involve the next higher superior officer in the chain of command.

    c.  Refer any incident of domestic abuse reported or discovered independent of law enforcement, to military law enforcement or the appropriate criminal investigative organization for possible investigation under reference (d).

    d.  Ensure all unrestricted allegations of domestic abuse and all allegations of child abuse are referred within 24 hours, to military law enforcement agencies and FFSC FAP.

    e.  Ensure the victim, alleged abuser, and family members of the victim who are eligible for treatment in a military medical facility (including those eligible on a fee-paying basis) are aware of appropriate medical, mental health, and other assessments, treatment, and referrals, recognizing the needs of a culturally diverse population, including needs for interpreter or translation services.

    f.  Ensure those individuals who are not eligible to receive such services and treatment are referred to the appropriate civilian office, agency or organization for services and treatment.

    g.  Ensure safe housing has been secured for the victim as needed.

        (1) The preference is to remove the alleged abuser from the home when the parties must be separated to safeguard the victim.

OPNAVINST 1752.2C
20 May 2020

(2) If necessary and within the commander's authority, the alleged abuser will be directed to find alternative housing.

h.   If needed, cooperate in making the alleged abuser available to be served with a civilian protective order, consistent with Service regulations.  Obtain a copy of the protection order and review it with the servicing legal office.

i.   If the alleged abuser is a civilian:

(1) If appropriate, request the installation commander bar the individual from the installation.

(2) Refer allegations of alleged abuse to the appropriate criminal investigative organization for possible investigation.

(3) Consult with the servicing civilian personnel office and the servicing legal office when the alleged abuser is a U.S. civil service employee.

j.   Provide the victim with information about FAP, victim advocacy services, and legal services.

k.   Ensure a victim advocacy service is provided within a coordinated community response.

l.   Ensure victims of domestic abuse, living on or off the installation, have access to victim advocacy services 24 hours a day through either personal or telephonic contact.  Such services must include both immediate and ongoing information and referral assistance, safety planning, and support services.  Victims must be actively involved in all aspects of the development of their safety and service plans.  Victims should be encouraged to make decisions regarding their safety and welfare, including refusal of victim advocacy services.

m.   As applicable, enforce the victim's safety plan and coordinate with the VA to monitor the victim's safety.

n.   Review each law enforcement investigative report with the servicing legal office to determine the appropriate disposition of each allegation, to include referral to court-martial proceedings, nonjudicial punishment, or non-punitive/no action.  The commander must make this determination independent of any determination by the IDC as to whether this incident should be entered into the Navy FAP Central Registry.  If the case merits possible administrative separation of the alleged military abuser, notify Navy Personnel Command (PERS-83) to initiate processing and flag the member's file in the assignment control system.

OPNAVINST 1752.2C
20 May 2020

o.  Document, as appropriate, in the Electronic Service Record or Official Military Personnel File for active duty Service members found to commit domestic or child abuse offenses (e.g., administrative remarks, evaluation).

p.  Inform DoD Central Adjudications Facility when the alleged conduct which creates doubt about the alleged abuser's judgment, reliability, and trustworthiness under SECNAV M-5510.30.  Conditions that could raise a security concern and may be disqualifying include:

(1) Allegations or admissions of criminal conduct, regardless of whether the person was formally charged;

(2) A single serious crime or multiple lesser offenses; or

(3) A conviction (Federal, State, local courts and courts-martial) for an offense which carries a maximum punishment exceeding 1-year confinement.

q.  Consult FAP staff to determine if an alleged abuser is a suitable candidate for clinical intervention services, taking into consideration the alleged abuser's level of risks to the victim and others.

r.  Meet with FAP case managers at least quarterly to review progress.  If the command identifies challenges with recommended actions the FAR or clinical site director will be consulted.  A command's monitoring of individualized treatment plans is very important in assisting members to successfully meet treatment goals and must continue until the case is closed.

(1) Upon receipt of the CCSM treatment notification letter, the CO (or their designee) must:

(a)  Provide acknowledgement of receipt of the letters and concurrence or non-concurrence with the treatment recommendations to FAP within 7 business days of notification. If the CO recommends non-concurrence, a reason must be stated in reply to FAP.

(b)  Review and discuss the recommendation with the abuser, victim, or sponsor, as appropriate.  The CO should limit this discussion to the treatment recommendation, and not discuss the facts or circumstances surrounding the allegations.

(2) Attend CCSM meeting as an invited guest in incidences involving unresolved high risk case closures or terminations due to failure to meet clinical objectives.  The FAR should invite a military legal representative and the CO of the active duty abuser to assist in the clinical case closure discussion for risk management.

OPNAVINST 1752.2C
20 May 2020

s.   Ensure the commander at the home station is notified in advance of the return of an alleged abuser or victim from deployment.  The homeport commander in coordination with FAP must ensure safety precautions are planned and implemented prior to the arrival of the Service member.  Once the Service member is returned, the commander at the home station must ensure the FAP has planned and coordinated safety precautions.

t.   Consult personnel officials to determine if temporary additional duty or PCS orders will interfere with completion of any directed intervention services, or if they should be canceled or delayed.  When temporary additional duty or PCS actions cannot be canceled or delayed, coordinate efforts with the gaining command to ensure continuity of services with the gaining installation FAP, and other military and civilian agencies regarding intervention for both the alleged abuser and the victim.

u.   If necessary to ensure protection of all persons alleged or known to be at risk from domestic abuse, issue  an appropriate MPO.  If issued, ensure the MPO is provided to the appropriate military law enforcement agency.

v.   Provide an accurate and timely account of domestic violence incidents and consequent command actions, to include when no action is taken.  More in-depth instructions for reporting domestic violence incidents and consequent command actions are contained in paragraph 17 of this chapter.

w.   Consult with FAP staff on all high risk and closed unresolved cases to ensure victim's safety and offender's accountability.

3.   Maintain the Command FAP.  Commanders must:

a.   Issue and post a FAP policy statement that includes the responsibilities of all personnel to prevent unacceptable conduct, provide a safe, respectful, and healthy environment intolerant of domestic and child abuse and related behaviors, and prohibit reprisals against individuals who submit reports of such behavior.

b.   Ensure all Service members involved in open FAP cases or closed unresolved high risk cases are properly screened prior to authorizing transfer to another command.  Service members involved in CSA cases must not be transferred until the case is resolved.

c.   Ensure victim safety and support is implemented through the FAP as specified in subparagraphs 3c(1) through 3c(6).

(1) Ensure immediate and continuous victim response capability is available in all locations.  Victims must be given timely access to appropriate services, including medical care, victim advocacy, counseling, law enforcement, victim witness assistance program information, and chaplain services.

OPNAVINST 1752.2C
20 May 2020

(2) Report all allegations of domestic or child abuse immediately to FAP to prompt a thorough risk assessment and safety planning.

(3) Ensure victims of domestic or child abuse receive sensitive care and support and are not subjected to secondary victimization as a result of reporting the incident.

(4) Inform victims of domestic abuse of the limits of confidentiality and reporting options.

(5) Ensure all Service members, family members, and civilian personnel are made aware of military and civilian resources available to assist victims of domestic and child abuse.

(6) Ensure all Service members and family members are aware of the policies, provisions, and agreements delineated in the transitional compensation for abused dependents policy.

d. Provide oversight and guidance to subordinate commands and units regarding:

(1) Management and implementation of the FAP within their area of responsibility.

(2) Facilitation of awareness and prevention training; maintenance of current information on victim resources; and ensure compliance with the FAP requirements.

(3) The requirement of subordinate commanders to:

(a) Appoint persons at the command level to manage and implement the local FAP and appoint members to IDCs in compliance with references (a), (c), (d) and (m).

(b) Meet the standards for FAP in reference (a).

(c) Designate a command representative from each command triad (CO, executive officer (XO), command master chief (CMDCM)) who must serve as a voting member of the IDC and receive initial and annual IDC training. The command representative duties are outlined in chapter 11.

4. <u>Response to Reports of Domestic and Child Abuse</u>. Commanders must:

a. Take an active role in the coordinated community response for prevention of domestic and child abuse. Senior enlisted personnel serving in advisory roles to the commander must also be familiar with these procedures.

OPNAVINST 1752.2C
20 May 2020

b.   Establish response protocols for handling all reports of domestic or child abuse.  Upon report of any incident of domestic or child abuse, the alleged abuser must be referred to FAP for clinical assessment regardless of when the alleged incident occurred.

c.   Support public awareness, education, and other initiatives to strengthen couples and families to prevent domestic and child abuse.

d.   Coordinate with FAP and other components of the coordinated community response system to create a command climate that encourages the safety and resiliency of the Service member and their family and supports help-seeking behaviors.

e.   Ensure Service members and family members understand the need to give informed consent for FAP clinical assessment, intervention services, and supportive services or clinical treatment.  Clients are considered voluntary, non-mandated recipients of services except when the person is:

(1) Issued a lawful order by a military commander to participate.

(2) Ordered by a court of competent jurisdiction to participate.

(3) A child and the parent or guardian has authorized such assessment or services.

5.   <u>Commander Actions with Alleged Abuser</u>

a.   <u>Duty Restriction</u>.  FAP involvement, by itself, does not require any duty restriction. Active duty members or families receiving intervention services for domestic or child abuse who are sufficiently emotionally, psychologically, and physiologically stable can be assigned to any location that offers appropriate services.

b.   <u>Review of Duty Assignment</u>.  Commanders must review the duty assignment status of all Service members whose current duties may make it difficult for them to receive FAP intervention.

(1) If an incident occurs in a family under PCS orders, the Service member's CO should suspend the assignment until evaluations are completed to ensure availability of services at the gaining command.

(2) Service members with an open maltreatment record at the time they receive PCS orders for an overseas assignment should be processed as a family with special needs for FAP services from the gaining command.

OPNAVINST 1752.2C
20 May 2020

c.  <u>Military Administrative and Disciplinary Actions and Clinical Intervention</u>.  The military disciplinary system, administrative separation system, and FAP clinical intervention are separate processes.

(1)  Service members alleged to have committed acts of domestic or child abuse may be subject to prosecution under the UCMJ or civilian prosecution.  Commanders must take appropriate action on all alleged or known incidents of domestic or child abuse.

(2)  Commanders may proceed with administrative or disciplinary actions as appropriate prior to:

(a)  Receipt of IDC decisions.

(b)  Completion of FAP clinical assessments.

(c)  Formulation of treatment plans.

(d)  Initiation or completion of clinical treatment.

d.  <u>Temporary Assignment</u>.  Alleged abusers may be temporarily reassigned or removed from a position of authority or from an assignment, not as a punitive measure, but solely for the purpose of maintaining good order and discipline within the member's command.  Commanders must:

(1)  Emphasize that every alleged abuser is presumed innocent until proven guilty regardless of safety measures, such as relocation and MPOs, taken to protect the victim or others within the command.

(2)  Safeguard the alleged abuser's rights and preserve the integrity of a full and complete investigation to include no formal or informal investigative interviews or inquiries by personnel other than military criminal investigation organization or civilian law enforcement.  This responsibility lies with the appropriate LEA handling the investigation.  If questioning must occur due to exigent circumstances, suspected Service members must be advised of their Article 31(b), UCMJ rights.

(3)  Ensure procedures are in place to:

(a)  Refer notification to the appropriate military criminal investigation organization as soon as possible after receiving a report of domestic abuse.

(b)  Restrict information pertinent to an investigation to those who have an official need to know.

(c) Inform the alleged abuser, as appropriate, about the investigative and legal processes that may be involved.

(d) Inform the alleged abuser of available counseling support.

(4) Determine the need of the issuance of an MPO or a temporary or permanent transfer from their current duty station.

(5) Monitor the well-being of the alleged abuser, particularly for any indications of suicidal behaviors, and ensure appropriate intervention occurs, if indicated.

(6) Submit message notifications, to include initial, updates, and final disposition and other reports as required under reference (r).

e. <u>FAP Rehabilitation Failure</u>. Service members may be separated from naval service by reason of FAP rehabilitation failure, see chapter 12.

f. <u>Service Member Accountability</u>. Active duty Service members must be held appropriately accountable for their actions and Navy commands must diligently track all FAP cases. The Service member abuser's command, in coordination with CNIC, the local or assigned NCIS agent, the command's SJA or servicing region legal service office attorney, and COMNAVPERSCOM, must remain vigilant from the initial allegation of a domestic or child abuse incident to the final resolution of the case.

6. <u>MPO Guidance</u>. An MPO may be implemented to safeguard victims. Commanders should consult with a staff judge advocate prior to issuance. Commanders must take into consideration the requirements of the Lautenberg Amendment (discussed in paragraph 10 of this chapter). Commanders must ensure their installation LEA is provided a copy of the MPO to coordinate with NCIS to place in the National Crime Information Center for the duration of the order and inform local LEA of initiation and termination of the order as delineated in references (d) and (q). Domestic abuse MPOs should remain in effect until such time as the issuing commander terminates the order or issues a replacement order. Commanders:

a. Must use DD Form 2873 (Military Protective Order) and provide copies of the signed MPO to the Service member who is the subject of the order, the command file, and to the protected person (or the custodial parent of a child who is the protected person).

b. Must advise the person seeking the MPO that the MPO is not enforceable by civilian authorities off base and that victims desiring protection off base should seek a civilian protective order. Off base violations of the MPO should be reported to the issuing commander, DoD law enforcement, and NCIS.

OPNAVINST 1752.2C
20 May 2020

c.   Must notify NCIS and the appropriate civilian authorities of the issuance of an MPO and of the individuals involved in the order.

d.   May issue an MPO to an active duty member only to prohibit the member from contacting or communicating with the protected person or members of the protected person's family or household and to direct the member to take specific actions that support, or are in furtherance of, the prohibition.

e.   Must tailor the terms of the MPO to meet the specific safety needs of an individual victim.

f.   May issue an MPO even if a civilian protective order has already been issued by a judge or magistrate.

g.   May issue an MPO that is applicable to locations beyond the jurisdiction of the court that issued a civilian protective order, including locations outside of the United States.

h.   Must ensure the terms of the MPO do not contradict the terms of a civilian protective order.

i.   May issue an MPO with terms that are more restrictive than those in the civilian protective order to which the member is subject.

j.   May enforce an MPO whether the Service member is on or off of the installation.

k.   Will contact the gaining command and provide the gaining command with a copy of the MPO.  After transferring, the gaining commander may issue a new MPO when necessaryto protect the victim.

l.   Will be familiar with specific guidance for the initiation of domestic or child abuse related MPOs as discussed in chapter 4, paragraph 5.

7.   Special Victim Investigation and Prosecution (SVIP) Capability Covered Offenses

a.   Commanders at all levels must immediately report, through law enforcement channels, to the appropriate military criminal investigation organization all allegations of special victim capability covered offenses of which they become aware involving persons affiliated with the DoD, including active duty personnel and their dependents, DoD contractors, and DoD civilian employees as delineated in reference (p).

b.   SVIP covered offenses are:

(1) Unrestricted reports of adult sexual assault.

OPNAVINST 1752.2C
20 May 2020

(2) Unrestricted reports of domestic violence involving sexual assault or aggravated assault with grievous bodily harm.  Grievous bodily harm means serious bodily injury.  It does not include minor injuries, such as a black eye or a bloody nose, but does include fractured or dislocated bones, deep cuts, torn members of the body, serious damage to internal organs, strangulation, and other serious bodily injuries.

(3) Child abuse involving sexual assault or aggravated assault with grievous bodily harm.

8.  Restricted and Unrestricted Reporting.  Commanders must ensure all command personnel take appropriate measures to safeguard privacy and protected information.  When a victim discloses domestic abuse to someone other than a FAP VA, HCP, FAP VA supervisor, SAPR VA, SARC, or deployed resiliency counselor, disclosure may result in command notification and investigation of the allegations.  If the person to whom the victim confided the information (e.g., roommate, friend, family member) is in the Service member's chain of command or is a DoD law enforcement member, there can be no restricted report.  Navy ombudsmen are representatives of the command and cannot receive restricted reports.  When information regarding a domestic abuse incident is disclosed to the command or the FAP from a source independent of the restricted reporting avenues, law enforcement must be notified and will conduct an investigation when appropriate.  Commanders acquiring information under these circumstances about a domestic abuse incident must immediately notify law enforcement and FAP personnel.  However, no allegation involving child abuse may be restricted; all incidents of suspected child abuse must be reported in accordance with law and this instruction.

9.  Safety Move and Expedited Transfer

a.  Safety Move.  When concerns for the safety and well-being of Service members or their dependents dictate a PCS transfer prior to normal projected rotation date, a safety move may be authorized under reference (t), article 1300-1200.  Commanders shall coordinate with PERS in the event a safety move is warranted.

b.  Expedited Transfer.  Under the FAP, when a Service member files an unrestricted report of sexual assault, they may request an expedited transfer or a change of duty station prior to their normal projected rotation date under reference (t), article 1300-1200.  An expedited transfer of a Service member will also include his or her dependents and military spouse, as applicable Commanders shall coordinate with PERS in the event a safety move is warranted.

(1) This includes, but is not limited to, a temporary or permanent move to a different department, division, or unit within the current command, or to a different command within or outside the current command's geographical area.

(2) For Reservists, a transfer or reassignment includes provisions to perform inactive duty training on different weekends or times other than the alleged abuser or with a different unit

OPNAVINST 1752.2C
20 May 2020

in the home drilling location to ensure undue burden is not placed on the Service member or his or her family by a transfer.

10. <u>Domestic Violence Misdemeanor (Lautenberg Amendment to the Gun Control Act 18 U.S.C. § 922 (g)(9))</u>.  The amendment prohibits anyone who has been convicted of a misdemeanor crime of domestic violence from shipping or transporting in interstate or foreign commerce, or possessing in or affecting commerce any firearm or ammunition, or receiving any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.  The Lautenberg Amendment prohibits any person convicted of a misdemeanor crime of domestic violence from buying or possessing a firearm.

   a.  A "qualifying conviction" includes a conviction by a general or special court-martial which meets the definition of a "misdemeanor crime of domestic violence" as defined by DoDI 6400.06, Domestic Abuse Involving DOD Military and Certain Affiliated Personnel.

   b.  The term "qualifying conviction" does not include summary court-martial conviction, imposition of NJP under article 15 of the UCMJ or deferred prosecutions, or similar alternative dispositions in civilian courts.  The term also does not include a determination by the IDC that this incident must be entered into the Navy FAP Central Registry of domestic abuse incidents.

   c.  All installations must post notices about the Lautenberg Amendment and the procedures for implementation in all facilities in which Government firearms or ammunition are stored, issued, disposed of, and transported.

   d.  Prior to issuing any firearm or ammunition to any individual, the issuing activity must require that the individual execute a DD Form 2760 Qualification to Possess Firearms or Ammunition.  Where appropriate, this form will be executed as part of a command check-in or as part of a watch or assignment qualification with a subsequent obligation on the part of the individual concerned to inform the issuing activity if he or she incurs a qualifying conviction.  This requirement applies equally to morale, welfare, and recreation (MWR) and non-appropriated fund instrumentalities.  Refusal to execute the DD Form 2760 will result in a denial of access to Navy firearms and ammunition.

   e.  Prior to accepting a privately-owned firearm or ammunition from an individual for safekeeping or for any other reason, Navy facilities, including MWR and non-appropriated fund instrumentalities entities, will require the individual, whether military or civilian, to execute a DD Form 2760.  Failure to comply will result in denial of request.

   f.  Possession of firearms and ammunition in Government quarters, where otherwise allowed, is conditioned upon the execution by all occupants of a DD Form 2760.  Failure to execute the DD Form 2760 will result in a denial of authority to bring firearms and ammunition into Government quarters.

OPNAVINST 1752.2C
20 May 2020

g.  Each command must inform its personnel of the Lautenberg Amendment, its consequences, and this policy.  This includes posting notices in all facilities in which Government firearms or ammunition are stored, issued, disposed of, and transported.  Information provided must include notice that personnel have an affirmative, continuing obligation to inform commanders or supervisors if they have, or later obtain, a qualifying conviction.  DD Form 2760 must be made available for those personnel who report a qualifying conviction in compliance with obligations to do so.

11. Use of IDC information

a.  The IDC process does not preclude the commander from directing an investigation under R.C.M. 303 to determine if a violation of the UCMJ has occurred and taking appropriate action under R.C.M. 306, if warranted.  However, a commander may not take administrative or disciplinary action in regards to a Service member based solely upon the IDC's substantiation of an act of domestic or child abuse.  The information presented to the IDC shall be provided to the commander to assist in the commander's disposition decision.

b.  Administrative separation processing must be started when an allegation of CSA meets the relevant criteria.

12. FAP Training

a.  Military Leadership Training.  Reference (a) specifies qualified FAP trainers must provide training on the prevention of and response to domestic and child abuse to:

(1) Commanders within 90 days of assuming command.  This training must consist of command FAP updates and local FAP initiatives and is in addition to the DoD annual training requirement.  Commanders must ensure completion is documented in Fleet Training Management and Planning System under the listing:

GMT and OTHER TRAINING> COMMAND TRIAD TRAINING> TRIAD TRAINING> COMMAND TRIAD DOMESTIC ABUSE, CHILD ABUSE, AND CHILD NEGLECT

(2) Non-commissioned officers who are senior enlisted advisors, annually.

b.  Civilian Supervisors of Service Members.  Periodic FAP training is also required for civilians who supervise Service members.  The unit commander or civilian director responsible for facilitating the training of civilians supervising Service members must ensure that all FAP training requirements are met.

13. CSA

OPNAVINST 1752.2C
20 May 2020

a. <u>CSA Case Notifications</u>.  In cases involving allegations against active duty military of CSA, commands will immediately notify law enforcement and the local FAR.

(1) Upon receipt of notification from command or FAP, COMNAVPERSCOM Enlisted/Officer Performance and Separations Branch (PERS-833/834) will temporarily flag the Service member's record to preclude transfer, reenlistment, or promotion of the Service member pending resolution of the case.  (See chapter 11 for details of the flagging process.)

(2) Commanders are responsible for taking steps to ensure victim safety, including reviewing the CCSM and FAP case manager's recommendations in regard to safety planning and the issuing of an MPO, if appropriate.  Victims and other family or Service members must be provided intervention options by FAP personnel.

b. <u>CSA Processing Requirements</u>.  Swift and appropriate command action can help in protecting child victims, restoring families to a healthy status, and correcting the behavior of an abusive Service member.  Reference (t), articles 1910-233 and 1611-010, requires administrative processing of enlisted and officer Service members involved in the commission of a serious offense involving a child or children.  Commission of a serious offense does not require adjudication by nonjudicial or judicial proceedings; however, the offense must be substantiated by a preponderance of evidence.  COs are required to make preliminary notification to PERS-833/834 prior to initiation of administrative processing.

c. <u>c.   Treatment Eligibility.   PERS-83 will make retention or separation recommendations to the separation authorities.  In order for retained Service members to participate in a treatment option, eligibility will be based on the criteria in subparagraphs 14c(1) through 14c(4):</u>

(1) Recommendation by the CO for retention.

(2) Suitability for treatment or rehabilitation by competent authority.

(3) Demonstrated record of positive performance.

(4) Definite potential for further worthwhile naval service.

d. <u>Awaiting Disposition Decision</u>

(1) Service members and their families may receive FAP support while awaiting administrative separation processing directions from COMNAVPERSCOM.

(2) During the review process, the commander must not reenlist the Service member. Requests for extensions should be forwarded to PERS-833.

OPNAVINST 1752.2C
20 May 2020

e.  <u>Allegations Meeting Criteria and Service Member is Retained</u>.  Alleged abusers determined to have met criteria for an incident of child sexual maltreatment and are retained in the Navy must follow the recommendations of the CCSM.

14.  <u>Service Member Abuser Accountability</u>.  Active duty Service members must be held appropriately accountable for their actions and Navy commands must diligently track all FAP cases.  The alleged abuser's command, in coordination with CNIC, NCIS, OJAG, and COMNAVPERSCOM, must remain vigilant from the initial allegation of a domestic or child abuse incident to the final resolution of the case.

15.  <u>Domestic Violence Incidents and Consequent Command Action Reporting to FAP</u>.  Under reference (u), commanders must track and report domestic violence incidents that meet the prescribed DoD FAP severity levels and appropriately document these actions in the active duty Service member's personnel records.  All consequent command actions, including administrative measures, NJP proceedings, and courts-martial, must be reported to FAP and appropriately documented in the service member's service record.  Commands must also report incidents that could not be adjudicated for the following reasons:  lack of jurisdiction (includes civilian trial or conviction); the allegation was unfounded by the command, meaning it was false or did not meet the elements or criteria of a domestic violence offense or incident; statute of limitations expired; the subject separated (includes discharge, transfer to Fleet Reserve or retirement), died or deserted; insufficient evidence, or the victim declined or refused to cooperate with the investigation or prosecution.  If the commander decides not to pursue command action the consequent command action should be reported as "no action taken" in the "other" category.

a.  Incidents to be reported must meet the DoD FAP incident severity scale for the levels in subparagraphs 16a(1) through 16a(3) when victim is spouse or intimate partner:

(1) Severity Level 3 (Severe Physical).

(2) Severity Level 2 (Moderate Physical).

(3) Any severity level for sexual abuse of a spouse or intimate partner.

b.  <u>Consequent Command Actions</u>.  Subparagraphs 16b(1) through 16b(7) provide categories and examples of command actions specified in reference (u).

(1) <u>Administrative Action</u>.  The most common administrative actions are:  non-punitive counseling (verbal or written); evaluation or fitness report entry; administrative remarks entry in the Electronic Service Record or Official Military Personnel File upon legal adjudication; detachment for cause; or administrative separation processing.  For reporting purposes, consequent command action is only "administrative action" when no other action applies.  For example, if NJP proceedings occur or court-martial charges are preferred, then NJP or court-martial is the appropriate consequent command action.  If administrative actions are taken in

OPNAVINST 1752.2C
20 May 2020

addition to NJP proceedings or court-martial referral, the actions must be reported with the results of the NJP or court-martial.

(2) NJP.  For reporting purposes, NJP includes only those disciplinary proceedings where UCMJ articles regarding the domestic violence incident are held, whether punishment is imposed or not.  The results of proceedings, including punishment awarded if applicable, must be reported along with any additional administrative action.

(3) Courts-Martial.  For reporting purposes, includes only those cases where charges under the UCMJ are preferred regarding domestic violence incidents.  The results of court-martial, including punishment awarded if applicable, must be reported along with any additional administrative action.

(4) Other.  Incidents that could not be adjudicated for the following reasons:  lack of jurisdiction (includes civilian trial or conviction); the allegation was unfounded by the command, meaning it was false or did not meet the elements or criteria of a domestic violence offense or incident; statute of limitations expired; the subject separated (includes discharge, transfer to Fleet Reserve or retirement), died or deserted; insufficient evidence, or the victim declined or refused to cooperate with the investigation or prosecution; or non-punitive/no action taken by command. If the commander decides not to pursue command action the consequent command action should be reported as "no action taken" in the "other" category.

(5) Pending.  No command action taken yet (e.g., awaiting completion of NCIS investigation, command investigation ongoing, legal action pending).

(6) Not A Consequent Command Action.  Issuing MPO or treatment through FAP or FFSC is not a reportable consequent command action.

16. Domestic Violence Incidents Count and Consequent Command Actions Reports. Commanders must report completed actions via encrypted email to DVIC_CCA@navy.mil, copy to immediate superior in command and echelon 2 commander no later than 5 days after command action is complete to meet requirements of reference (u).  The report must include:

a.  Command name;

b.  Command primary unit identification code;

c.  Incident report date and date time group of SITREP, if applicable;

d.  Category of abuse or severity, as notified by FAP;

e.  Name of Service member offender;

OPNAVINST 1752.2C
20 May 2020

   f.   Consequent command action; and

   g.   Command family advocacy liaison point of contact information.

17. <u>Guidance for Overseas and Remote Areas Screening</u>

   a.   OPNAVINST 1300.14D, Suitability Screening for Overseas and Remote Duty, provides guidance for FAP and overseas duty.  Sponsors and families who are nominated for overseas assignments and are involved in FAP cases that are open or require follow-on action, must complete all screening requirements and coordinate with the gaining command prior to final determination of suitability for overseas duty.  The intent of this screening is to ensure families are not placed at risk through assignment to isolated duty or stressful locations.  Families identified as having met the criteria for a FAP incident are disqualified from overseas assignment while in treatment.  Exceptions may be made on a case-by-case basis, based on written recommendation of the FAR or clinical site director and gaining command concurrence.

   b.   Accompanied service in overseas and remote duty stations presents unique challenges.  One of those challenges is fashioning an appropriate response to family advocacy related situations which does not conflict with the applicable SOFA or other international agreements, and the jurisdiction which may be entertained by the cognizant foreign court.  In remote sites within U.S. control, unique challenges may exist because there is a lack of trained personnel on site and expeditious transfer to a location where services are available is not practical.  Commanders are strongly advised to immediately consult the responsible SJA to ensure legal considerations are managed in a manner which does not inappropriately conflict with victim safety.

OPNAVINST 1752.2C
20 May 2020

CHAPTER 4
INSTALLATION COMMANDER RESPONSIBILITIES AND FAC

1.  <u>General</u>.  The installation commander is a key component of the FAP.  Installation commanders must:

    a.  Establish an effective FAP which incorporates a coordinated community response approach between medical, legal, investigative, security, chaplain, FFSC, and civilian resources.

    b.  Ensure the installation FAP immediately reports allegations of a crime to the appropriate law enforcement authority.

    c.  Establish an installation FAC and appoint a FAC chairperson to serve as the policy-making, coordinating, and advisory body to address domestic and child abuse at the installation.

    d.  Ensure installation agencies have collaborated with counterpart agencies on military installations in close geographical proximity to ensure coordination and collaboration in providing FAP services to military families.  Collaboration includes developing inter-Service or inter-installation agreements or MOUs between the installations, as appropriate.

    e.  Ensure installation FAP provides domestic abuse victims with access to domestic abuse victim advocacy services 24 hours a day through in-person or telephonic contact.

    f.  Ensure there are a sufficient number of qualified personnel to provide domestic abuse victim advocacy services.

    g.  Issue a written policy setting forth a 24-hour emergency response plan for domestic and child abuse incidents.  This plan should set forth the procedures and criteria for:

        (1) The removal of child victims of abuse or other children in the household when they are in danger of continued abuse; and

        (2) Safe transit of such children to appropriate care when the installation is located OCONUS.  This includes procedures for transit to a location with appropriate care in CONUS.

    h.  Appoint in writing an installation FAR to implement and manage the FAP.  The FAR must direct the development, oversight, coordination, administration, and evaluation of the installation FAP.  The installation commander must ensure the FAR establishes a working relationship with the local child and youth program (CYP) manager, as set forth in references (g) and (v), and with a DoD Education Activity (DoDEA) designated official, as set forth in reference (h), to coordinate allegations or suspicions of abuse by staff members.

OPNAVINST 1752.2C
20 May 2020

i.   Establish an IDC to review reports of child abuse and unrestricted reports of domestic abuse.  The IDC will determine if allegations of abuse meet the criteria that define domestic and child abuse for entry into the Navy FAP Central Registry.

j.   Establish a CCSM to recommend clinical intervention and appropriate treatment for victim, alleged abuser, and family member in each FAP domestic or child abuse incident.  The CCSM also determines the severity level of FAP cases, recommends flagging and case closures, and makes rehabilitation treatment failure determinations.

k.   Ensure victims of domestic abuse have access to well-coordinated, highly responsive FAP victim advocacy services.

l.   Ensure the installation FAP maintains availability of professional counseling for victims and family members and rehabilitative intervention for abusers when indicated.

m.   Establish MOUs with relevant community and military agencies to supplement efforts to implement the installation FAP requirements.  Establish and maintain partnerships and reciprocal relationships with local civilian and government agencies to ensure a coordinated community response risk management approach to all incidents of domestic and child abuse.

n.   Ensure the installation FAP coordinates training for commanders, senior enlisted advisors, Service members, family members, DoD civilian personnel, and DoD contractors as directed by reference (a), and the completion of this FAP training is documented.

o.   Ensure command reporting compliance for all allegations of domestic abuse or CSA per Navy special incident reporting procedures under reference (r), DoD requirements under reference (d), and Navy domestic violence incident reporting requirements outlined in reference (u) and chapter 3 of this instruction.

p.   Ensure the installation SARC and FAR coordinate any domestic and child abuse incident support services so victims receive all services prescribed by law.

2.   <u>Installation Response to Reports of Child Abuse</u>.  The installation commander, in coordination with the FFSC, MTF, child development center (CDC), and local community organizations, must issue local policy that specifies the installation procedures for responding to reports of:

a.   Suspected incidents of child abuse.

b.   Suspected incidents involving fatalities or serious injury involving child abuse.

OPNAVINST 1752.2C
20 May 2020

c.   Suspected incidents of child abuse involving students, ages 3 through 18, enrolled in a DoDEA school or any children participating in DoD-sanctioned child or youth activities or programs.

d.   Suspected incidents of the sexual abuse of a child in DoD-sanctioned child or youth activities or programs.

3.   <u>Emergency Removal of a Child from the Home</u>.  In responding to reports of child abuse, the installation commander must comply with reference (a) for emergency removal of a child from the home.  Further guidance is detailed in chapter 16.

4.   <u>Assistance in Responding to Reports of Multiple Victim CSA in DoD-Sanctioned Out-of-Home Care</u>.  An installation commander may request a Family Advocacy Command Assistance Team (FACAT) through the CNIC FAP when alleged CSA by a care provider in a DoD-sanctioned activity has been reported and additional personnel are needed.  For further guidance see references (v), (w), (x), and chapter 8.

5.   <u>MPOs, Civilian Protection Orders, and Installation Law Enforcement Responsibility</u>

a.   Reference (d) provides guidance on MPOs and states MPOs may be enforced whether the Service member is on or off the installation.  Installation commanders must follow coordinated community response, MOUs, and MOAs with appropriate civilian authorities and must:

(1) Notify civilian authorities an MPO has been issued and provide the information in subparagraphs 5a(1)(a) through 5a(1)(e):

(a) The issuance of the protective order;

(b) The individuals involved in the order;

(c) Any change made in a protective order;

(d) The termination of the protective order; and

(e) Issuance of a replacement protective order.

(2) Coordinate with military law enforcement and take all reasonable measures necessary to ensure that a civilian protection order is given full force and effect on all DoD installations within the jurisdiction of the court that issued such order.

b.   Installation commanders must, through their installation LEA, place an active MPO in the National Crime Information Center for the duration of the order.  Installation law enforcement will initiate a police report for the MPO, and place the MPO in the National Crime Information

OPNAVINST 1752.2C
20 May 2020

Center Protective Order File, using Protection Order Conditions Field Code 098 with the following mandatory caveat in the miscellaneous field:

"THIS IS A MILITARY PROTECTIVE ORDER AND MAY NOT BE ENFORCEABLE BY NON-MILITARY AUTHORITIES.  IF SUBJECT IS IN POSSIBLE VIOLATION OF THE ORDER, ADVISE THE ENTERING AGENCY (MILITARY LAW ENFORCEMENT)."

c.   Updating and terminating of MPOS in National Crime Information Center will follow normal operational procedures.  Installation law enforcement will further notify surrounding civilian law enforcement jurisdictions of the MPO submission via a National Crime Information Center administrative message.

6.  Installation FAC

a.   Establishment of the FAC.  The installation commander must establish an installation FAC and appoint a FAC chairperson to serve as the policy-making, coordinating, and advisory body to address domestic and child abuse at the installation.

b.   FAC Structure

(1) The FAC is a multi-disciplinary committee appointed in writing by the installation commander.  The FAC advises on the installation's FAP procedures, training, policy matters, program evaluation efforts, and will address the overall administrative details of the FAP.

(2) The installation commander must serve as the chairperson of the FAC, or if unavoidably absent, may delegate the position to an O-4 or above line officer to assist the committee identifying their roles and responsibilities in the local FAP and ensure maximum participation.

(3) The FAR is the subject matter expert and will provide administrative support for the FAC.

c.   FAC Membership.  The FAC members have functional responsibility for prevention, identification, reporting, investigation, diagnosis, and treatment of domestic and child abuse.  In addition to the chairperson and the FAR, the FAC must include at a minimum:

(1) Installation commander or designee;

(2) FFSC director;

(3) FFSC clinical service provider;

OPNAVINST 1752.2C
20 May 2020

(4) FAP educator;

(5) SJA;

(6) NCIS (or military criminal investigation organization);

(7) Chaplain;

(8) MTF representative;

(9) DoDEA school representative (if applicable); and

(10) Other representatives (i.e., FAP VAs, victim witness assistance program, local community resource representatives) as deemed appropriate by the FAR.

d. <u>FAC Meetings</u>. FAC meetings will be held at least quarterly. Minutes must be signed by the chairperson, maintained by the FAR, and reflect the content areas in subparagraphs 6d(1) through 6d(4) (as determined by the FAR in coordination with the installation commander).

(1) Recommendations for FAP programs and procedures.

(2) Improvements for ensuring a coordinated community response.

(3) Resourcing issues.

(4) Identification of long range, intermediate, and immediate FAP needs and action for implementation to include corrective action plans.

(5) Certification monitoring and oversight on corrective actions.

(6) Community trends or risks that involve FAP.

(7) Analysis or discussion on installation level quarterly data on domestic and child abuse.

(8) Results of evaluation on prevention training programs.

(9) Identification and monitoring of quality improvement concerns.

e. <u>FAC Member Training</u>. All FAC members must receive:

(1) Training on their roles and responsibilities before assuming their positions on their respective teams.

OPNAVINST 1752.2C
20 May 2020

(2) Periodic information and training on DoD and DON policies and guidance.

f.  <u>FAC Responsibilities</u>.  Under reference (a), the FAC is responsible for ensuring a coordinated community response and risk management plan are in place.

(1) <u>Coordinated Community Response and Risk Management Plan</u>.  The FAC must develop and approve an annual plan for the coordinated community response and risk management of domestic and child abuse, with specific objectives, strategies, and measurable outcomes.  The plan is based on a review of:

(a)  The most recent installation needs assessment.

(b)  Research-supported protective factors that promote and sustain healthy family relationships.

(c)  Risk factors for domestic and child abuse.

(d)  The most recent prevention strategy to include primary, secondary, and tertiary interventions.

(e)  Trends in the installation's risk management approach to high risk for violence, child abuse, and domestic abuse.

(f)  The most recent Navy Fleet and Family Support Program certification review or Navy Inspector General inspection of the installation agencies represented on the FAC.

(g)  The evaluation of the installation's coordinated community response to domestic and child abuse.

(2) <u>Monitoring Coordinated Community Response and Risk Management Plan</u>.  The FAC monitors the implementation of the coordinated community response and risk management plan.  Such monitoring includes a review of:

(a)  The development, signing, and implementation of formal MOUs among military activities, and between military activities and civilian authorities and agencies to address domestic and child abuse.

(b)  Steps taken to address problems identified in the most recent Navy Fleet and Family Support Program certification review of the FAP, and evaluation of the installation's coordinated community response and risk management approach.

OPNAVINST 1752.2C
20 May 2020

(c)  FAP-recommended criteria to identify populations at higher risk to commit or experience domestic and child abuse, the special needs of such populations, and appropriate actions to address those needs.

(d)  Effectiveness of the installation coordinated community response and risk management approach in responding to high risk for violence, child abuse, and domestic abuse incidents.

(e)  Implementation of the installation prevention strategy to include primary, secondary, and tertiary interventions.

(f)  The annual report of fatality reviews that DON fatality review teams conduct. The FAC should also review the Navy FAP's recommended changes for the coordinated community response and risk management approach.  The coordinated community response will focus on strengthening protective factors that promote and sustain healthy family relationships and reduce the risk factors for future domestic and child abuse-related fatalities.

(3)  Coordinated Community Response

(a)  Roles, Functions, and Responsibilities.  The FAC must ensure that all installation agencies involved with the coordinated community response in dealing with domestic and child abuse comply with the defined roles, functions, and responsibilities in references (a) and (d).

(b)  MOUs.  The FAC must verify that:

1.  Formal MOUs are established as appropriate with counterparts in the local civilian community to improve coordination on domestic and child abuse investigations, emergency removal of children from homes, fatalities, arrests, prosecutions, and orders of protection involving military personnel.

a.  Military criminal investigation organizations and law enforcement organizations and legal officials establish formal MOUs, or include existing MOUs with their counterparts in the local community, to set forth procedures for improving information sharing on domestic abuse investigations, arrests, and prosecutions involving military personnel.

b.  MOUs between the installation and local civilian agencies and offices may be used to strengthen and formalize procedures for dealing with domestic abuse incidents that occur on and off the installation.

c.  MOUs should be crafted to address issues specific to an installation and the communities surrounding it.  There are, however, several issues that MOUs should address. A general statement of the purpose of the MOU is essential.  An explanation of jurisdictional issues that affect respective responsibilities on and off the installation will reduce conflicts.  The

OPNAVINST 1752.2C
20 May 2020

MOU should include procedures for exchanging information regarding domestic abuse incidents involving active duty Service members and their family members.

       d.  Sample MOUs for use between installation criminal investigative and law enforcement organizations and legal officials, and their counterparts in the local community, are available in reference (c).

       2.  Installation agencies have established MOUs which set forth the respective roles and functions of the installation and the appropriate Federal, State, local or foreign agencies or organizations (following SOFAs).  The MOUs provide:

       a.  child welfare services, including foster care, to ensure ongoing and active collaborative case management between the respective courts, CPS, foster care agencies, and FAP.

       b.  medical examination and treatment.

       c.  mental health examination and treatment.

       d.  domestic abuse victim advocacy.

       e.  related social services, including State home visitation programs when appropriate.

       f.  safety shelter.

   (4) <u>Domestic Abuse Victim Advocacy Services</u>.  The installation FAC must establish 24-hour access to domestic abuse victim advocacy services through personal or telephone contact in line with reference (c) for restricted reports of domestic abuse and the FAP VA services.

   (5) <u>Protection of Children</u>.  The installation FAC must set forth the procedures and criteria for:

       (a)  The safety of child victims of abuse or other children in the household when they are in danger of continued abuse or life-threatening child neglect.

       (b)  Safe transit of such children to appropriate care.  When the installation is located OCONUS, this includes procedures for transit to a location of appropriate care in CONUS.

       (c)  Ongoing collaborative case management between FAP, relevant courts, and child welfare agencies when military children are placed in civilian foster care.

OPNAVINST 1752.2C
20 May 2020

(d) Notification of the affected Service member's command when a dependent child has been taken into custody or foster care by local or State courts, or child welfare or CPS agencies.

(6) <u>Coordinated Operations Policy</u>.  The installation FAC must ensure coordination among the key agencies interacting with the FAP as listed in subparagraphs 6f(6)(a) through 6f(6)(m) under reference (a):

(a) FFSCs;

(b) Substance abuse programs;

(c) SAPR program;

(d) CYP;

(e) Programs that serve families with special needs;

(f)  MTF, including mental health and behavioral health personnel, social services personnel, and dental personnel;

(g) Law enforcement;

(h) NCIS (or military criminal investigation organization);

(i)  SJA or servicing legal office;

(j)  Chaplains;

(k) DoDEA school personnel;

(l)  Military housing personnel; and

(m)  Transportation office personnel.

OPNAVINST 1752.2C
20 May 2020

CHAPTER 5
RESTRICTED AND UNRESTRICTED REPORTING OPTIONS

1.  General.  The Navy is fully committed to ensure victims of domestic abuse are protected, treated with dignity and respect, and are provided support, advocacy, and care.  Assuring privacy and providing options for confidential disclosure are critical to discharging the Navy's commitment to fully support victims of domestic abuse.  Implementation of confidential reporting requires extensive, in-depth training for Navy personnel and specialized training for COs, senior enlisted advisors, VAs, NCIS, law enforcement, chaplains, legal staff, and HCPs.

2.  Restricted and Unrestricted Report.  This policy affords adult victims of domestic abuse two options of reporting and are referred to as "unrestricted" and "restricted" reporting.  Restricted reporting is limited to adult victims of domestic abuse who are eligible to receive medical treatment in military facilities.  This includes civilians and contractors who are eligible to receive military health care OCONUS on a reimbursable basis.

   a.  Unrestricted Reporting.  Domestic abuse victims who want to pursue an official investigation should use the usual reporting procedures (i.e., chain of command, FAP, or law enforcement).  A FAP VA must be notified upon receipt of an unrestricted report and must offer the victim advocacy support and information, as required by references (a) and (d). Additionally, at the victim's discretion or request, an HCP must conduct any medical examination or care deemed appropriate.  Details regarding the incident will be limited to only those personnel who have a legitimate need to know.

   b.  Restricted Reporting.  Domestic abuse victims who desire restricted reporting must report the abuse to:  a FAP VA, an HCP (both afloat and ashore), a FAP VA supervisor, a SAPR VA, a SARC, or a deployed resiliency counselor.  FFSC clinical counselors operate as FAP VA supervisors and are considered HCPs.  A victim who files a restricted report may request an HCP conduct a medical examination for the purposes of collection and preservation of evidence with non-identifying information.  For states, which require mandatory reporting, specified HCPs are obligated to report the domestic violence to local law enforcement.

3.  Victim Acknowledgement.  Victims will acknowledge, in writing, their reporting election and understanding of the benefits and limitations of restricted or unrestricted reporting by completing the DD Form 2910 Sexual Assault Victim Reporting Preference Statement or the DD Form 2967 Domestic Abuse Victim Reporting Option Statement.  If adult victim elects restricted reporting, the FAP VA and HCP may not disclose covered communications either to the victim's or alleged offender's commander or to law enforcement, except as outlined in this chapter.  Restricted Reporting information for Sexual Assault Victims, that are not related to domestic abuse, are covered in OPNAVINST 1752.1C, Chapter 3, paragraph 3.  Exceptions to Sexual Assault Restricted Reporting are in Chapter 3, paragraph 4 of OPNAVINST 1752.1C.

OPNAVINST 1752.2C
20 May 2020

4. Communications with Chaplains and Legal Personnel. Communications between a victim and a chaplain, VLC, or legal assistance attorney are privileged and confidential, but do not constitute a restricted report. If a victim indicates that he or she wishes to file a restricted report during otherwise privileged communications with a chaplain, VLC, or legal assistance attorney, the victim is required to contact a FAR, FAP VA, or HCP to initiate a restricted report and receive the appropriate care. The chaplain, VLC, or legal assistance attorney will, with the victim's permission, facilitate contact with a FAR, FAP VA, or HCP to ensure that a victim is offered FAP services and that a DD Form 2967 is completed.

5. Exceptions to Confidential Restricted Reporting

   a. Restricted reporting may be suspended for one of the reasons listed in subparagraphs 5a(1) through 5a(7):

      (1) A disclosure to named individuals is authorized by the victim in writing.

      (2) In the judgment of the HCP, FAP VA, or FAP VA supervisor, the disclosure to command officials or law enforcement is necessary to prevent or lessen a serious and imminent threat to the health or safety of the victim or another person.

      (3) The FAP VA or HCP has reasonable belief child abuse has also occurred. Disclosure must be made to FAP and any other agencies authorized by law to receive child abuse reports. However, disclosure will be limited only to information related to the child abuse.

      (4) Disclosure by an HCP to disability retirement boards and officials is required for fitness for duty or disability retirement determinations, limited to only which information is necessary to process the disability retirement determination.

      (5) Disclosure is required for the supervision of direct victim treatment or services.

      (6) A military, Federal, or State judge issues a subpoena for the covered communication to be presented to a military or civilian court of competent jurisdiction or to other officials or entities.

      (7) Disclosure is required by Federal or State statute or applicable U.S. international agreement.

   b. HCPs may also convey to the victim's commander, if applicable, any possible adverse duty impact related to an active duty victim's medical condition and prognosis, as set forth in reference (j). However, such circumstances do not warrant an exception to policy whereby details of the domestic abuse are considered covered communication and may not be disclosed. Confidentiality of medical information will be maintained.

OPNAVINST 1752.2C
20 May 2020

6.  Disclosure of Confidential Communications

    a.  If the FAP VA or HCP believes disclosure is warranted or required per one of the exceptions listed in subparagraphs 5a through 5b in this chapter, the FAP VA or HCP will first consult with their supervisor and servicing legal office prior to disclosure.  When there is uncertainty or disagreement on whether an exception applies, the matter must be brought to the attention of the installation commander for decision in consultation with SJA.

    b.  The FAP VA or HCP must make every reasonable effort to provide the affected victim advance notice of the intention to disclose a covered communication.  This advance notice will include a description of the information to be disclosed, the basis for disclosure, and the individual, group or agency to which it will be disclosed.  The disclosure will be limited to information necessary to satisfy the purpose of the exception.  Further disclosure must not be made unless the domestic abuse victim authorizes disclosure in writing.

    c.  When a victim discloses domestic abuse to someone other than a FAP VA, HCP, FAP VA supervisor, SAPR VA, SARC, or deployed resiliency counselor then disclosure may result in command notification and investigation of the allegations.  If the person to whom the victim confided the information (e.g., roommate, friend, family member) is in the Service member's chain of command or DoD law enforcement, there can be no restricted report.  Navy ombudsmen are representatives of the command and cannot receive restricted reports.  When information regarding a domestic abuse incident is disclosed to the command or the FAP from a source independent of the restricted reporting avenues, law enforcement must be notified and must conduct an investigation when appropriate.  Commanders acquiring information under these circumstances about a domestic abuse incident must immediately notify law enforcement and FAP personnel.

    d.  Improper disclosure of covered communications, improper release of medical information, and other violations of this policy are prohibited and may result in disciplinary action under the UCMJ, loss of privileges, and other adverse personnel or administrative actions.

7.  Disclosure Rights.  This policy does not create any actionable rights for the alleged abuser or the victim, nor does it constitute a grant of immunity for any actionable conduct by the abuser (alleged or adjudicated) or victim.  Covered communications which have been disclosed may be used in disciplinary proceedings against the offender or victim, even if the communication was improperly disclosed.

8.  Impact of Restricted Reporting.  DoD and Navy leadership recognize the potential impact of restricted reporting on investigations and the ability of COs to hold perpetrators accountable.  Such risks were carefully considered and were outweighed by the overall interest of providing domestic abuse victims access to medical care and support.

OPNAVINST 1752.2C
20 May 2020

9.  <u>Sexual Assault Forensic Examination Kit</u>.  For restricted reports only, for intimate partner and domestic abuse related sexual assault cases within FAP jurisdiction, the FAR, FAP VA, or HCP will follow CNIC guidance regarding case documentation and assigning a forensic evidence storage number.  CNIC will describe specific procedures for creating the forensic evidence storage numbers for all domestic abuse related sexual assaults that elect restricted reporting.  FAP case manager will ensure the restricted report control number is documented in Fleet and Family Support Management Information System (FFSMIS).

OPNAVINST 1752.2C
20 May 2020

CHAPTER 6
OPERATIONAL AND ADMINISTRATIVE REPORTING

1.  <u>Reporting Abuse</u>.  Reporting known or suspected abuse is a fundamental necessity to mitigate the damages imposed by acts of domestic and child abuse.  Reporting abuse will allow the victim to seek aid, professional advice, and access to educational resources regarding domestic and child abuse.  All Navy personnel (military, civilian, and contractor) are responsible for understanding Navy's domestic and child abuse policy, the penalties and consequences for engaging in any form of domestic and child abuse, and the adverse impact of this abuse to unit and Navy mission accomplishment.  All allegations of domestic and child abuse must be reported using the OPREP or SITREP under reference (r).  Navy personnel must not:

    a.  Commit domestic and child abuse or other acts of domestic misconduct, in violation of the UCMJ;

    b.  Take retaliatory action against a person who provides information on an incident of alleged domestic and child abuse;

    c.  Knowingly make a false accusation of a domestic and child abuse; or

    d.  Condone or ignore domestic and child abuses.

2.  <u>Required Reporting</u>.  All Service members and DON personnel must report information about known and suspected cases of domestic or child abuse that come under their observation.

3.  <u>Suspected Criminal Conduct</u>.  Safety is the ultimate concern for anyone involved in an abusive situation.  If at any time a fellow Service member believes that the life, health, or safety of an individual is in imminent danger of domestic or child abuse, the Service member must immediately report the situation to law enforcement.

    a.  The appropriate LEA must be notified immediately in all cases of domestic abuse in which there is major physical injury, or indication of a propensity, or intent by the abuser to inflict major physical injury; and in all cases of child abuse.

    b.  In such cases, interviews of suspected abusers must not be conducted without the knowledge and consent of cognizant law enforcement agents.  Military law enforcement personnel should provide information about the actions of FAP clients to the FAR and COs as soon as circumstances reasonably permit, and must assist in obtaining investigative reports from other geographic areas or jurisdictions.  Copies of investigative reports will be provided to the IDC as early as possible.

OPNAVINST 1752.2C
20 May 2020

4.  <u>Mandatory Reporting</u>.  Typically, mandatory reporting applies to personnel who have reason to suspect the abuse or neglect of a child, but in the Navy it also applies to personnel who suspect abuse or neglect of a dependent adult.

5.  <u>Reports of Domestic Abuse</u>.  All unrestricted domestic abuse reports should be received by law enforcement, HCPs, FFSC clinical counselors, or command triad.  All allegations of domestic or child abuse must be acted upon regardless of when the alleged abuse occurred.

    a.  If a domestic abuse report involving physical injury or the use of a dangerous or deadly weapon is received by the installation law enforcement or security department (mandatory reporters), verbal notification must be made to the FAR and the Service member's command triad.

    b.  If a victim of alleged domestic abuse comes to a military MTF seeking treatment for injuries related to abuse, the case must be referred to the FAP VA by the HCP.  In the case of major physical injury or indication of a propensity or intent by the alleged abuser to inflict major physical injury, the appropriate law enforcement or security department officials must be notified.  The HCP must notify the FAP VA as soon as possible.  The FAP VA must ensure victim protection and safety planning is conducted, assist victims with risk assessment, and assist with accessing shelter or safe housing, as needed.

    c.  When a victim of alleged domestic abuse comes voluntarily to an FFSC or military MTF seeking counseling and there are no current injuries requiring medical attention, and the victim is responsive, capable of responding to any renewed threat of abuse, and previous injuries are not "major" physical abuse, the provider should assist the alleged victim in making an informed decision for a "restricted" or "unrestricted" report.

    (1) At a minimum, a risk assessment should be completed, a safety plan should be accomplished, and a FAP VA should be assigned.

    (2) If at any time while working with the victim, the HCP comes to believe that the life or health of the victim is in imminent danger, the provider must report the situation to the military criminal investigation organization and appropriate command under consultation with the military MTF or installation legal office.

    (3) If a victim of domestic abuse comes voluntarily to the FFSC seeking counseling and there are current injuries due to alleged domestic abuse, the victim should be referred to the military MTF for evaluation.

6.  <u>Reports of Child Abuse</u>

    a.  All covered DON personnel, as described in section 20341 of Title 34, U.S. Code, must report information that gives reason to suspect that a child in the family or home of a Service

OPNAVINST 1752.2C
20 May 2020

member has suffered an incident of child abuse to the appropriate child welfare services agency and the appropriate FAP office, as required by section 575 of Public Law 114-328.

b.   Any individual within the chain of command of a Service member who obtains credible information (which may include a reasonable belief) that a child in the family or home of the member has suffered an incident of child abuse must report that information to the appropriate FAP office as directed by section 575 of Public Law 114-328.

c.   FAP must notify appropriate law enforcement or security personnel.  NCIS must be notified of child physical abuse.  For overseas installations, notification must be made in line with applicable treaties or SOFAs.  In the absence of a local FAP, incidents must be reported directly to the agency having CPS functions and to appropriate law enforcement or security personnel.

7.   Reporting of CSA

a.   CSA Incidents and Allegations.  All allegations or incidents of CSA (incest or extra-familial) must be reported to NCIS.  Additional reports must be made to CNIC (N91) and PERS-833/834, and submitted by the special incident reporting procedures in reference (r).

(1)   The FAR must report all allegations or incidents to CNIC (N91) within 24 hours or the next available work day.

(2)   CNIC (N91) must notify PERS-833/834 within 24 hours or the next available work day.

b.   DoD Operated or Sponsored Out-of-Home Care Activities.  In addition, cases of CSA alleged to have occurred in DoD-sanctioned, out-of-home care settings, such as child care or youth centers, schools, recreation programs, or family home care, must be reported immediately to the installation CO, NCIS, CNIC (N91), and the FAR.  Additionally, all suspected incidents of CSA must be reported via DD Form 2951 Initial Report of Suspected Child Sexual Abuse in DoD Operated or Sponsored Out-Of-Home Care Activities, to CNIC (N91) within 24 hours as directed by references (v), (w), and (x).

8.   FAP Annual Report.  CNIC will coordinate the collection and submission of annual reports to DoD, under references (a) through (d) and route through OPNAV (N17).

OPNAVINST 1752.2C
20 May 2020

CHAPTER 7
DOMESTIC ABUSE RESPONSE

1.  <u>General</u>.  Victims of domestic abuse must receive reasonable protection from the alleged abuser.

2.  <u>Immediate Victim Safety or Well-Being</u>.  Protective measures should not place an undue burden on Service members and their family members.  Any threat to the life or safety of a Service member or their family members must be immediately reported to the command and law enforcement.  COs must:

   a.  Consider both the physical and emotional well-being of the victim in making this decision.  The victim's preference should receive primary consideration if practicable.

   b.  Consider relocating the victim or alleged abuser until the victim is out of danger or the case is adjudicated.  Ensure safe housing has been secured for the victim as needed.

       (1) The preference is to remove the alleged abuser from the home when the parties must be separated, to safeguard the victim.

       (2) If necessary, the alleged abuser will be directed to find alternative housing.

   c.  Consider initiating a safety transfer when the lives or safety of Service members or their family members are threatened as outlined in reference (t), article 1300-1200.  Active duty spouses or intimate partners who are victims of sexual assault and elect the unrestricted reporting option may request an expedited transfer as outlined in reference (t), article 1300-1200.

   d.  Assess the safety and well-being of Service members and their dependents when concerns or circumstances dictate issuance of MPOs or reassignment.

3.  <u>Interviews</u>.  If there is an ongoing NCIS investigation, the FAR, FAP VA, military law enforcement, or HCP must gain NCIS concurrence prior to speaking to alleged abuser or victim, unless the questioning is necessary and related to the provision of medical care.  When there are children in the home follow the interviewing instructions in chapter 8, subparagraphs 2a(1) through 2a(3), to assess children who witness violence.

OPNAVINST 1752.2C
20 May 2020

CHAPTER 8
CHILD ABUSE RESPONSE

1.  <u>Child Abuse Reporting</u>.  Commands must report all allegations of child abuse by OPREP or SITREP in line with reference (l).

    a.  All covered DON personnel, as described in Section 20341 of Title 34, U.S. Code, with information that gives reason to suspect that a child in the family or home of a Service member has suffered an incident of child abuse must report to the appropriate child welfare services agency and the appropriate installation FAP office, as required by Section 575 of Public Law 114-328.

    b.  For overseas installations, notification must be made as required by the applicable treaties or SOFAs.  In the absence of a FAR, incident must be reported directly to the agency with CPS functions and the appropriate LEA in the case of imminent danger to the child.

2.  <u>Allegations of Child Abuse</u>.  In any case of alleged child abuse, the safety of the victim must be the primary concern and must be assessed immediately by the FAR, command, and law enforcement personnel.  The FAR will advise the member's unit commander and the installation commander and recommend appropriate action as necessary.  These actions may include:

    a.  Interview of the child by personnel trained in interviewing children.

        (1)  The interviewer may be the installation FAR, NCIS special agent, physician, or a credentialed mental health professional.  If there is an ongoing NCIS investigation, the interviewer must gain NCIS concurrence prior to speaking to the child, unless the questioning occurs during the provision of medical care.

        (2)  With concurrence of CNIC, installations are authorized to use the Armed Forces Center for Child Protection for assessment and consultation with child abuse and neglect cases.

        (3)  The installation commander may order such an interview without the parents' consent if the commander determines that the interview is required to protect the health and safety of the child and civilian authorities are not reasonably available to direct such an interview.

        (4)  Interviewers should take into consideration the factors in this subparagraph when interviewing a child:  age of the child, physical, mental, or emotional limitations of the child, and parental concerns over the child's comfort and well-being.

    b.  Temporary removal of the child from the home.

3.  <u>FAP Communication with Military Law Enforcement</u>.  The installation FAP coordinates with military enforcement agencies, military investigative agencies, and civilian CPS agencies in

OPNAVINST 1752.2C
20 May 2020

response to reports of child abuse incidents.  Under reference (a), the FAP and military law enforcement must reciprocally communicate with one another.  NCIS has sole authority to coordinate with civilian LEA.

a.  FAP must report all incidents of child abuse involving military personnel or their family members to the appropriate civilian CPS agency or LEA immediately upon receiving notification of the incident.

b.  FAP must report all unrestricted reports of domestic abuse involving military personnel and their current or former spouses or their current or former intimate partners to the appropriate LEA immediately upon receiving notification of the incident.

4.  <u>Protection of Children</u>.  The installation FAC is responsible for setting forth the procedures and criteria for:

a.  Implementation of a coordinated community response to ensure the safety of child victims of abuse or other children in the household when they are in danger of continued abuse or life-threatening child neglect.

b.  Safe transit of such children to appropriate care.  When the installation is located OCONUS, this includes procedures for transit to a location of appropriate care within the United States.

c.  Ongoing collaborative case management between FAP, relevant courts, and child welfare agencies when military children are placed in civilian foster care.

d.  Notification of the affected Service member's command when a dependent child has been taken into custody or foster care by local or State courts or child welfare or protection agencies.

5.  <u>Emergency Removal of a Child from the Home</u>

a.  In responding to reports of child abuse, the FAP complies with reference (a) and the installation commander's policies and procedures, during emergency removal of a child from the home.

b.  The FAR and command must keep the child's interest paramount.  The FAR and command must use all available resources in making informed decisions and documenting any removal decision and subsequent follow-up actions.

6.  <u>FAP's Responsibilities during Emergency Removal of a Child from the Home</u>.  The FAP provides ongoing and direct case management and coordination of care of children placed in foster care in collaboration with the child welfare and foster care agency, and must not close the FAP case until a permanency plan for all involved children is in place.

OPNAVINST 1752.2C
20 May 2020

7.  Responsibilities in Responding to Reports of Child Abuse Involving Infants and Toddlers from Birth to Age 3.  Services and support must be delivered in a developmentally appropriate manner to infants and toddlers, and their families who come to the attention of FAP to ensure decisions and services meet the social and emotional needs of this vulnerable population.

    a.  FAP makes a direct referral to the servicing early intervention agency, such as the Educational and Developmental Intervention Services where available, for infants and toddlers from birth to 3 years of age who are involved in an incident of child abuse under reference (a).

    b.  FAP provides ongoing and direct case management services to families and their infants and toddlers placed in foster care or other out-of-home placements to ensure the unique developmental, physical, social-emotional, and mental health needs are addressed in child welfare-initiated care plans.

8.  Assistance in Responding to Reports of Multiple Victim CSA in DoD-Sanctioned Out-of-Home Care

    a.  Reference (y) allows an installation commander to request a FACAT through CNIC FAP when alleged CSA by a care provider in a DoD-sanctioned activity has been reported and at least one of the situations in subparagraphs 8a(1) through 8a(4) are indicated.

    (1) Additional personnel are needed to:

        (a) Fully investigate a report of CSA by a care provider or employee in a DoD-sanctioned activity;

        (b) Assess the needs of the child victims and their families; or

        (c) Provide supportive treatment to the child victims and their families.

    (2) The victims are from different Military Departments or DoD components, or there are multiple care providers who are the subjects of the report from different Military Services or DoD components.

    (3) Significant issues in responding to the allegations have arisen between the DoD components and other Federal agencies or civilian authorities.

    (4) The potential for widespread public interest that could negatively impact the Navy mission.

    b.  The installation commander, FAR, and FACAT must develop and implement intervention strategies and coordinate the appropriate treatment and support for the victims and

OPNAVINST 1752.2C
20 May 2020

their families and for the non-abusing staff of the DoD-sanctioned activity under requirements of reference (x).

OPNAVINST 1752.2C
20 May 2020

CHAPTER 9
FAP VA RESPONSE TO DOMESTIC OR CHILD ABUSE

1. <u>General</u>. The FAP VA program is under the purview of the FAP and provides active duty military personnel, their family members, or intimate partners who are victims of domestic abuse non-clinical emergent and urgent service when requested. The services must be at no expense to the beneficiaries and are available 24 hours, 7 days a week. Non-beneficiary victims must be offered safety assessments and safety planning services and are then referred immediately to local community resources for ongoing support.

a. The FAP VA also provides support services to the non-offending parents involved in child maltreatment cases or cases where the child was abused by an extra-familial non-caregiver.

b. Domestic abuse victim assistance personnel are expected to maintain standards of competence under reference (y) and CNIC FAP VA qualification requirements, to include education, training, and certification.

c. FAP VA personnel must exercise careful judgment, apply flexibility and innovative problem-solving, and take appropriate precautions to protect victims' welfare under the guiding principle of "do no harm."

d. Victim assistance services must focus on the victim and must respond, protect, and care for the victim from initiation of a report through offense disposition or until the victim no longer desires services.

e. Military Rule of Evidence (M.R.E.) 514 protects victims against disclosure of their communications with FAP VAs in courts-martials. M.R.E. 514 gives victims the rights to refuse to disclose and prevent any other person from disclosing a confidential communication made between the victim and a FAP VA in a case arising under the UCMJ if the communication was made for the purpose of facilitating advice or supportive assistance to the victim.

(1) The communication must have been made for the purpose of facilitating advice or supportive assistance and with the intent that communication should not be disclosed to a third party.

(2) The FAP VA privilege does not protect all communications, including communications that clearly contemplate the future commission of a fraud or crime or where the VA's services are sought to enable or aid anyone to commit a fraud or crime. Communications between a victim and a VA may also be disclosed when ensuring the safety of others, including the victim, is necessary.

2. <u>Response Capability</u>. The 24-hour, 7 days a week domestic or child abuse response capability must be provided for all locations, including deployed areas.

OPNAVINST 1752.2C
20 May 2020

a.   Mandatory activation of an on-call FAP VA must be conducted immediately at the time of the domestic or child abuse report to provide victims with information, emotional support, and guidance through the various medical, mental health, legal, and investigative processes.

b.   Ongoing victim advocacy, beyond the initial response, is provided at the request of the victim.  Victims are free to decline any or all of these options.

3.   <u>FAP VA Initial Crisis Response</u>.  FAP VAs provide immediate intervention services.  Upon responding to a report, FAP VAs must:

a.   Ensure victims understand that FAP VA services are optional and that the services may be declined.

b.   Encourage the victim to seek medical consultation or examination including medical documentation of injuries.

c.   Assess for imminent danger of life-threatening physical harm to the victim or another person and create a safety plan, as needed.  FAP VAs must immediately report any increase in victimization patterns to the FAR, security, or the command.

(1) Safety plans are based on initial and ongoing risk assessments.  If imminent risk of serious harm or death is established, notifications must immediately be made to law enforcement, the FAR, and the Service member's command.

(2) If children are involved, the process also includes child physical safety and emotional well-being.  Children will be referred to the case manager for follow-on care.

(3) FAP VAs must immediately report any changes in the victim's circumstances that changes or impacts the safety plan to the case manager.  When determining whether a victim is at imminent risk of serious harm or death, the FAP VA must assess the situation to determine if the victimization patterns have increased in severity or frequency.

d.   Provide resources and information based on initial assessment and urgent needs.  FAP VAs must offer victims information regarding their identified needs (e.g., emergency shelter, housing, childcare, legal services, clinical resources, medical services, transitional compensation for abused dependents).

e.   Explain process of restricted and unrestricted reporting and the benefits and limitation of reporting domestic or child abuse.  If the victim is interested in restricted reporting, the FAP VA must document the victim's request on the DD Form 2967.

f.   Ensure victims are aware of the military or civil actions (e.g., MPO, civilian protection order, injunction) available to promote safety of the victim.

OPNAVINST 1752.2C
20 May 2020

g.  Refer the victim to FAP for intake and assessment and ensure the FAP case manager and the sponsor's CO (when the victim has elected an unrestricted report) are aware of the victim's safety plan.

4.  <u>FAP VA Ongoing Support Services</u>.  FAP VAs must maintain contact with victims as appropriate and ensure they are aware of all support services available.  FAP VAs must:

a.  Empower the victim to advocate for the needs of self and children.

(1) Support the victim in decision-making by providing relevant information and discussing available options.

(2) Assist the victim with prioritizing actions and establishing short and long-term goals.

(3) Provide the victim with comprehensive information and referral on relevant local military and civilian resources, the National Domestic Violence Hotline, and Military OneSource.

(4) Advise victims of the impact of domestic abuse on children and support victims' efforts to have children assessed and treated, as needed.  The FAP VA may support the non-offending parent involved in child maltreatment cases or cases where the child was abused by an extra-familial non-caregiver.  Support services are limited to the adult non-offending caregiver and should include information, resources, and safety planning.

b.  Develop a safety plan with the victim, if one hasn't already been completed, and review it during every follow-up contact.

c.  Coordinate with FAP, law enforcement, and the command to ensure that they are aware of the victim's safety plan.

d.  Assist the victim in gaining access to service providers and victim support resources that can help the victim explore future options and prioritize actions.

e.  Explain the availability of VLC services as directed by reference (p), if applicable.  .

f.  Provide information and referral for requesting transitional compensation for abused dependents.

g.  Assist the victim with ascertaining options for relocation and basic information and eligibility requirements pertaining to the shipment of household goods (including a vehicle) at Government expense when the victim decides to relocate away from the active duty alleged abuser.

OPNAVINST 1752.2C
20 May 2020

(1) Provide the victim with the safety move request option and procedures when unrestricted reports of domestic or child abuse are filed.

(2) An expedited transfer request option is available for active duty Service members who have filed an unrestricted report of sexual assault (whether by an intimate partner or any other individual).

5.  <u>Coordinated Community Response, Education, and Training</u>.  FAP VAs must:

a.  Promote a coordinated community response for the prevention and intervention of domestic abuse.

b.  Collaborate with medical, security, and NCIS to establish FAP VA notification protocols.

c.  Assist FAP with the prevention activities on installations such as the dynamics of domestic abuse training, briefings on victim advocacy services, and awareness month activities (i.e., National Domestic Violence Awareness Month, National Child Abuse Prevention Month).

6.  <u>FAR's Role with the FAP VA</u>.  The FAP VA reports to the FAR and is located in the FAP office.  The FAR must:

a.  Ensure the FAP VA is orientated to the Navy, the installation, and the FAP office.

b.  Provide close supervision to the FAP VA when they are managing high-risk situations such as duty to warn, imminent danger for serious harm or death, or certain restricted reporting cases.

c.  Ensure all victims are advised of the restricted reporting option.

d.  Develop safety protocols for the FAP VA.

7.  <u>FAP VAs Relationship with FAP Staff and Medical</u>.  FAP VAs and FAP personnel must partner to support the victim and promote safety for the victim and children in the home.  The development of a solid referral process between FAP and the FAP VA is critical to the success of the partnership.  Specifically, the FAP VA:

a.  Contacts the victim's FAP case manager and provides any updates to the safety plan.  Any changes in the victim's situation that may increase the risk of maltreatment must be immediately briefed to the FAR.

OPNAVINST 1752.2C
20 May 2020

b.   Briefs the FAP case manager prior to the CCSM so that the CCSM team has the most current information on the victim and children for staffing.  FAP VAs do not have access to information containing personal health information.

c.   May attend the CCSM for domestic abuse incidents and provide limited discussion of the recommended safety planning and supportive and treatment services for victim.

d.   Receives medical or patient information contained in the medical record only for safety planning purposes when a FAP provider's professional judgment indicates:

(1) That it is in the best interest of the victim or family.

(2) When the alleged abuser poses a threat to the larger community.

(3) When there is a need to know.

8.   FAP VAs, SAPR VAs, and SARCs.  FAP VAs, SAPR VAs, and SARCs have a reciprocal responsibility to refer and reach out to victims of adult sexual assault.  Every effort must be made to contact victims immediately upon receipt of the referral.

a.   When a SARC receives a referral for adult sexual assault involving spouses or intimate partners a referral to FAP (and the FAP VA) must be made immediately.

b.   If the FAP VA receives a report of sexual assault involving individuals who are neither married nor meet the definition of intimate partner, a referral must be made immediately to the SARC or a SAPR VA.

c.   The FAP prevention staff, including the FAP VA, should take every available opportunity to partner with the SARC to market victim advocacy services and provide prevention services and education to prevent all forms of sexual assault in the military community.

9.   Education, Training, and Public Awareness.  Education, training, and public awareness are important FAP VA functions.  However, these functions should not occur at the expense of providing direct service and support to victims.  The FAP VA must:

a.   Assist in educating command and installation personnel on domestic abuse and victim advocacy services.

b.   Provide briefings on victim advocacy services to active duty personnel, the civilian spouses of active duty personnel, and DoD civilians when the latter are eligible to receive military medical treatment.

OPNAVINST 1752.2C
20 May 2020

c.   Assist in training military first responders, including law enforcement and MTF personnel, command personnel, and chaplains.

d.   Assist in training civilian service providers about military victim issues, resources, and services.

e.   Participate in developing and implementing public awareness campaigns on victim rights and advocacy services.

f.   Assist in planning events for National Domestic Violence Awareness Month.

g.   As authorized by his or her supervisor or commander, participate in private sector domestic abuse councils.

OPNAVINST 1752.2C
20 May 2020

CHAPTER 10
INVESTIGATIVE AND LEGAL RESPONSE

1.  <u>SVIP Capability</u>.  The Navy's SVIP capability is a distinct, recognizable group of appropriately skilled professionals consisting of specially trained and selected NCIS investigators, judge advocates, victim witness assistance program personnel, and administrative paralegal support personnel who work collaboratively to investigate and prosecute allegations of domestic or child abuse, and provide support to the victims.  SVIP was established to ensure that the military justice process is responsive, transparent, and accessible to all victims and witnesses, and that all participants are treated with dignity and respect.

2.  <u>SVIP Personnel</u>.  All SVIP personnel will be selected, certified, and trained with a goal of achieving fully integrated investigation, prosecution, and victim support.  The SVIP program includes:

    a.  Specially trained prosecutors, victim witness assistance personnel, paralegals, and administrative legal support personnel who work collaboratively with specially trained military criminal investigation organization and NCIS investigators.

    b.  Designated SVIP personnel collaborate with local FARs, FAP VAs, SARCs, and SAPR VAs during all stages of the investigative and military justice process to ensure an integrated capability, to the greatest extent possible.

    c.  A recognizable group of appropriately trained military criminal investigation organization and NCIS investigators to investigate allegations of all designated SVIP covered offenses.

3.  <u>VLC</u>.  VLCs provide independent legal counsel to eligible domestic or child victims of sexual offenses and other covered offenses, forming an attorney-client relationship with the victim under JAGINST 5810.3A.  FARs, deployed resiliency counselors, FAP VAs, NCIS personnel, victim witness liaisons, trial counsel, and HCPs must immediately inform domestic or child victims of sexual offenses, and other covered offenses, of the availability of VLC services.  JAGINST 5810.3A establishes the scope of services a VLC may provide to eligble persons.

OPNAVINST 1752.2C
20 May 2020

CHAPTER 11
INCIDENT DETERMINATION COMMITTEE (IDC)

1.  General.  Installation FAP policies or procedures on IDC must not contain additions, deviations, or deletions from the policies, procedures, criteria, and exclusions contained in DoD guidelines.  Ensure appropriate clinical consultation for the delivery of assessment, supportive services, and rehabilitative treatment in domestic and child abuse cases, and utilize uniform criteria for determining whether allegations of domestic and child abuse are entered into the Navy FAP Central Registry.

2.  IDC Purpose.  The purpose of the IDC is to decide which referrals for suspected domestic or child abuse meet the DoD criteria that define such abuse, requiring entry into the Navy FAP Central Registry.  This decision is known as the ISD.  Subparagraphs 2a and 2b in this chapter delineate special case or consideration.

    a.  Referrals presented to the IDC must include incidents of alleged abuse or neglect in which the victim or alleged abuser has died in connection with such alleged abuse or neglect.

    b.  With respect to child abuse incidents, an ISD may differ from a case substantiation or determination decision made by a civilian CPS agency.  Such differences may occur because the criteria that define the type of abuse may be more or less inclusive than the criteria used by the civilian CPS agency and the IDC may have different or more information than the civilian CPS agency.

3.  IDC Methodology.  The IDC uses a structured discussion format to determine whether an allegation of abuse "meets" or "does not meet" criteria for entry into the Navy FAP Central Registry.  This process ensures that each incident is heard objectively and under procedures standardized by DoD directives for all military services.

    a.  Every reported incident of abuse or neglect must be presented to the IDC for an ISD unless there is no possibility as mutually determined by the FAR and FAP clinician or case manager who responded to the report, that the incident could meet any of the criteria for abuse or neglect.

    b.  IDC discussions must be strictly limited to incident specific relevant information.

4.  IDC Member Training

    a.  All IDC members must:

    (1) Complete all required training on their roles and responsibilities before assuming their positions and carrying out their duties and responsibilities (i.e., voting at the IDC).

OPNAVINST 1752.2C
20 May 2020

(2) Complete annual refresher training.

(3) Receive periodic information and training on DoD policies and Navy FAP policies and guidance as published.

b. New IDC members must receive a minimum of 4 hours of supplemental FAP focused training.

c. All members' certifications of completion must be submitted to the FAR before voting on an ISD at the IDC.

5. <u>IDC Membership and Responsibilities</u>. The IDC must make an ISD using current DoD criteria.

a. <u>Designation</u>. The installation XO shall serve as the IDC chairperson and must be designated as such in writing by the installation CO. The IDC core members and alternates must be designated in writing by the committee chairperson  In the XO's absence, the IDC may be chaired by an alternate, not lower than a person who reports directly to the XO.

b. <u>Attendance</u>. All core voting members or their alternates must attend the IDC.

c. <u>Core Voting Members</u>. The IDC membership consists of five core voting members as listed in subparagraphs 5c(1) through 5c(5).

(1) Installation XO (or permitted alternate).

(2) Installation CMDCM or senior enlisted advisor.

(3) Installation SJA.

(4) Installation security representative.

(5) FAR.

d. <u>Other IDC Members</u>

(1) <u>NCIS</u>. The IDC chairperson must request the local NCIS special agent in charge designate an NCIS agent to provide pertinent, case-specific information at the IDC meeting as directed by references (d) and (l). The NCIS representative must not be a voting member. In certain cases, NCIS may have to consult with civilian or military prosecutors prior to releasing case information to the IDC under reference (l).

OPNAVINST 1752.2C
20 May 2020

(2) <u>Command Representative</u>. For FAP cases involving an active duty Service member, a command representative will attend IDC meetings. The command representative for the active duty member involved in a FAP case will participate in the discussion and cast a vote for their command specific case only. The command representative must have completed IDC training to be eligible to vote at the IDC.

(a) The CO of the alleged abuser and or the victim is the official command representative; however, the CO may delegate this responsibility to either the XO or senior enlisted leader on a case-by-case basis. If the CO, XO, or senior enlisted leader are not available, the CO may designate an alternate command representative no lower in rank than lieutenant commander or senior chief petty officer, unless approved by the IDC chair.

(b) The command representative for cases that involve CYP or DoDEA personnel will be determined by their individual agencies as directed by references (g) and (h). The CYP director and the DoDEA superintendent, or their designated representatives, must represent their respective agencies.

(3) <u>Consultants</u>. If additional information is required to determine whether an incident meets the appropriate criteria, the IDC chairperson may invite a non-voting consultant to attend for the purpose of presenting case specific relevant information.

(a) IDC consultants may include MTF clinical counselors who are eligible for independent provider status, FFSC clinicians, CPS workers, shelter representatives, pediatricians, pediatric or emergency room nurses, community health nurses, security officer, drug and alcohol counselors, chaplains, CYP representatives, and DoD Dependent School counselors or nurses.

(b) Consultants are not permanent members and do not attend or participate in ISD voting process. Consultants are expected to adhere to confidentiality requirements.

6. <u>IDC Attendance</u>

a. The IDC is limited to IDC members and IDC chairperson-invited consultants. Active duty Service members, their family members, or their attorney or representative involved in the case are not permitted to attend IDC meetings.

b. All core voting members or their alternates must be present at the IDC to consider an incident for an ISD. While the use of alternates is permitted, core members will make every effort to attend the IDC meeting.

c. Although command representatives are voting members and highly encouraged to attend the IDC, their attendance is not required for an IDC to meet or make an ISD.

7. <u>Notice of IDC Meeting</u>

OPNAVINST 1752.2C
20 May 2020

a.  The IDC must meet at the call of the chairperson within 60 days of the report of abuse to FAP.

b.  The FAR will serve as the IDC coordinator and will oversee the compilation and distribution of the agenda for each meeting.  Every reported incident of abuse or neglect which meets reasonable suspicion of abuse based on the criteria must be presented to the IDC for an ISD.

8.  Deliberations

a.  Relevant Information.  The IDC must only discuss information related and pertinent to the current specific allegations, and the criteria for each type of alleged abuse.  Such information need not meet the requirements for admissibility under the M.R.E.s.  Evidence such as documents, testimonies, or tangible evidence (e.g., photographs, texts, digital information) must be presented by law enforcement.

b.  Presentation of Information.  Information is presented in the order specified in subparagraphs 5b(1) through 5b(3).

(1) The chairperson must facilitate the IDC process and validate that all voting members are present and have completed the IDC training, open the meeting with a reminder of the confidentiality requirements, and then introduce the core IDC members to the command representative, if present.

(2) The FAR introduces the allegation, and the chairperson will direct the launch of the decision tree algorithm.  The command representative of the sponsor opens the discussion of the incident by presenting the information that the command received about the incident.  Law enforcement, NCIS, SJA, and the FAR, who is the last member to present, will provide additional information relevant to the incident.  Each IDC member and non-voting consultant may present additional information relevant to determining whether the incident met the appropriate criteria.

(3) If a situation arises and the credibility of the alleged abuser or victim comes into question, then the background history of the victim and alleged abuser will be discussed by the IDC.  Case should be staffed with FAR to assess all risk factors.

9.  ISD Voting.  The IDC must make ISDs within 60 days of the allegation of abuse.

a.  Core members or their alternates and command representatives, if present, must participate in ISD voting.  Each voting member must cast a vote publicly based on the totality of the available information and on a "preponderance of the information" standard.  The voting member need not be certain that the information meets the criterion but may vote to "concur" if

11-4

OPNAVINST 1752.2C
20 May 2020

he or she is only 51 percent sure that it does (i.e., he or she may vote to "concur" even if there is reasonable doubt) as long as the voting member finds that given the information, the abuse or neglect is more likely than not to meet criteria.

b.   The IDC chairperson publicly casts his or her vote last to prevent persuading other members' votes.  The decision whether the incident meets the specified criteria of abuse must be made by a majority vote of the voting members in attendance.  For purposes of whether or not to enter the reported incident into the Navy FAP Central Registry, recantation by the victim must not, in and of itself, be used to conclude that abuse did not occur.  When there is a tie vote, the chairperson will publicly cast the final vote (i.e., vote twice) for the specific criteria being considered.

10. ISDs.  The IDC will make an ISD using DoD criteria to determine whether a case meets or does not meet specified criteria for domestic or child abuse.  All cases that meet abuse criteria must be recorded in Navy's FAP Central Registry and staffed at an installation CCSM.  Cases that do not meet abuse criteria must be staffed to the CSSM, referred to appropriate services, recorded in the Navy FAP Central Registry without identifying information, and closed.

11. ISD Criterion Status

a.   Incident "did not meet criteria" status determination is a designation indicating the incident was presented to the IDC for determination and the preponderance of the available information regarding the alleged incident of abuse or maltreatment did not meet the DoD criteria of abuse.  The CCSM may still recommend voluntary prevention and intervention services in response to identified risk factors.

b.   Incident "met criteria" status determination is a designation indicating the incident was presented to the IDC for determination and the preponderance of available information indicating abuse or maltreatment occurred was greater or more convincing than the information indicating abuse or maltreatment did not occur.

12. IDC Determination Letter.  The IDC determination letter is signed by the installation IDC chairperson or their alternate immediately following the ISD.  This letter includes the names of the alleged abuser and alleged victim, the IDC's ISD, and the procedures to request a reconsideration of the ISD.  A copy of the determination letter is provided to the Service member via the command representative with forwarding endorsement by CO and to the family member or intimate partner via FAP.

13. Record of IDC Deliberations

a.   Minutes of the IDC deliberations must be recorded and signed by the IDC chairperson.

OPNAVINST 1752.2C
20 May 2020

b.   The FAR or their designee must sign and record the ISD in the FAP record of the incident.

c.   The FAR must ensure that the ISD and an explanation of the FAP process for reviewing the ISD is communicated to the CO of each active duty member involved in an ISD and to the family member or other person who is an alleged abuser, victim, or parent of a victim.  Specific notification responsibilities are listed in subparagraphs 13c(1) and 13c(2).

(1) The CO is responsible for informing the Service member, in writing, of decision and the criteria to request reconsideration of an ISD.

(2) The FAP clinician is responsible for informing the family member or intimate partner, in writing, of decision and the criteria to request reconsideration of an ISD.

d.   Regardless of the outcome of the IDC, services must be provided to the alleged abuser or victim on a voluntary basis when requested.

e.   Results of the IDC and the ISD, must be entered into the Navy's FAP Central Registry within 7 working days of the ISD.

14. Navy FAP Central Registry and Personnel Flagging

a.   All alleged incidents of domestic or child abuse must be entered into the Navy's FAP Central Registry and uploaded quarterly into the DoD Central Registry under references (c), (d), and (o).  The Navy FAP Central Registry has information on:

(1) Cases that do not meet criteria for abuse that are not linked to an individual.

(2) Cases that meet criteria for abuse that are linked to identifiable active duty Service members, DoD civilians, contractors, and their family members.  Navy collects FAP case incident numbers by means of the FFSMIS.

b.   For cases that meet the criteria for severe domestic or child abuse; CSA; a series of moderate domestic or child abuse incidents which indicate a pattern of abuse; and for juvenile family member sex abusers, the Service member or dependent's sponsor must be placed on administrative hold (flagged by PERS-832/833/834) to prevent certain personnel actions or PCS orders.

15. Confidentiality of IDC Deliberations

a.   IDC members and non-voting consultants at an IDC meeting must not disclose the deliberations or individual votes in making ISDs to other individuals.

OPNAVINST 1752.2C
20 May 2020

b. Information disclosed within the IDC meeting that is protected from disclosure under references (a) through (d) and (l), must not be disclosed by those attending the meeting to others.

16. <u>Reconsideration of ISDs</u>.  When the alleged abuser, victim, or a parent on behalf of a child victim, requests reconsideration of the ISD, the FAR must respond to the request in line with chapter 13 of this instruction.

17. <u>QA and Oversight</u>.  An IDC QA process must be established for monitoring of IDC decisions to ensure consistency in the FAP case process.

    a. QA and oversight inspections may include face to face observations, telephonic monitoring, and reviews of IDC summary reports, internal and external audits, quadrennial inspection or certification findings, and FAP records (i.e., documentation of all required assessments and evaluations).

    b. CNIC QA reviews must be conducted on a quarterly basis on randomly selected installations.

    c. Results of the quarterly CNIC QA reviews will be submitted to OPNAV (N170) within 15 days of the completion of the audits.  OPNAV (N170) will periodically shadow inspection or certification teams.

OPNAVINST 1752.2C
20 May 2020

CHAPTER 12
CLINICAL CASE STAFF MEETING (CCSM)

1. <u>Safety Planning, Supportive Services, and Clinical Treatment</u>

    a.   The installation FAP case manager must begin planning for and delivery of the following services before the case is presented at the CCSM:

        (1) Safety planning and supportive services to a victim who is eligible to receive treatment in a military MTF.

        (2) Protective measure recommendations to the commander regarding an alleged abuser for a victim who is eligible to receive treatment in a military medical program.  Such measures include an MPO, weapons removal, relocation, escort assignment, restriction, bar to the installation, and removal of children.

        (3) Clinical treatment to a victim and to the alleged abuser, as appropriate, who are eligible to receive treatment in a military MTF.

    b.   Those attending the CCSM support the delivery of supportive services and clinical treatment, as appropriate, by providing clinical consultation on domestic and child abuse cases to the FAP case manager.  Such clinical consultation must be directed to :

        (1) Ongoing safety planning for the victim;

        (2) The planning and delivery of supportive services and clinical treatment, as appropriate, for the victim and other family members, and the results of such services and treatment;

        (3) The planning and delivery of rehabilitative treatment for the alleged abuser, as appropriate, and the results of such treatment; and

        (4) Case management, including risk assessment and ongoing safety planning and protective measure recommendations.

    c.   Normally, a case must not be presented to the CCSM until the FAP assessments of the victim, alleged abuser, and all other family members have been completed.

2. <u>CCSM Purpose</u>.  The CCSM is a team approach to managing risk and constructing effective clinical intervention.  The purpose of the CCSM is to review IDC determinations regarding allegations of domestic or child abuse and to provide clinical recommendations concerning safety planning, supportive services, treatment recommendations, clinical treatment, periodic case reviews, and case closures or terminations as appropriate.

a.  The CCSM must:

(1)  Review all domestic abuse incidents that met criteria for abuse and assign a severity level using the DoD FAP incident severity scale as discussed in chapters 2 and 3.

(2)  Facilitate and monitor the delivery of coordinated case management to include risk assessment and flagging, ongoing safety planning, supportive services and interventions, clinical treatment recommendations, periodic case reviews, case closures, and treatment failure determinations.

(3)  Provide ongoing coordinated community case management, including risk assessment between military and civilian agencies.

(4)  Recommend treatment plans and supportive services for victims of domestic or child abuse.

(5)  Recommend plans for clinical intervention and rehabilitative treatment for the alleged abusers.

(6)  Determine whether treatment or rehabilitation failure has occurred.

b.  The CCSM is held after an ISD has been made by the IDC.  In addition to reviewing new cases of domestic or child abuse, open FAP cases, and cases recommended for termination of services and case closures, the CCSM also determines whether rehabilitation treatment failure has occurred in a FAP case.

3.  <u>CCSM Responsibilities</u>.  Those attending the CCSM support the delivery of services and clinical treatment by providing clinical consultation on domestic and child abuse cases to the FAP case manager.

4.  <u>CCSM Treatment Notification Letter</u>.  CCSM treatment recommendations are sent via official letters to the CO of the active duty Service member and spouse, or intimate partner in domestic abuse cases, and to the parents or guardians in child abuse cases, as appropriate.

5.  <u>CCSM Attendees</u>

a.  The FAR must chair the CCSM.  A minimum of two privileged clinicians must be present to form a quorum.  The FAR must consider inviting other military or civilian, medical, mental health, or clinical social service providers, chaplains, and CPS (child abuse incidents only) to the clinical case discussion.

OPNAVINST 1752.2C
20 May 2020

b.   Attendance at CCSMs is limited to those with clinical expertise in domestic and child abuse.  The FAR must exercise discretion in inviting other military or civilian medical, mental health, or clinical social services providers who may add value to the clinical case discussions.

(1) For Child abuse incidents only, a representative from the civilian CPS agency should be invited.

(2) For Domestic abuse incidents only, a FAP VA should be invited for the discussion of recommended safety planning and supportive and treatment services for the victim.

(3) For Incidences involving unresolved high risk case closures or terminations due to failure to meet clinical objectives, the FAR may invite a military legal representative and the CO of the active duty abuser to assist in the clinical case closure discussion risk management.  The FAR must consult with legal and the Service member's CO prior to a disposition of treatment failure.

6.   <u>CCSM Agenda</u>.  The agenda of CCSMs must include:

a.   A review of newly reported child and domestic abuse incidents, and if the incidents have been presented to the IDC.

b.   A review of all open cases, including cases transferred from another installation, must be reviewed:

(1) At least monthly for:

(a) All SVIP covered offenses;

(b) CSA cases;

(c) High risk cases or cases involving chronic child neglect; and

(d) Cases involving foster care placement of children.

(2) Quarterly for all other incidents, and

(3) At next CCSM for all open cases recommended for case closure and treatment failure.

7.   <u>CCSM Review of Treatment Progress and Command Updates</u>.  Treatment progress and the results of the latest risk assessment are reviewed by the CCSM, documented in the FAP case record, and briefed within 3 working days of the review to the CO of the involved Service member as scheduled in subparagraphs 7a through 7c of this chapter.

OPNAVINST 1752.2C
20 May 2020

a. The cases in subparagraphs 7a(1) through 7a(4) are reviewed monthly.

(1) SVIP covered offenses.

(2) CSA cases.

(3) High risk cases or cases involving chronic child neglect.

(4) Cases involving foster care placement of children.

b. All cases must be reviewed within 30 days of any significant event or a pending significant event that would impact care, including but not limited to a subsequent maltreatment incident, geographic move, deployment, pending separation from the Service, or retirement.

c. All other cases are reviewed every 60 days.

8. CCSM Discussions. Persons attending the CCSM must provide clinical consultation to the FAP case manager as needed for each incident to ensure thorough discussion of the topics listed in subparagraphs 8a through 8l.

a. The safety plan and protective measures in place.

b. The severity of harm.

c. The results of risk assessments and psychosocial history, what, if any, additional assessments should be conducted, and the assignment of a risk level.

d. Clinical intervention, as appropriate, to address the needs of each victim and any other family members for supportive services.

e. The success of such intervention and supportive services in protecting and assisting the victim; potential changes to or enhancement of such intervention and supportive services; and the appropriateness of terminating such intervention when clinically indicated.

f. Clinical intervention to address the behavior of each alleged abuser.

g. The success of such clinical intervention in assisting the alleged abuser in changing his or her behavior; changes to or enhancement of treatment provided to each alleged abuser; and the appropriateness of terminating treatment when clinically indicated.

h. Coordination of military and civilian service providers for such assessments, supportive services, treatment, and clinical intervention.

OPNAVINST 1752.2C
20 May 2020

    i.   Victim safety with respect to:

    (1) The current victim impact statement, if any, describing the impact of the abuse on the victim, including financial, social, psychological, and physical harm suffered by the victim, if any.

    (2) The victim's safety plan.

    (3) Steps taken by military or civilian authorities to ensure the victim's safety and the safety of any children cared for in the home.

    (4) The effect of any new incidents of abuse since the last CCSM discussion of the case on the risk of further abuse or risk of increased severity to the victim.

    (5) Recommended changes to the victim's safety plan.

    j.   Coordination with the chain of command and other community or collateral contacts, such as the CPS agency, schools, law enforcement, VAs, etc.

    k.   Recommendations for continued child placement in foster care (for FAPs overseas that are acting as a CPS agency).

    l.   Recommendations for command intervention.

9.  <u>Record of CCSM Discussions</u>.  Notes of CCSM discussions must be documented in the FAP record.

10. <u>Confidentiality of CCSM Discussions</u>

    a.   The FAP case manager may disclose the results of the CCSM discussion pertaining to:

    (1) The victim or non-abusing parent of a child victim to such victim or non-abusing parent, and to others only as authorized by procedures set forth in references (a) through (d), (i), and (l), but may not otherwise disclose the results of the CCSM discussion pertaining to the victim to any other person.

    (2) The alleged abuser and others authorized by procedures set forth in references (a) through (d), (i), and (l), but may not otherwise disclose the results of the CCSM discussion pertaining to the alleged abuser to any other person.

    b.   The FAP case manager must not reveal the identity of any person at the CCSM who made specific comments.  The FAP case manager must not disclose any other information from

OPNAVINST 1752.2C
20 May 2020

the CCSM discussion to any other person except as authorized by procedures set forth in references (a) through (d), (i), and (l).

c.  Any other person who attended a CCSM who also directly provides clinical services to the victim, the alleged abuser, a child cared for in the home or, in a child abuse case, the non-abusing parent may, as appropriate and at his or her discretion, disclose the relevant results of the CCSM discussion pertaining solely to such person receiving the clinical services.  Such disclosure must not reveal the identity of any person at the CCSM who made specific comments.  The person who makes the disclosure must not disclose any information from CCSM discussions to any other person except as authorized by procedures set forth in references (a) through (d), (i), and (l).

d.  Any person who attended a CCSM but who does not directly provide clinical services to the victim, the alleged abuser, or any child cared for in the home, must not disclose any information from the CCSM discussions except as authorized by procedures set forth in references (a) through (d), (i), and (l).

e.  Information disclosed at the CCSM is protected from disclosure and must not be disclosed except as authorized by procedures set forth in references (a) through (d), (i), and (l).

11. <u>CCSM Process</u>.  The CCSM must convene no more than 7 working days following the IDC meeting and must include a review of recently determined cases from the IDC, scheduled follow-up review of open FAP cases, transfer-in cases, and case closures.

12. <u>Personnel Control Flag</u>.  The CCSM must make treatment recommendations to the command and forward recommendations to CNIC to coordinate with PERS-833/834 to flag the Service member's records to restrict personnel actions and moves until the case is resolved or treatment is completed.  The flag initiation date must be entered into the FFSMIS.  Flagged personnel records must be reviewed and updated by CNIC (N91) and PERS-833/834.  There are three types of flags.

a.  <u>Assignment Control Flag Restricting Transfers or PCS Moves</u>.  This flag is placed by recommendation of the CCSM on domestic and child abuse incidents for personnel who require a temporary flag, and is normally removed within 1 year from the date the flag is set.  This flag is not utilized for officers.

b.  <u>PERS-833/834 Control Flag</u>.  A flag placed in the alleged offender's personnel record data system by PERS-833/834 for all allegations of CSA.  This flag will restrict transfers, reenlistments, advancements, or promotions until case resolution.  The flag is lifted by PERS-833/834 at case resolution and if there are no further restrictions.

OPNAVINST 1752.2C
20 May 2020

c.  <u>Officer Control Flag</u>.  The PERS-8 control flag is the only flag used for officers.  A substantiated ISD will result in a flag being placed in an officer's record and potential delay of any subsequent promotion.

13. <u>Continuity of Services</u>.  The FAP case manager must ensure continuity of services before the transfer or referral of open domestic or child abuse cases, or closed unresolved high risk cases, to other service providers.

14. <u>Treatment Termination, Treatment Failure, or Case Closure</u>.  The reasons for treatment termination or case closure must be clearly documented in the FAP case record to ensure appropriate services and resources are provided to abused dependents.

a.  <u>Abuser Treatment Termination</u>.  Treatment provided to the abuser (whether alleged or adjudicated) is terminated only if either:

(1) The CCSM discussion produced a consensus that clinical objectives have been substantially met and the results of a current risk assessment indicate that the risk of additional abuse and risk of lethality have declined; or

(2) The CCSM discussion produced a consensus that clinical objectives have not been met due to:

(a)  Noncompliance of the abuser (whether alleged or adjudicated) with the requirements of the treatment program;

(b)  Unwillingness of such abuser (whether alleged or adjudicated) to make changes in behavior that would result in treatment progress; or

(c)  Failure to complete treatment or involuntarily dis-enrolled from a FAP rehabilitation, education, or counseling program under the direction of CNIC or the local community.  Reference (t), article 1910-162, Special Case Closure (Treatment or Rehabilitation Failure), states enlisted Service members may be separated from naval service by reason of FAP rehabilitation failure.  SECNAVINST 1920.6D governs officer separations.

b.  <u>Victim Treatment Termination</u>.  Treatment and supportive services provided to the victim are terminated only if either:

(1) The CCSM discussion produced a consensus that clinical objectives have been substantially met; or

(2) The victim declines further FAP supportive services.

OPNAVINST 1752.2C
20 May 2020

15. <u>Communication of Treatment Termination or Case Closure</u>.  Upon termination of treatment or case closure, the FAR notifies the personnel or agencies in subparagraphs 15a through 15f within 24 hours or the next business day to advise them of case status, command options and responsibilities, and support services and resources as appropriate.

    a.  The abuser and victim, and in a child abuse case, the non-abusing parent.

    b.  The CO of an active duty victim or abuser.

    c.  Any appropriate civilian court currently exercising jurisdiction over the abuser, or in a child abuse case, over the child.

    d.  A civilian CPS agency currently exercising protective authority over a child victim.

    e.  The NPSP, if the family has been currently receiving NPSP intensive home visitation services.

    f.  The FAP VA, if the victim has been receiving victim advocacy services.

16. <u>General Principles for Clinical Intervention</u>

    a.  <u>Components of Clinical Intervention</u>.  The change from abusive to appropriate behavior in domestic relationships is a process that requires clinical intervention, which includes ongoing coordinated community risk management, assessment, and treatment.

    b.  <u>Goals of Clinical Intervention</u>.  The primary goals of clinical intervention in domestic abuse are to ensure the safety of the victim and community, and prevent abusive behaviors.

    c.  <u>Therapeutic Alliance</u>

       (1) Although clinical intervention must address abuser accountability, clinical assessment and treatment approaches should be oriented to building a therapeutic alliance with the abuser so that he or she is sincerely motivated to take responsibility for his or her actions, improve relationship skills, and end the abusive behavior.

       (2) Clinical intervention will neither be confrontational nor intentionally or unintentionally rely on the use of shame to address the alleged abuser's behavior.  Such approaches have been correlated in research studies with premature termination of or minimal compliance with treatment.

17. <u>Command Responsibility</u>.  Refer to chapter 3.

OPNAVINST 1752.2C
20 May 2020

18. <u>Complaints</u>.  Reference (x) states there is an ethical standard and behavioral expectation for victim assistance personnel.  Complaints regarding the clinician or treatment may be submitted in writing to region commander or CNIC (N91) for resolution.

19. <u>QA and Oversight</u>

    a.   QA and oversight reviews must be conducted to ensure consistency in the FAP case process.  Process reviews of the CCSM must include the following practices and procedures: informed consent, case management and risk management, clinical assessment, intervention strategies and treatment planning, intervention and treatment, and termination and closure.  QA and oversight inspections may include face to face observations, telephonic monitoring, reviews of CNIC IDC summary reports, internal and external audits, triennial certification findings, peer reviews, and review of FAP records.  Installations will be selected randomly and audits conducted on a quarterly basis.

    b.   The installation FAC must analyze trends in risk management, develop appropriate agreements and community programs with relevant civilian agencies, promote military interagency collaboration, and monitor the implementation of such agreements and programs annually unless otherwise indicated.

OPNAVINST 1752.2C
20 May 2020

CHAPTER 13
PROCEDURES FOR REVIEW OF IDC DETERMINATION

1.  General.  IDC determinations are considered final but may be reviewed under certain circumstances as outlined in the formal review process contained in this chapter.  The ISD may be reviewed by either the installation IDC or the CNIC Headquarters review team and may result in the installation determination being upheld or overturned.

   a.  Navy FAP Central Registry entries must not be delayed pending review by the installation IDC or the CNIC Headquarters review team.  The record will be updated with the results of the appropriate IDC.

   b.  The review must not consider the propriety of any actions taken by a CO as a result of the previous decisions or recommendations.  Alleged abusers who consider themselves wronged by the actions of the CO may seek redress through other means, to include mast request procedures or filing a complaint under UCMJ, article 138.

2.  Applicability.  The persons listed in subparagraphs 2a through 2c may submit a written request for review of the ISD:

   a.  Alleged abuser (military or civilian) when they are contesting the ISD.

   b.  Victim (military or civilian) when they are contesting the ISD.  When the victim is a minor child, his or her non-offending parent or guardian may submit a request for review.

   c.  CO (of the Service member) when they are contesting the ISD on behalf of a Service member.

3.  Process for Requesting Review.  Petitioners may request a review of the local ISD from their installation IDC or the CNIC Headquarters review team.  Requesting review by the installation IDC does not preclude the petitioner from seeking redress from the CNIC Headquarters review team if the requirements for a review are met.  All requests for review must be made in writing and meet criteria in subparagraphs 3a through 3d.

   a.  Request must be routed through the responsible CO, either the petitioner's CO or the installation CO (for Service member), or via the FAR (for non-Service members or dependents).

   b.  The request must state the basis for the request for a review.

   c.  Request must be made within 60 days of receipt of the report of the ISD or be made within 60 days after the conclusion of a military or civilian trial.

OPNAVINST 1752.2C
20 May 2020

d.  Requests forwarded and declined by the installation IDC may be submitted to the CNIC Headquarters review team within 14 days of notification of declination and include the reason the installation IDC declined to review the ISD.

4.  <u>Installation IDC Review Requirements</u>.  Bases for ISD review by the installation IDC are:

a.  <u>Previously Undiscovered Information</u>.  The petitioner must demonstrate:

(1)  Information was discovered within 60 days of the date the petitioner was notified of the ISD;

(2)  The new information is not such that it would have been discovered by the petitioner at the time of the IDC case disposition in the exercise of due diligence; and

(3)  The newly discovered information, if considered by the installation IDC, would probably produce a substantially more favorable result for the petitioner.

b.  <u>Not Guilty or Guilty Finding (after a military or civilian trial)</u>

(1)  The alleged abuser or victim must submit a request for review of the ISD within 60 days from the date of the findings of a military or civilian trial.

(2)  The charges adjudicated at trial must be directly related to the incident which formed the basis of the ISD of "met" or "did not meet" the criteria for domestic or child abuse.

(3)  The alleged abuser or victim must demonstrate a substantial likelihood that the evidence in question, if considered by the installation IDC, may have produced a substantially more favorable result for the alleged abuser or victim, or the evidence in question directly impacted the finding of not guilty or guilty.

c.  <u>Factual Error by the Installation IDC</u>.  A factual error is an obvious error in the facts provided to or used by the IDC in making a determination.  An example of factual error is a police report which indicates the officers who responded reported evidence of physical abuse and the IDC ignores this fact when voting on the ISD.

5.  <u>Installation ISD Review</u>.  Installation IDCs may elect to grant or decline the request for a review.  If the installation IDC declines the request the petitioner may request review by the CNIC Headquarters review team.

a.  The installation IDC must reconsider any case meeting the criteria in subparagraphs 4.a. within 60 days of receipt of a request for review by a petitioner.  The FAR must provide the installation IDC's final decision to the petitioner, which follows the same format as the original report of the ISD.

OPNAVINST 1752.2C
20 May 2020

b.  The petitioner may elect to file a request for review with the CNIC Headquarters review team if it meets the criteria for review by the CNIC Headquarters review team.  If a request for review by the CNIC Headquarters review team is elected, the FAR must forward the written report of the IDC ISD, and copies of all documents relied upon to make that decision to the CNIC (N91) for review and disposition.

c.  The installation IDC review of an ISD must follow the same published procedures and DoD criteria guidelines for evaluation, presentation, and determination that were used during the initial incident assessment by the installation IDC.  Additionally, the IDC must review related and pertinent information provided in the petitioner's review request that meets the stated criteria in this chapter for the review.

6.  CNIC Headquarters Review Team ISD Review Requirements.  Basisis for ISD review by the CNIC headquarters review team are:

a.  Inappropriate Actions by the Installation IDC.  The petitioner must demonstrate that an inappropriate action was discovered within 60 days of the ISD and that action substantially influenced the IDC's decision.  Examples include:

(1) Confessed or proved perjury in statements or forgery of documentary evidence which substantially influenced the IDC determination.

(2) Willful concealment of information by an IDC member which was favorable to the alleged abuser or victim and petitioner can demonstrate substantial likelihood that knowledge of the information may have resulted in a different ISD by the IDC.

(3) Demonstrated bias or influence impacting the ISD to include making determinations about the incident based on outside influences, and not just the information related and pertinent to the current specific allegations, and the criteria for each type of alleged abuse presented at the time of the IDC meeting.

b.  Procedural Errors by the Installation IDC.  A petitioner is allowed to submit an appeal within 60 days of discovery that a procedural error occurred and that action substantially influenced the IDC's decision.  Examples include:

(1) Unauthorized individuals attended the IDC meeting.  This does not include non-voting consultants who were invited by the IDC chairperson to attend for the purpose of presenting case specific relevant information and were not present during IDC voting.

(2) The IDC made an ISD with a core voting member absent.

(3) ISD criteria of status determination was not followed or fallacy in the voting process occurred.  Core members or their alternates and command representatives, who are trained and in

OPNAVINST 1752.2C
20 May 2020

attendance, must participate in ISD voting.  Each voting member must cast a vote based on the totality of the available information and on a "preponderance of the information" standard as defined in Appendix C.

c.  <u>Plain error by the installation IDC</u>.  A plain error is an obvious error in the IDC's decision regarding the ISD that was not objected to or determined by the IDC proceedings.  A plain error affects the fairness, integrity, and confidence in the IDC proceedings.  An example of this is the refusal to determine if allegations "met" or "did not meet" the criteria for CSA based solely on whether the allegations met the elements of a criminal statute, instead of using the IDC definitions.

7.  <u>CNIC Headquarters Review Team Membership</u>.  All CNIC Headquarters review team members must be designated in writing by CNIC (N91).  The CNIC Headquarters review team reconsideration review of an ISD must follow the same published procedures and DoD criteria guidelines for evaluation, presentation, and determination that were used during the initial incident assessment by the IDC to ensure a transparent, repeatable process.  Additionally, the CNIC Headquarters review team must only consider pertinent information provided in the petitioner's request that meets the criteria in paragraph 6.

a.  The CNIC Headquarters review team membership differs from the installation IDC to allow for a higher level review.  The CNIC Headquarters review team consists of the personnel in subparagraphs 7a(1) through 7a(7).

(1) Post-command line officer (O-6) as the chairperson of the CNIC Headquarters review team.

(2) NCIS agent.

(3) SJA.

(4) CNIC (N91) FAPM or FAP section lead.

(5) FAP program analyst.

(6) BUMED medical officer specializing in spouse or child abuse.

(7) PERS-833/834 officer.

b.  The chairperson will facilitate the IDC process with all members presenting the relevant information for their discipline.  All members will vote on each case.

c.  At the discretion of the chairperson of the CNIC Headquarters review team, additional non-voting consultants may be invited to the CNIC headquarters review team such as a

OPNAVINST 1752.2C
20 May 2020

psychiatrist, a clinically privileged HCP, or a physician for presenting case specific, relevant information.

  d.  A representative of OPNAV (N170) will periodically attend CNIC Headquarters review team as an observer in an oversight capacity.

8.  <u>CNIC Headquarters Review Team Member Training</u>.  All CNIC Headquarters review team members must complete training prior to participating on the review team.  Documentation of training completion must be maintained by CNIC (N91).  The subjects listed in subparagraphs 8a through 8c must be included in the training:

  a.  The IDC process,

  b.  The roles and responsibilities of IDC members, and

  c.  Current DoD criteria for domestic and child abuse.

9.  <u>CNIC Headquarters Review Team Review Authority</u>.  The CNIC Headquarters review team is the final authority for all FAP cases where the alleged abuser, victim, victim's representative or command requests and justifies a review of the installation ISD.  The CNIC Headquarters review team must consider all cases forwarded by PERS-833/834, OPNAV (N17) or CNIC, or cases under the review procedures outlined in this chapter.

  a.  The CNIC Headquarters review team minutes of all cases reconsidered must be forwarded to CNIC (N91) within 30 days of the meeting.  The minutes must include:

    (1) A summary and analysis of the facts of the case;

    (2) The positions or disciplines who participated in the decision and recommendation process; and

    (3) The CNIC Headquarters review team's recommendation and a detailed explanation of the recommendation process.

  b.  If members dissent from the majority decision, the dissents and the reasons must be stated in the minutes.

  c.  Results of CNIC Headquarters review team meetings are not final until CNIC (N91) provides the final determination and signs the notification letter.

  d.  Signed CNIC Headquarters review team ISDs are final and are not subject to appeal.

OPNAVINST 1752.2C
20 May 2020

e.  The minutes of the CNIC Headquarters review team must be forwarded to OPNAV (N17) within 30 days of being signed.

10. <u>CNIC Headquarters Review Team Correspondence</u>.  The CNIC Headquarters review team must:

a.  Mail the determination or recommendation letter to the petitioner within 30 days of the ISD with copies to appropriate other parties (i.e., CO of the active duty member, FAR for non-active duty victims).

b.  Provide a copy of the ISD to the Fleet and Family Support Program regional counseling advocacy and prevention coordinator and the installation FAR within 30 days.

c.  Ensure all CNIC Headquarters review team correspondence is mailed as set forth in references (a), (b), (i), and (l) when the U.S. Postal Service is used.

OPNAVINST 1752.2C
20 May 2020

CHAPTER 14
CLINICAL RESPONSE TO DOMESTIC OR CHILD ABUSE

1.  High Risk for Violence-Coordinated Community Response.  The high risk for violence-coordinated community response team provides a formalized and comprehensive coordinated community approach to monitoring and intervening in high risk situations, to include but not limited to, a perceived threat or imminent harm to self, others, or both.  The FAP case manager employs a high risk intervention process to ensure high risk cases receive close monitoring and appropriate follow up until the risk has been reduced.

    a.  The high risk for violence-coordinated community response team must be activated when, in the judgment of the FAR, there is a threat of immediate and serious harm to Service members, family members, or unmarried intimate partners.  Membership should include a representative from the command(s) of the alleged victim and offender, FFSC, SJA or regional legal service office, MTF, chaplain, NCIS, base security, and military and civilian service organizations.

    b.  The team provides rapid assistance, case coordination including ongoing safety planning, risk assessments, and case management.  The team must monitor safety and risk reductions actions put in place as a result of a high risk situation.  Meetings must be scheduled as needed to ensure risks are reduced and client care has been appropriately coordinated and resolved.

    c.  CNIC will establish procedures at the regional and installation level to provide coordinated comprehensive intervention, assessment, and support to suspected or alleged victims and offenders in response to high risk for violence situations, where risk of harm is imminent.

    d.  All commanders will ensure command participation in the high risk for violence-coordinated community response team.

2.  Informed Consent

    a.  Informed Consent for FAP Clinical Assessment, Intervention Services, and Supportive Services or Clinical Treatment.  Every person referred for FAP clinical intervention and supportive services must give informed consent for such assessment or services.  Clients are considered voluntary, non-mandated recipients of services except when the person is:

        (1) Issued a lawful order by a military commander to participate;

        (2) Ordered by a court of competent jurisdiction to participate; or

        (3) A child and the parent or guardian has authorized such assessment or services.

OPNAVINST 1752.2C
20 May 2020

b.  Documentation of Informed Consent.  FAP staff must document that the person gave informed consent in the FAP case record under reference (a).

c.  Privileged Communication.  Every person referred for FAP clinical intervention and support services is informed of their right to the provisions of privileged communication by specified service providers under M.R.E.s 513 and 514.

3.  General Clinical Counseling

a.  General Counseling.  General counseling offers non-medical, short-term, solution-focused counseling.  The intent is to focus clinical counseling on well-defined problem areas amenable to brief intervention or treatment.  These include issues such as family or work related problems, grief or loss, or parenting and marital issues.

b.  Scope of Counseling Services.  Counseling services encompass a wide scope of developmental, preventative, and therapeutic services designed to address the stressors of Service members and their families.  Clinical counseling protocols include assessment, risk management, intervention, and treatment.

c.  Incident Severity Scale.  FAP clinicians must solely use the DoD approved FAP incident severity scale to accurately, consistently, and reliably determine the level of severity associated with all met criteria cases of domestic or child abuse.

4.  Clinical Case Management and Risk Management

a.  FAP Case Manager.  A non-medical clinical counselor is assigned to each FAP referral immediately when the case enters the FAP system.  Non-medical clinical counselors:

(1)  Are considered HCPs and must be licensed and privileged as set forth in references (a), (m), and (z).

(2)  May provide only those clinical services for which they are privileged and within the scope of practice provided by family support programs.

(3)  Must possess the expertise to assess disorders contained in the standard nomenclature of current Diagnostic and Statistical Manual of Mental Disorders for the purposes of appropriate referral and quality client service.

b.  Initial Risk Monitoring.  FAP monitoring of the risk of further abuse begins when the report of suspected domestic or child abuse is received and continues throughout the life of the FAP case.  The FAP case manager requests information from a variety of sources, in addition to the victim and the abuser (whether alleged or adjudicated), to identify additional risk factors and

OPNAVINST 1752.2C
20 May 2020

to clarify the context of the use of any abuse, and ascertains the level of risk and the risk of lethality using standardized instruments as set forth in reference (z).

c. <u>Domestic Abuse or Child Abuse Risk Assessment</u>.  The domestic abuse or child abuse risk assessment must be finalized within 3 working days of completing all assessments of the individuals involved in the incidents.

d. <u>Intimate Partner Physical Injury Risk Assessment Tool</u>.  The DoD intimate partner physical injury risk assessment tool must be used by clinical providers to make predictions about the likelihood of future violence by domestic abuse offenders.

e. <u>Ongoing Risk Assessment</u>

(1) FAP risk assessment is conducted from the clinical assessment until the case closes:

(a) During each contact with the victim.

(b) During each contact with the abuser.

(c) Whenever the abuser is alleged to have committed a new incident of domestic or child abuse.

(d) During significant transition periods for the victim or abuser.

(e) When destabilizing events for the victim or abuser (alleged or adjudicated) occur.

(f) When any clinically relevant issues are uncovered during clinical intervention services.

(g) At a minimum, prior to quarterly CCSM reviews and prior to case closure.

(2) The FAP case manager monitors risks at least monthly when the case is high risk or involves chronic child neglect or CSA.

(3) The FAP case manager monitors risk at least every 60 days when civilian agencies provide the clinical intervention services or child welfare services through MOUs with such agencies.

f. <u>Communication of Increased Risk</u>.  The FAR communicates increases in risk or risk of lethality to the appropriate commander, law enforcement, or civilian officials.  FAP clinical staff assess whether the increased risk requires the victim or the VA to be urged to review the victim's safety plan.

OPNAVINST 1752.2C
20 May 2020

5. <u>Clinical Assessment</u>

  a. <u>Clinical Assessment Policy</u>.  The installation FAR establishes procedures for the prompt clinical assessment of victims, abusers (whether alleged or adjudicated), and other family members, who are eligible to receive treatment in a military MTF including:

      (1) A prompt response based on the severity of the alleged abuse and further risk of domestic or child abuse;

      (2) Developmentally appropriate clinical tools and measures to be used, including those that take into account relevant cultural attitudes and practices; and

      (3) Timelines for FAP staff to complete the assessment of an alleged abuse incident.

  b. <u>Gathering and Disclosure of Information</u>

      (1) Service members who conduct clinical assessments and provide clinical services to Service member abusers (alleged or adjudicated) must adhere to advisement of rights in line with the UCMJ.  Clinical service providers must also seek guidance from the servicing legal office when a question of applicability arises.  Before obtaining information about and from the person being assessed, FAP staff must fully discuss with such person the:

          (a) Nature of the information that is being sought;

          (b) Sources from which such information will be sought;

          (c) Reasons why the information is being sought;

          (d) Circumstances under which the information may be released to others;

          (e) Procedures under references (a) and (i) through (k) for requesting the person's authorization for such information; and

          (f)  Procedures under references (a) and (i) through (k) by which a person may request access to his or her record.

      (2) FAP counselors are not required to provide UCMJ, article 3l(b) warnings when interviewing a Service member for the purpose of assessment, diagnosis or treatment.  However, clinical service providers must seek guidance from the servicing legal office when a question of advisement of rights under article 31(b) of the UCMJ arises.

OPNAVINST 1752.2C
20 May 2020

c.  Components of Clinical Assessment.  FAP staff conducts or ensures that a clinical service provider conducts a clinical assessment of each victim, abuser (whether alleged or adjudicated), and other family member who is eligible for treatment in a military MTF, including:

(1) An interview;

(2) A review of pertinent records;

(3) A review of information obtained from collateral contacts, including but not limited to medical providers, schools, CDCs, and youth programs;

(4) A psychosocial assessment, including developmentally appropriate assessment tools for infants, toddlers, and children;

(5) An assessment of the basic health, developmental, safety, and special health and mental health needs of infants and toddlers;

(6) An assessment of the presence and balance of risk and protective factors;

(7) A safety assessment; and

(8) A lethality assessment.

d.  Ethical Conduct in Clinical Assessments.  When conducting FAP clinical assessments, FAP staff must treat those being clinically assessed with respect, fairness, and in keeping with professional ethics under reference (x).

6.  Intervention Strategy and Treatment Plan

a.  Intervention Strategy and Treatment Plan for the Alleged Abuser.  The FAP case manager, in consultation with the CCSM, must prepare an appropriate intervention strategy based on the clinical assessment for every abuser (whether alleged or adjudicated) for whom a FAP case is opened.  The intervention strategy documents the client's goals for self, the level of client involvement in developing the agreed upon treatment goals, and recommends appropriate:

(1) Actions that may be taken by appropriate authorities under the coordinated community response, including safety and protective measures, to reduce the risk of another act of domestic or child abuse, and the assignment of responsibilities for carrying out such actions.

(2) Treatment modalities based on the clinical assessment that may assist the abuser (whether alleged or adjudicated) in ending his or her abusive behavior.

OPNAVINST 1752.2C
20 May 2020

(3) Treatment if treatment modalities are outside the scope of counseling services, the abuser (whether alleged or adjudicated) must be referred to the appropriate agency for services.

(4) Actions that may be taken by appropriate authorities to assess and monitor the risk of recurrence.

b. <u>Supportive Services Plan for the Victim and Other Family Members</u>. The FAP case manager must prepare a plan for appropriate supportive services or clinical treatment, based on the clinical assessments, for every victim or family member who is eligible to receive treatment in a military MTF, who expresses a desire for FAP services, and for whom a FAP case is opened. The plan must recommend one or more appropriate treatment modalities or support services, set forth in reference (a).

c. <u>Commanders' Access to Relevant Information for Disposition of Allegations</u>. FAP provides commanders and senior enlisted personnel timely access to relevant information on child abuse incidents and unrestricted reports of domestic abuse incidents to support appropriate disposition of allegations. Relevant information includes:

(1) The intervention goals and activities.

(2) The alleged abuser's prognosis for treatment, as determined from a clinical assessment.

(3) The extent to which the alleged abuser accepts responsibility for his or her behavior and expresses a genuine desire for treatment.

(4) Other information considered appropriate for disclosure to the command, including the results of any previous treatment of the alleged abuser for domestic or child abuse and his or her compliance with the previous treatment plan, and the estimated time the alleged abuser will be required to be away from military duties to fulfill treatment commitments.

d. <u>Clinical Consultation</u>. All FAP clinical assessments and treatment plans for persons in incidents of domestic or child abuse are reviewed in the CCSM, under references (a) and (z).

7. <u>Intervention and Treatment for Eligible Beneficiaries</u>. CCSM treatment plan and recommendations letters must be acknowledged in writing by the CO with a copy retained by FAP.

a. <u>Intervention Services for Abusers</u>. Appropriate intervention services for an abuser (whether alleged or adjudicated) are available either from the FAP or from other military agencies, contractors, or civilian services providers, including:

(1) Psycho-educationally based programs and services.

14-6

(2) Supportive services that may include financial counseling and spiritual support.

(3) Clinical treatment specifically designed to address risk and protective factors and dynamics associated with domestic or child abuse.

(4) Trauma informed clinical treatment.

b. <u>Treatment Contract</u>. Properly informing the abuser of the treatment rules is a condition for treating violations as a risk management issue. The clinician will prepare and discuss with the abuser an agreement between them that will serve as a treatment contract. The agreement will be in writing and the clinician will provide a copy to the abuser and retain a copy in the treatment record. The contract will include the items listed in subparagraphs 7b(1) through 7b(5).

(1) <u>Goals</u>. Specific abuser treatment goals, as identified in the treatment plan.

(2) <u>Time and Attendance Requirements</u>. The frequency and duration of treatment and the number of absences permitted.

(a) Clinicians may follow applicable State standards specifying the duration of treatment as a benchmark unless otherwise indicated.

(b) An abuser may not be considered to have successfully completed clinical treatment unless he or she has completed the total number of required sessions. An abuser may not miss more than 10 percent of the total number of required sessions. On a case-by-case basis, the facilitator should determine whether significant curriculum content has been missed and make-up sessions are required.

(3) <u>Crisis Plan</u>. A response plan for abuser crisis situations (information on referral services for 24-hour emergency calls and walk-in treatment when in crisis).

(4) <u>Abuser Responsibilities</u>. The abuser must agree to:

(a) Abstain from all forms of domestic abuse.

(b) Accept responsibility for previous abusive and violent behavior.

(c) Abstain from purchasing or possessing personal firearms or ammunition.

(d) Talk openly and process personal feelings.

OPNAVINST 1752.2C
20 May 2020

(e)  Provide financial support to his or her spouse and children as directed in the terms of an agreement with the spouse or court order.

(f)  Treat group members, facilitators, and clinicians with respect.

(g)  Contact the facilitator prior to the session when unable to attend a treatment session.

(h)  Comply with the rules concerning the frequency and duration of treatment, and the number of absences permitted.

(5)  <u>Consequences of Treatment Contract Violations</u>.  Violation of any of the terms of the abuser contract may lead to termination of the abuser's participation in the clinical treatment program.

(a)  Violations of the abuser contract may include, but are not limited to:

<u>1</u>.  Subsequent incidents of abuse.

<u>2</u>.  Unexcused absences from more than 10 percent of the total number of required sessions.

<u>3</u>.  Statements or behaviors of the abuser that show signs of imminent danger to the victim.

<u>4</u>.  Behaviors of the abuser that are escalating in severity and may lead to violence.

<u>5</u>.  Non-compliance with co-occurring treatment programs that are included in the treatment contract.

(b)  If the abuser violates any of the terms of the abuser contract, the clinician or facilitator may terminate the abuser from the treatment program; notify the command, civilian criminal justice agency, and civilian court as appropriate; and notify the victim if contact will not endanger the victim.

(c)  The command should take appropriate action when notified that the abuser's treatment has been terminated due to a contract violation.

c.  <u>Supportive Services or Treatment for Victims</u>.  The FAP case manager must prepare a plan for appropriate supportive services or clinical treatment, based on the clinical assessments, for victims and family members who express a desire for FAP services, and for whom a FAP case is opened.  The plan will recommend one or more appropriate treatment modalities or

OPNAVINST 1752.2C
20 May 2020

support services, under references (a) and (z). Appropriate supportive services and treatment are available either from the FAP, or from other military agencies, contractors, or civilian services providers, including:

(1) Immediate and ongoing domestic abuse victim advocacy services, available 24 hours per day through personal or telephone contact.

(2) Supportive services that may include financial counseling and spiritual support.

(3) Psycho-educationally based programs and services.

(4) Appropriate trauma informed clinical treatment specifically designed to address risk and protective factors and dynamics associated with domestic or child abuse victimization.

(5) Supportive services, information and referral, safety planning, and treatment (when appropriate) for child victims and their family members for abuse by non-caretaking abusers.

d. Supportive Services for Victims or Abusers Who Are Not Eligible to Receive Treatment in a Military MTF. Victims must receive initial safety planning services only and should be referred to civilian support services for all follow-on care. Abusers should receive referrals to appropriate civilian intervention or treatment programs.

e. Ethical Conduct in Supportive Services and Treatment for Abusers and Victims. When providing FAP supportive services and treatment, FAP staff treats those receiving such supportive services or clinical treatment with respect, fairness, and in keeping with professional ethics under references (a), (m), (x), and (z).

f. Continuity of Services. The FAP case manager ensures continuity of services before the transfer or referral of open domestic or child abuse cases to other service providers:

(1) At the same installation or other installations of the military FAPs.

(2) In the civilian community.

(3) In child welfare services in the civilian community.

8. Criteria for Evaluating Treatment Progress and Risk Reduction. In determining when treatment must be ended, the FAP clinician will assess progress in treatment and reduction of risk. If a risk factor is not addressed within the domestic abuse clinical intervention but is being addressed by another clinical service provider, the FAP clinician must ascertain the progress or results of such other treatment from the clinical service provider providing treatment, for the other risk factors. Treatment should be assessed periodically in light of information from numerous sources, especially but not limited to the victim, and adjusted to address emergent or

OPNAVINST 1752.2C
20 May 2020

exacerbated concerns. In making contact with the victim and in using the information, clinical service providers must always consider the victim's safety concerns. Progress in clinical treatment and risk reduction is indicated by a combination of the items in subparagraphs 8a through 8c.

　　a. Abuser Behaviors and Attitudes. An abuser is demonstrating progress in treatment when, among other indicators, he or she:

　　　　(1) Has completed all treatment recommendations or plans;

　　　　(2) Demonstrates the ability for self-monitoring or assessment of his or her behavior;

　　　　(3) Is able to develop a relapse prevention plan; and

　　　　(4) Is able to monitor signs of potential relapse.

　　b. Information from the Victim and Other Relevant Sources. The abuser is demonstrating progress in treatment when the victim and other relevant sources of information state that the abuser has:

　　　　(1) Ceased all violent behavior;

　　　　(2) Reduced the frequency of non-violent abusive behavior;

　　　　(3) Reduced the severity of non-violent abusive behavior;

　　　　(4) Delayed the onset of abusive behavior; and

　　　　(5) Demonstrated the use of improved relationship skills.

　　c. Reduced Ratings on Risk Assessment Variables that are Subject to Change. The abuser has successfully reduced risk when the assessment of his or her risk is at an acceptable level as determined by the clinician and presented at the CCSM for concurrence.

9. Communication of Case Closure. Upon closure of the case the FAP notifies by letter the individuals in subparagraphs 9a through 9f.

　　a. The abuser (whether alleged or adjudicated) and victim, and in a child abuse case, the non-abusing parent.

　　b. The commander of an active duty victim or abuser (whether alleged or adjudicated).

OPNAVINST 1752.2C
20 May 2020

c.  Any appropriate civilian court currently exercising jurisdiction over the abuser (whether alleged or adjudicated), or in a child abuse case, over the child.

d.  A civilian CPS agency currently exercising protective authority over a child victim.

e.  The NPSP, if the family has been currently receiving NPSP intensive home visiting services.

f.  The FAP VA if the victim has been receiving victim advocacy services.

10.  <u>Special Case Requirements</u>

a.  <u>Multiple Victims</u>

(1)  A case where there are one or more reported incidents of suspected domestic or child abuse pertaining to the same victim.  If there are multiple victims, each counts as a separate case.

(2)  Individual cases of members of the same family must be linked for cross-referencing purposes.

b.  <u>Multiple Incidents</u>

(1)  Multiple incidents of abuse by the same abuser to the same victim disclosed during the initial assessment must be documented as separate allegations (up to four) in one case record. However, if the initial report is of multiple incidents of different types of abuse, each of those incidents must be assessed and taken to the IDC.

(2)  The proper documentation of multiple incidents is extremely important.  Multiple reported incidents of child abuse and unrestricted reports of domestic abuse involving the same Service member or family members are documented separately within one FAP case record or each type of abuse.

c.  <u>Designated Special Interest Cases</u>

(1)  Designated special interest cases are FAP cases identified by higher authority that would require additional reporting requirements or notifications.  This includes reporting and notification outside the installation or regional FAP chain of command, to include CNIC (N91) and OPNAV (N17).

(2)  Designated special interest cases include:

(a)  Those where the installation or command leadership is involved as an alleged victim or as an alleged abuser.

OPNAVINST 1752.2C
20 May 2020

(b)  Those cases that attract the attention of officials (military or civilian), the media, or other agencies due to the nature of the case or possible disclosure by an alleged abuser or victim.

(c)  Those designated by higher authority.

(d)  The death of a spouse or child due to domestic violence or child abuse.

OPNAVINST 1752.2C
20 May 2020

CHAPTER 15
MANAGEMENT OF CHILD SEXUAL ABUSE (CSA) CASES

1.  <u>CSA Case Notifications</u>.  In cases involving allegations against active duty military of CSA, commands will immediately notify law enforcement and the local FAR.  CNIC (N91) must notify PERS-833/834 and state the substance of the allegations, current status of the alleged abuser, and any pending disposition of the incident.

   a.  Upon receipt of notification, PERS-833/834 will temporarily flag the Service member's record to preclude transfer, reenlistment, advancement, or promotion of the Service member pending resolution of the case.  (See chapter 12 for details of the flagging process.)

   b.  PERS-833/834 and CNIC will share primary control over the monitoring, evaluation, and disposition of the case, including communications with the parent command.  CNIC will intake information, maintain informational files, and provide consultation on clinical and safety issues.  PERS-833/834 must provide oversight and management of the case for COMNAVPERSCOM.

   c.  PERS-833/834 will receive information on these cases and promptly notify the alleged abuser's CO of the allegation and possible outcomes if the allegation meets criteria.  Notification will be sent within 10 days of receipt of the allegation and must contain the items specified in subparagraphs 1c(1) through 1c(8).

      (1)  The requirement to take prompt appropriate disciplinary action to hold the Service member accountable for his or her actions, and plan for the safety of family members.

      (2)  PERS-833/834 temporary flagging procedures and the circumstances under which the flag will be removed.

      (3)  The Service member's inability to reenlist, transfer out of the immediate area, or be advanced or promoted pending resolution of the case.

      (4)  PERS-833/834 will review the case and direct mandatory administrative separation processing in line with section 1910-142 and 1611-010 of reference (t) for allegations that meet criteria for a CSA incident unless the Service member has been acquitted at a criminal proceeding.

      (5)  If the incident against the Service member meets criteria for CSA, the IDC information must be forwarded to CNIC, the Navy FAP Central Registry and the DoD Central Registry (Maltreatment and Domestic Abuse Incident Reporting System).  Information contained in Navy FAP Central Registry identifying the victim, the victim's sponsor, and the alleged abuser in a met criteria incident of child maltreatment or domestic abuse is kept indefinitely to conduct background criminal and suitability checks for those providing services to military families.

OPNAVINST 1752.2C
20 May 2020

(6) The functions of the local IDC and the importance of confidentiality.

(7) PERS-833/834 will review each case and must be kept informed of the status of the case by both CNIC (N91) and the Service member's CO, including the ISD, CCSM treatment recommendations, or the disposition of any administrative or disciplinary actions.

(8) If a decision as to appropriate disciplinary action is not made within 90 days of the allegation, the command will send a status report to PERS-833/834. Status reports will continue every 14 days until resolution of the case.

d.  Suspected abusers must not be interviewed by FAP personnel without the express consent of NCIS and prior consultation with the Service member's CO. The local IDC will review the allegations and inform the Service member's command and the victim (or an adult acting on behalf of a child victim) of the ISD and recommendations. The Service member may receive interim rehabilitation, education, and counseling, however, no long-term services that require movement from the local area or PCS will be provided to the suspected abuser without the express consent of PERS-833/834 and the parent command.

2.  Allegations Meeting Criteria.  In all cases in which the allegations meet criteria, the Service member must be held accountable, as appropriate, and victim safety issues must be fully addressed. If disciplinary proceedings are not initiated by the command, PERS-833/834 will review the case and direct administrative processing. Administrative processing is mandatory if the case meets criteria for CSA. If administrative board elects to retain the Service member then he or she must follow the recommendations of the CCSM.

3.  Allegations Not Meeting Criteria.  When an IDC determines allegations of incest or extra-familial CSA do not meet criteria, the case will be closed and the CNIC (N91) will inform PERS-833/834 to remove the flag from the Service member's record.

OPNAVINST 1752.2C
20 May 2020

CHAPTER 16
TEMPORARY REMOVAL OF CHILD FROM A HOME
AND OVERSEAS AND ISOLATED AREAS GUIDANCE

1.  <u>General</u>.  Accompanied service in overseas and isolated duty stations presents unique challenges such as fashioning an appropriate response to family advocacy related situations which does not conflict with SOFAs or other international agreements, and the jurisdiction which may be entertained by the cognizant foreign court.  In isolated sites within U.S. control, unique challenges may exist because of a lack of trained personnel on site when expeditious transfer to a location where services are available is not practical.  Commanders are strongly advised to immediately consult the responsible SJA to ensure legal considerations are managed in a manner which does not inappropriately conflict with victim safety.

2.  Temporary Removal of the Child from the Home by Order of the Installation Commander

    a.  The authority of commanders to remove children from their homes without parental consent is limited to situations where there is substantial reason to believe the life or health of the child is in real and present danger and the commander has the authority to order removal.  For example, an appropriate circumstance is when there is no protecting and responsible adult in the home and the child is located on an installation inan overseas location, or in an area under the sole jurisdiction of U.S. military forces.  However, when possible, the consent of the parent allowing removal of the child for treatment and care should be requested and obtained prior to removal.

    b.  Use of the commander's authority in this regard may be limited by local law, agreements, or treaties.  Commanders should consult with an SJA before issuing a removal order unless the delay occasioned by such consultation is, in the opinion of the commander, likely to result in death or serious bodily harm to the child.  When not inconsistent with the safety and welfare of the child, afford notice and opportunity for the parents to present their perspective on the incident, before removal.

    c.  Commanders must consider the factors in subparagraphs 2c(1) through 2c(4) before making a decision regarding removal of a child.

        (1) Removal of a child from the home is a drastic action which could be challenged by the parents and, as a result, must be documented completely.

        (2) Whether the facts pertinent to the child's situation are fully known and whether alternatives to removal may exist, the safety of the child is paramount.  In this regard, input should be obtained from the installation FAR, CCSM, and SJA.  CNIC FAPM and judge advocate staff are available for consultation as needed.  A decision to temporarily remove a child from the home by order of the installation commander should be made only after a thorough

16-1

OPNAVINST 1752.2C
20 May 2020

assessment, investigation, and review by the high risk for violence-coordinated community response team and approval of the CO.

(3) Removal decisions should be based on legal counsel which takes into account all relevant facts, local laws, and, in overseas locations, applicable treaties, SOFAs, and whether the host nation expressed an interest in the case or relinquished jurisdiction.

(4) If the commander determines removal from the parent or guardian is necessary, a written child removal order must be used.

d.  If the installation commander determines a child is in physical danger, and the parents are unavailable or uncooperative, the commander of the military MTF may admit the child to the military MTF or provide required medical care without parental authorization.  Involvement of a parent or sponsor in the treatment process should always be sought to increase understanding and reduce resistance to medical care.  However, this consideration should not be permitted to inappropriately conflict with identified victim safety concerns.

e.  If the commander determines removal from the parent or guardian is necessary, a written child removal order must be used and an appropriate factual record of the decision and supporting information must be compiled.  The FAR, in conjunction with the sponsor's command and the high risk for violence-coordinated community response team, is responsible for developing and implementing a safety plan.

f.  The commander's authority to remove the child is temporary.  It continues only until:

(1) The immediate threat has passed;

(2) Local civilian authorities assume responsibility for the case; or

(3) Return of the family to CONUS and local civilian authorities assume responsibility for the case.

3.  Medical or Diagnostic Needs.  When medically identified diagnostic or treatment needs are critical, but cannot be met by local resources, temporary transportation of the victim, Service member or family to a location having the required services may be recommended by the local FAR or military MTF HCP.  With concurrence of CNIC, installations are authorized to use the Armed Forces Center for Child Protection for assessment and consultation with child abuse and neglect cases involving medical concerns or injury.

a.  In cases where diagnostic or treatment needs are expected to be prolonged, the commander may consider other solutions consistent with victim safety, command resources, and mission.

OPNAVINST 1752.2C
20 May 2020

b.   Alternatives to temporary transportation include revocation of command sponsorship, directing early return of family members or recommending PCS orders for the sponsor Service member.

4.   <u>Long-Term Care or Treatment</u>.  If it is determined long-term foster care and treatment is required, the decision should be made to return the child (and preferably the parents) to CONUS. Specific guidance regarding early returns is provided in reference (t), article 1300-306.  At overseas locations, the FAR can assist with arrangements.  A decision to return families or family members should be made only after a thorough assessment, investigation, and review by the high risk for violence-coordinated community response team and approval of the CO.

5.   <u>Early Returns</u>.  Early return decisions may be made in crisis situations requiring urgent action.  Early return of children to CONUS without parental accompaniment will only be accomplished if the losing site coordinates with the gaining State CPS agency.  It may be necessary to use telephonic contacts and ad hoc committee meetings to make rapid case determinations.  The transfer process is outlined in subparagraphs 5a and 5b.

a.   In overseas locations, the FAR will be responsible for subparagraphs 5a(1) through 5a(5).

(1) Coordinating with the FAR at the receiving location and providing complete case information.

(2) Sending a letter to the gaining command explaining the case and recommending the command contact the local FAR.

(3) Arranging escorts for minors if safety of the minors is a concern.

(4) Requesting follow-up reports from the gaining command, FAR, and CPS if a member is not transferred with the family.

(5) Enrolling the child victim in need of treatment in the Exceptional Family Member Program, if applicable.

b.   The receiving FAR is responsible for subparagraphs 5b(1) through 5b(4).

(1) Reviewing the case to ensure safety of all members and determining how the family's needs will be met by local resources.

(2) Reporting child abuse cases to the local CPS.  State social agencies have differing policies regarding acceptance of cases originating outside their jurisdiction.

(3) Assuming normal FAP case management responsibilities.

OPNAVINST 1752.2C
20 May 2020

(4) Providing case updates to the losing OCONUS FAR or isolated command if a member did not transfer with the family.

6. <u>Documentation</u>.  The FAR and command must keep the child's interest paramount.  They must use all available resources in making informed decisions and documenting in detail all removal discussions, decisions, and subsequent follow-up actions.

OPNAVINST 1752.2C
20 May 2020

CHAPTER 17
FATALITY NOTIFICATION AND REVIEW

1.  <u>Fatality Notification</u>.  Installation FAC establishes local procedures in compliance with CNIC implementing policy and guidance to report fatalities known or suspected to have resulted from an act of domestic or child abuse, or suicide related to an act of domestic or child abuse. Installation reports of domestic and child abuse fatalities are reported on DD Form 2901, to CNIC (N91) with a copy to OPNAV (N17) within 72 hours of being notified of the fatality. CNIC must forward the DD Form 2901 to DASD (MC&FP).

   a.  Information contained on DD Form 2901 must be coordinated with NCIS.  If a local LEA has jurisdiction over the investigation NCIS will coordinate the information prior to submission.

   b.  The name of the victims and alleged abuser must not be included in item 25 of DD Form 2901.

   c.  The information in items 1 through 8 of DD Form 2901 will be retained at DASD (MC&FP) for 2 calendar years after receipt.  This information will be used to ascertain whether the DON Fatality Review Board has conducted the required fatality review.  All remaining items on DD Form 2901 will be retained for 2 weeks after receipt to ensure that the Fatality Review Board has documented the fatality for future fatality reviews.

2.  <u>Review of Fatalities</u>

   a.  <u>Annual Review</u>.  Fatalities that are known or suspected to have resulted from acts of domestic or child abuse must be reviewed annually under references (a) and (d).

   b.  <u>Information Forwarded for Fatality Review</u>.  The installation FAP must provide written information concerning domestic and child abuse fatalities that involve personnel assigned to the installation or within its area of responsibility promptly to the CNIC (N91).

3.  <u>Review of Navy-Related Fatalities</u>.  Navy FAP and Marine Corps FAP coordinate and conduct a multidisciplinary, impartial review of each fatality known or suspected to have resulted from an act of domestic violence, child abuse or suicide related to an act of domestic violence or child abuse.  A fatality will only be reviewed when all criminal proceedings have been completed.

   a.  <u>CNIC</u>.  CNIC must establish and train a fatality review team.

   (1) The team must be multidisciplinary, with representatives from organizations responsible for intervening with victims and abusers.  At a minimum, FAP, the MTF, the SJA, law enforcement, and criminal investigative organization must be represented.

17-1

OPNAVINST 1752.2C
20 May 2020

(2) The team may include appropriate civilian representatives.

(3) The team must meet regularly in closed sessions to review fatalities for the purpose of identifying trends and patterns that may assist in developing policy recommendations that promote more effective prevention efforts and earlier and more effective interventions.

b. <u>The Fatality Review Team must</u>:

(1) Comply with the requirements of references (d), (i) and (k) and any State law that protects the confidentiality of the identities of individuals.

(2) Protect the confidentiality of the deliberations and internal team.

(3) Establish operating procedures that are flexible enough to accommodate informal approaches that facilitate the team's work, including meeting on an ad hoc basis, dispensing with routine meeting minutes, and conducting preliminary reviews without benefit of key information (i.e., police report, autopsy report, record of trial).

(4) Conduct a system review of each identified case by determining which organizations had contact with the deceased and what services, if any, were offered. The team must also provide the quality of those services, the timeline of these critical events, and whether better or different services might have prevented the death of the deceased.

c. <u>CNIC must coordinate an "Annual Report of Fatalities" with OPNAV (N17) and forward to the DASD (MC&FP) via Assistant Secretary of the Navy (Manpower & Reserve Affairs)(ASN (M&RA))</u>. The report will, at a minimum, include the items listed in subparagraphs 3c(1) through 3c(7) of this chapter.

(1) An executive summary.

(2) Demographic and historical data.

(a) The victims' sex, age, race or ethnicity, pay grade (if applicable), injuries, autopsy findings, household or family information (without identifying data), and significant medical and mental health history.

(b) Information on the manner of death: the legal classification, whether natural, suicide, homicide, accidental or undetermined.

(c) Information on the alleged assailants' sex, age, race or ethnicity, pay grade (if applicable), and household or family information (without identifying data), prior police record, restraining order violations, and significant medical and mental health history.

OPNAVINST 1752.2C
20 May 2020

(d) Whether there had been previous violence between the victim and alleged assailant or a previous suicide attempt, and if so, a description of such previous violence or suicide attempt.

(3) Policies and practices reviewed as a result of the fatality.

(4) SJA verified military or civilian legal dispositions of cases involving homicide.

(5) System interventions and failures, if any, within the Navy.

(6) A discussion of significant findings.

(7) Recommendations for systemic changes.

4. <u>Cooperation with Non-DON Fatality Review Teams</u>.  Installation personnel are authorized to participate on non-DoD fatality review teams and provide information about domestic and child abuse fatalities that involve personnel assigned to the installation or within its area of responsibility to non-DoD fatality review teams as set forth in written MOUs and references (a), (d), (i) and (k).

OPNAVINST 1752.2C
20 May 2020

CHAPTER 18
DOCUMENTATION AND RECORDS MANAGEMENT

1.  Documentation of Reported Incidents

    a.  Reports of Child Abuse and Unrestricted Reports of Domestic Abuse.  For every newly reported incident of child abuse and unrestricted report of domestic abuse, the FAP documents, at a minimum must include, an accurate accounting of all risk levels, actions taken, assessments conducted, foster care placements, clinical services provided, and results of the quarterly CCSM from the initial report of an incident to case closure.

    b.  Maintenance, Storage, and Security of FAP Case Records.  FAP case records are maintained, stored, and kept secure in line with SECNAV M-5210.1.

    c.  Transfer of FAP Case Records.  FAP case records are transferred as directed by references (a) and (i).

    d.  Disposition of FAP Records.  FAP records are disposed of as directed by references (a) and (i).

2.  Navy FAP Central Registry of Domestic and Child Abuse Incidents

    a.  Recording Data into the CNIC Navy FAP Central Registry of Domestic and Child Abuse Incidents.  Data pertaining to child abuse and unrestricted domestic abuse incidents reported to FAP are added to the Navy FAP Central Registry of child and domestic abuse incidents. Quarterly edit checks are conducted.  Data that personally identifies the sponsor, victim, or alleged abuser are not retained in the Navy FAP Central Registry for any incidents that did not meet criteria.

    b.  Access to the DoD Central Registry of Child and Domestic Abuse Incidents.  Access to the DoD Central Registry of child and domestic abuse incidents and disclosure of information complies with references (a), (i), and (k).

    c.  Access to CNIC FAP Headquarters Navy FAP Central Registry of Domestic and Child Abuse Reports.  Access to the CNIC FAP Navy FAP Central Registry of child and domestic abuse incidents and disclosure of information therein complies with references (a), (i), and (k).

3.  Documentation of Restricted Reports of Domestic Abuse

    a.  Documentation of Restricted Reports of Domestic Abuse.  Restricted reports of domestic abuse are documented as directed by references (a), (i), and (k).

OPNAVINST 1752.2C
20 May 2020

b. <u>Maintenance, Storage, Security, and Disposition of Restricted Reports of Domestic Abuse</u>.  Records of restricted reports of domestic abuse are maintained, stored, kept secure, and disposed of as set forth in references (a), (i), and (k).

4. <u>Reportable Incident Criteria</u>.  All domestic abuse incidents that meet the reportable incident criteria must be reported to the parent command of the Service member via the CCSM treatment notification letter and recorded in the Navy FAP Central Registry.

OPNAVINST 1752.2C
20 May 2020

CHAPTER 19
FAP TRAINING

1.  General.  FAP training requirements apply to all Service members and DoD civilian personnel who supervise Service members.  Commanders and managers responsible for training must require that all personnel are trained and that completion of training is documented.

    a.  The GMT program has been redesigned and as part of the Navy Command-Assigned Readiness-Enhancement aligns with fleet-centered leader development approach outlined in CNO's, "A Design for Maintaining Maritime Superiority."  Domestic and child abuse prevention training will be delivered to the appropriate audience at an appropriate periodicity as determined by the local command.  Delivery may include locally-generated content consistent with the provisions and policies set forth in this instruction or utilize standardized products as desired.  Commands may also consider presentations by outside organizations (e.g., law enforcement outreach, FFSC) commonly given at safety stand downs or pre and post deployment briefings, to be part of the Navy Command-Assigned Readiness-Enhancement training.  There is no minimum periodicity associated with this topic, but commands are encouraged to judiciously exercise this flexibility to ensure the right people receive the training when appropriate, based on command schedule and as situational requirements dictate:  content of training is covered in reference (a) and must consist of the policies and procedures contained in this instruction, definitions of domestic and child abuse, the impact on families, and personal responsibility.  Additionally, training must provide personnel with information on available reporting options and the exceptions and limitations of each reporting option.

    b.  Domestic and child abuse prevention and response training must include, at a minimum, confidentiality and reporting procedures for allegations of domestic and child abuse.

    c.  Training for deploying units will focus on relationships between deployment and post-deployment reintegration, tailored to address operational stress and other forms of stress which increase the risk of domestic and child abuse.

2.  FAP Training Policy

    a.  FAP training must provide personnel with DoD and Navy policies and information on available reporting options and the exceptions or limitations of each option.

    b.  All prevention education will use current DoD definitions, published for training and education purposes.

    c.  OPNAV (N17), NETC, or CNIC will develop or approve training for Service members and civilian employees to ensure standardization and consistency throughout the Navy.

OPNAVINST 1752.2C
20 May 2020

3.  <u>Implementation of Training Requirements</u>.  The FAP implements coordinated training activities for commanders, senior enlisted advisors, Service members, DoD civilians, and contractors.  Periodic, mandatory training on the topics listed in subparagraphs 3a through 3e must be provided to all military personnel as directed by reference (a).  To the extent possible, education and awareness activities should also target family members.

    a.  Dynamics of domestic abuse.

    b.  DoD policy and Military Service-specific domestic abuse policies and procedures.

    c.  Common misconceptions associated with domestic abuse.

    d.  Beliefs, attitudes, and cultural issues associated with domestic abuse.

    e.  Military and civilian domestic abuse resources.

4.  <u>FAP Training for Supervisors</u>.  Periodic FAP training is also required for civilians who supervise Service members.  The unit commander or civilian director responsible for facilitating the training of civilians supervising Service members must ensure that all FAP training requirements are met.

5.  <u>Leadership Training</u>.  The installation commander must ensure that qualified FAP trainers provide training on the prevention of and response to domestic and child abuse to:

    a.  Commanders within 90 days of assuming command.  This training must consist of command FAP updates and local FAP initiatives and is in addition to the annual training requirement.  Commanders must ensure completion is documented in fleet training management and planning system.

    b.  Annually to non-commissioned officers who are senior enlisted advisors.

6.  <u>Training for FAP Support Personnel</u>.  Qualified FAP trainers conduct role-specific training (or help provide subject matter experts who conduct training) on domestic and child abuse in the military community to installation:

    a.  Law enforcement and investigative personnel.

    b.  Legal personnel.

    c.  Health care personnel.

    d.  SAPR personnel.

OPNAVINST 1752.2C
20 May 2020

    e.   Chaplains.

    f.   Personnel in DoDEA schools.

    g.   Personnel in CDCs.

    h.   Family home care providers.

    i.   Personnel and volunteers in youth programs.

    j.   FFSC personnel.

    k.   Service members.

    l.   Ombudsman and family readiness group leaders.

OPNAVINST 1752.2C
20 May 2020

CHAPTER 20
FAP PERSONNEL QUALIFICATIONS AND TRAINING

1.  <u>General</u>.  Key FAP personnel must have requisite qualifications and must complete the CNIC training for their respective roles and responsibilities.

  a.  <u>The FAR Must Have, at a Minimum</u>:

    (1) A master's or doctoral level degree in the behavioral sciences from an accredited university or college.

    (2) The highest licensure in good standing by a State regulatory board in either social work, psychology, or marriage and family therapy that authorizes independent clinical practice.

    (3) Five years of post-license experience in domestic and child abuse.

    (4) Three years of experience supervising licensed clinicians in a clinical program.

  b.  <u>Fleet and Family Support Program Clinical Service Providers</u>.  All personnel who conduct clinical assessments or provide clinical treatment to domestic abusers must meet minimum qualifications in subparagraphs 1b(1) through 1b(4).

    (1) A master's or doctoral level human service or mental health professional degree from an accredited university or college.

    (2) The highest license in the State or clinical license in good standing in a State that authorizes independent clinical practice.

    (3) One-year experience in domestic or child abuse counseling or treatment.

    (4) Additionally all clinical service providers must undergo the training in subparagraphs 1b(4)(a) and 1b(4)(b).

      (a) Within 6 months of employment, orientation into the military culture.  This includes training in rank structures and military protocol.

      (b) Every 2 years, a minimum of 15 hours of continuing education units that are relevant to domestic and child abuse.  This includes but is not limited to continuing education in interviewing adult victims of domestic abuse, children, and domestic abusers, and conducting treatment groups.

  c.  <u>FAP VAs</u>

OPNAVINST 1752.2C
20 May 2020

(1) A bachelor's degree in social work, psychology, criminal justice, or related field.

(2) A minimum of 1 year post bachelor's experience in domestic abuse victim advocacy or 2 years of experience in family maltreatment.

(3) FAP VAs currently certified as a FAP VA may be considered in lieu of education or experience requirements. The Government must verify all FAP VA personnel certifications and experience with the appropriate agency as referenced in the contractor's source documents.

(4) FAP VAs must have knowledge of military programs, organizations, chain of command, unit missions, life styles, and situations that contribute to family stress, problems, and crisis situations.

(5) Complete FAP VA training prior to providing support to domestic and child abuse victims. At a minimum, FAP VAs must complete the requirements in subparagraphs 1c(5)(a) through 1c(5)(c).

(a) FAP VA training requirements and certifications.

(b) Annual CNIC-approved refresher training for each 12 months following the initial year in the position.

(c) Training on confidentiality requirements and exceptions of restricted reporting and MREs 513 and 514.

2. <u>Content of Training</u>. FAP training for FAP clinical service providers must include:

a. Research-supported protective factors that promote and sustain healthy family relationships.

b. Risk factors for and the dynamics of domestic and child abuse.

c. Requirements and procedures for reporting child abuse.

d. The availability of FAP VAs and response to restricted and unrestricted reports of incidents of domestic abuse.

e. The dynamics of domestic abuse, reporting options, safety planning, and response unique to the military culture that establishes and supports competence in performing core victim advocacy duties and child advocacy for non-offending parents.

f. Roles and responsibilities of the FAP and the command under the installation's coordinated community response to a report of child abuse, including the response to a report of

OPNAVINST 1752.2C
20 May 2020

CSA in a DoD-sanctioned child or youth activity, or domestic abuse incident, and actions that may be taken to protect the victim.

g.  Available resources on and off the installation that promote protective factors and support families at risk before abuse occurs.

h.  Procedures for the management of domestic and child abuse incidents when an alleged abuser Service member in an active domestic or child abuse case is deployed.

i.  The availability of transitional compensation for abused dependents for victims of domestic and child abuse.

3.  Clinical Service Provider Levels

a.  Tier I (Clinical Provider).  The clinical provider must meet the requirements in subparagraphs 3a(1) and 3a(2).

(1) A master's or doctoral degree in one of the disciplines or in an allied clinical field listed in subparagraphs 3a(1)(a) through 3a(1)(f).

(a)  Counseling from a program accredited by the Council for Accreditation of Counseling and Related Education Programs, or an equivalent degree.

(b)  Marriage and family therapy from a program accredited by the Commission on Accreditation for Marriage and Family Therapy Education, or an equivalent degree.

(c)  Social work from a school accredited by the Council on Social Work Education, or an equivalent degree.

(d)  Psychology from a doctoral program approved by the American Psychological Association, or an equivalent degree.

(e)  An allied clinical field from a regionally accredited graduate program leading to a State license or State certification to practice independently in a clinical field.

(f)  A master's degree in psychology from a graduate program accredited by the Inter-Organizational Board for Accreditation of Master's in Psychology Accreditation Counsel, or an equivalent degree.

(2) Clinical providers must be supervised by a Tier III clinical practitioner and will be involved in a professional development plan as directed by the site or regional fleet and family support program counseling and advocacy coordinator.

OPNAVINST 1752.2C
20 May 2020

b.  <u>Tier II (Clinical Practitioner)</u>.  The clinical practitioner must meet the requirements in subparagraphs 3b(1) through 3b(3).

(1) State or U.S. territory license or certification that provides legal authority to provide clinical services as an independent practitioner.  When the State or U.S. territory licensing or certification requirements include a written examination, candidates for privileging must have achieved a passing score on that examination.

(2) Possess at least a master's degree in one of clinical fields listed in subparagraphs 3b(2)(a) through 3b(2)(c).

(a)  Marriage and family therapy from a program accredited by Commission on Accreditation for Marriage and Family Therapy Education, or an equivalent degree.

(b)  Social work from an accredited school, or an equivalent degree.

(c)  Psychology from a doctoral program approved by American Psychological Association, or an equivalent degree.

(3) Must have engaged in 2 years, that includes at least 2,000 hours, full-time, post-master's supervised clinical experience.

c.  <u>Tier III (clinical practitioner, supervisor eligible)</u>.  The clinical practitioner, supervisor eligible must meet the requirements in subparagraphs 3c(1) and 3c(2).

(1) All criteria required for clinical practitioner.

(2) Two years post licensure, that includes at least 2,000 hours post licensure or 4,000 hours post graduate degree, full-time clinical experience in a clinical setting.

OPNAVINST 1752.2C
20 May 2020

CHAPTER 21
RESEARCH AND EVALUATION

1.  <u>General</u>.  Research and evaluation are critical in understanding domestic abuse, child abuse, and the effectiveness of the Navy's FAP policies.  Conducting research allows the Navy to study domestic and child abuse issues and keep family advocacy practices current and relevant.  Evaluation enables the Navy to consider how programs and policies can be improved.

2.  <u>Research</u>.  Research projects must be conducted through collaborative partnerships with military and civilian researchers who understand the unique needs of military families.  The FAP research must be conducted for the purpose of program evaluation, accountability, improvement, and QA.

3.  <u>Evaluation</u>

    a.  Individual installation programs must be periodically and regularly evaluated to determine whether they meet specific program needs or require adaptation.  The evaluation must include definitions of program objectives, progress toward meeting program objectives, and the identification of barriers to meeting program objectives.  The evaluation must provide objective feedback to managers and policy-makers on the cost and benefits of individual program components.

    b.  Program evaluation must:

        (1) Ensure that the services provided follow applicable DoD and DON directives.

        (2) Assess the adequacy and efficiency of the FAP resources available to meet program objectives.

        (3) Ensure the evaluation points out information that can be utilized in program planning, staff training, and community relations.

        (4) Determine whether services are effective by using a valid unbiased research design to measure the results of FAP intervention.

        (5) Establish objectives for those programs and services provided through contracts, to measure the contractor's effectiveness in meeting these objectives.

        (6) Ensure plan proposals and results will be made available to DON organizations and other appropriate military and community agencies outside of the DoD, in compliance with references (a), (b), and (d).

OPNAVINST 1752.2C
20 May 2020

c.   An annual planning process must exist to review program progress and changing program directions, populations, and patterns.

(1) The outcome will be an updated FAP plan with specific objectives, needs, and strategies.

(2) The planning process must include relevant representatives of the medical staff, command personnel, and FAC members.  Other appropriate professionals and civilian community agency representatives may be invited to participate.

(3) The use of statistics from the FAP data collection efforts, program evaluation, and other QA efforts must serve as a primary source of information for this effort.

4.   QA.  Written plans with related policies and procedures must be developed at the installation to do an on-going evaluation of the quality of services provided.  Particular emphasis must be placed on reviewing credentials and granting privileges to providers.  In addition, emphasis must be placed on monitoring the impact of all of the FAP-related services, departments, and resources, and detecting trends, patterns of performance, and potential problems.  This process must address the quality, utilization, appropriateness, and timeliness of the services being provided.

a.   Installation FAP QA Program.  The installation FAC must establish local QA procedures that address compliance with the program standards under references (a) and (b).

b.   QA Training.  All FAP personnel must be trained in installation QA procedures.

c.   Monitoring FAP Compliance.  The installation FAR monitors compliance of FAP personnel to installation QA procedures, FAP policy, and CNIC implementing guidance.

5.   QA Procedures.  The installation FAR must ensure the clinical intervention process undergoes the QA procedures in subparagraphs 5a and 5b.

a.   A quarterly peer review of a minimum of 10 percent of open clinical records.

b.   A quarterly administrative audit of 10 percent of open records.

6.   Certifications

a.   Certification Requirements.  The installation FAP must undergo certification at least every 3 years but not more than 4 years to monitor compliance with the program standards in references (a) and (b).

OPNAVINST 1752.2C
20 May 2020

b.  <u>Review of Certification or Inspection Results</u>.  The installation FAC reviews the results of the FAP certification and submits findings and corresponding corrective action plans to CNIC (N91).

c.  <u>Site Visit</u>.  Personnel from OPNAV (N170) will periodically visit FFSCs to ensure compliance with references (a) and (b).  These visits may be part of the certification process.

OPNAVINST 1752.2C
20 May 2020

APPENDIX A
REFERENCES

(a)  DoD Manual 6400.01, Volume 1, Family Advocacy Program (FAP):  FAP Standards,
     3 March 2015
(b)  DoD Instruction 6400.01 of 13 February 2015
(c)  DoD Instruction 6400.06 of 21 August 2007
(d)  SECNAVINST 1752.3B
(e)  DoD Instruction 6495.02 of 28 March 2013
(f)  OPNAVINST 1752.1C
(g)  OPNAVINST 1700.9E
(h)  DoDEA AI 1356.01 of 5 November 2018
(i)  SECNAVINST 5211.5E
(j)  DoD 6025.18-R, DoD Health Information Privacy Regulation, 24 January 2003
(k)  DoD Directive 5400.11 of 29 October 2014
(l)  DoD Manual 6400.01, Volume 3, Family Advocacy Program (FAP):  Clinical Case Staff
     Meeting (CCSM) and Incident Determination Committee (IDC), 11 August 2016
(m) SECNAVINST 1754.7A
(n)  DoD Manual 6025.13, Medical Quality Assurance (MQA) and Clinical Quality Management
     in The Military Health System (MHS), 29 October 2013
(o)  DoD Manual 6400.01, Volume 2, Family Advocacy Program (FAP):  Child Abuse And
     Domestic Abuse Incident Reporting System, 11 August 2016
(p)  DoD Instruction 5505.19 of 3 February 2015
(q)  DoD Instruction 5525.19 of 4 May 2016
(r)  OPNAVINST F3100.6J (NOTAL)
(s)  OPNAVINST 5800.7A
(t)  NAVPERS 15560D
(u)  USD (P&R) Memo, Domestic Violence Incident Count and Consequent Command Actions,
     10 April 2014 (NOTAL)
(v)  DoD Instruction 6060.02 of 5 August 2014
(w) DoD Instruction 6060.4 of 23 August 2004
(x)  DoD Instruction 6400.07 of 25 November 2013
(y)  DoD Instruction 6400.03 of 25 April 2014
(z)  DoD Manual 6400.01, Volume 4, Family Advocacy Program (FAP):  Guidelines for Clinical
     Intervention for Persons Reported as Domestic Abusers, 2 March 2015

OPNAVINST 1752.2C
20 May 2020

APPENDIX B
SCOPE, APPLICABILITY, AND CONFIDENTIALITY

1. Scope

a.  This instruction establishes internal Navy policy only and is not intended to, nor does it create any rights, substantive or procedural, by law or equity by any victim, witness, suspect, accused or other person in any matter, civil or criminal, and places no limits on the lawful prerogatives of the Navy or its officials.

b.  FAP was established to provide a consistent, standardized response to incidents of domestic or child abuse.  FAP develops, implements, and evaluates programs and policies in line with references (a) through (d) to prevent and respond to domestic and child abuse.  FAP also provides policy to protect and assist known or suspected victims of domestic or child abuse.

c.  The terms "domestic abuse," "child sexual abuse," and "domestic sexual assault," as used in this instruction, apply to all such offenses against persons under 18 years of age, spouses, or intimate partners.  Sexual assaults against persons 18 years or older not in a spousal or intimate partner relationship are covered under the SAPR Program in line with references (e) and (f).

d.  When a report of child abuse involving a caretaker relationship is received by FAP, FAP makes a reciprocal report to law enforcement and the respective civilian child protection agency and opens a formal FAP case.  The purpose of opening a formal FAP case is to assess the need for child protection; to determine if an incident meets the criteria of child abuse or neglect as defined by the DoD; and to provide treatment to the child or family to ensure the ongoing safety and well-being of the child within the family.

e.  When a report of child abuse, as defined by section 13031 of Title 42, U.S. Code, involving a non-caretaker relationship is received by FAP, FAP makes a reciprocal report to law enforcement and a courtesy report to the respective child protection agency.  FAP is authorized to provide crisis intervention, support, and treatment when requested by the victim or non-offending family member.

f.  Child abuse inflicted by someone other than a parent, guardian, relative, or other caregiver is considered a criminal act and is addressed by law enforcement, not by child protection or child welfare.  In the DoD, the designated agency to receive allegations of child abuse under section 13031 of Title 42, U.S. Code, is military LEA.

g.  Domestic or sexual assault offenses committed by juveniles or against juvenile dependents by non-caretakers are not covered by the FAP or SAPR programs and should be reported to the appropriate civilian authorities.  Counseling services or referrals for abusers, victims, or family members may be provided by the local military MTF or FFSC.

OPNAVINST 1752.2C
20 May 2020

2. <u>Applicability</u>. Allegations of domestic or child abuse involving the persons identified in this instruction must be assessed and managed by FAP for:

a. Active duty members of the Military Services (Army, Navy, Air Force and Marine Corps) and their legal dependents (hereafter referred as family members). This includes members of the Coast Guard and their family members when operating as a Service in the Navy under section 3 of Title 14, U.S. Code.

b. Reserve Component members of the Military Services and their family members while on active duty, with the exception of pre-mobilization and post-mobilization briefings and designated support which may be provided in preparation for or following mobilization of individuals or units.

c. Former spouses, intimate partners, and dependents who are eligible for treatment in the military healthcare system, and whose relationship leads to entitlements, benefits, or privileges administered by the uniformed services or who are eligible for issuance of a family member identification card.

d. U.S. citizen DoD civilian employees located OCONUS and their family members, for services that are not otherwise available in the local community.

e. U.S. citizen DoD contractor personnel authorized to accompany the Military Services in contingency operations OCONUS.

f. Victims of domestic or child abuse that occur in locations under DoD jurisdiction are eligible for victim advocacy services on a humanitarian basis. This includes North Atlantic Treaty Organization or foreign hires as covered by local SOFA or MOU or MOA.

g. Staff of DoD-sanctioned CYPs in line with reference (g).

h. Staff of DoDEA in line with reference (h).

i. On a space available basis, military retirees and their family members, or the family of members who were on active duty or retired at their time of death.

3. <u>Confidentiality</u>. FAP information is designated "For Official Use Only – Privacy Sensitive."

a. All FAP records, including the Navy's FAP Central Registry, are maintained under the Privacy Act. Personnel who are involved with domestic or child abuse cases must ensure incident-related information is shared only for official purposes with those who have a need to know, unless the conditions for release of information meet criteria, under references (b) and (i) through (k).

OPNAVINST 1752.2C
20 May 2020

b.   To the extent permitted by Federal law and regulation, FAP staff and DoD personnel (e.g., physicians, dentists, nurses, other health care professionals, including FFSC clinical counselors, and law enforcement), may share investigative leads, information, and records to ensure all facts are fully developed using all resources and means available.  However, because of the sensitive nature of such records, individuals must exercise great care to ensure only necessary and relevant information is disclosed to those employees (military or civilian) who have a need to know for the performance of their official duties such as NCIS, for official investigative purposes.

c.   Every person referred for FAP clinical intervention and support services must be informed of their right to privileged and confidential communication by specified service providers.

d.   Mental health evaluations for Service members have additional requirements under DoD Instruction 6490.08 of 17 August 2011 and DoD Instruction 6490.04 of 4 March 2013.

OPNAVINST 1752.2C
20 May 2020

APPENDIX C
ACRONYMS AND DEFINITIONS

ACRONYMS

| | |
|---|---|
| BUMED | Bureau of Medicine and Surgery |
| CCSM | Clinical Case Staff Meeting |
| CMDCM | command master chief |
| CNIC | Commander, Navy Installations Command |
| CNO | Chief of Naval Operations |
| CO | commanding officer |
| CONUS | continental United States |
| CSA | child sexual abuse |
| CYP | child and youth program |
| DoD | Department of Defense |
| DoDEA | DoD Educational Activity |
| DON | Department of the Navy |
| FAC | family advocacy committee |
| FACAT | family advocacy command assistance team |
| FAO | family advocacy officer |
| FAP | Family Advocacy Program |
| FAPM | Family Advocacy Program manager |
| FFSC | fleet and family support center |
| GMT | general military training |
| HCP | health care provider |
| IDC | Incident Determination Committee |
| ISD | incident status determination |
| LEA | law enforcement agency |
| MOA | memorandum of agreement |
| MOU | memorandum of understanding |
| MPO | military protective order |
| MTF | medical treatment facility |
| NAVPERSCOM | Navy Personnel Command |
| NCIS | Naval Criminal Investigative Service |
| NETC | Naval Education and Training Command |
| NPSP | New Parent Support Program |
| OCONUS | outside the continental United States |
| OJAG | Office of the Judge Advocate General |
| OPNAV | Office of the Chief of Naval Operations |
| OPREP | operational report |
| PCS | permanent change of station |
| PII | personally identifiable information |
| QA | quality assurance |

OPNAVINST 1752.2C
20 May 2020

| | |
|---|---|
| SAPR | sexual assault prevention and response |
| SARC | sexual assault response coordinator |
| SITREP | situation report |
| SOFA | status-of-forces agreement |
| SJA | staff judge advocate |
| SVIP | Special Victim Investigation and Prosecution |
| UCMJ | Uniform Code of Military Justice |
| VA | victim advocate |
| VLC | Victims' Legal Counsel |
| XO | executive officer |

OPNAVINST 1752.2C
20 May 2020

DEFINITIONS

1. <u>Abuser</u>.  An individual adjudicated in a military disciplinary proceeding or civilian criminal proceeding who is found guilty of committing an act of domestic violence or a lesser included offense, as well as an individual alleged to have committed domestic abuse, including domestic violence, who has not had such an allegation adjudicated.

2. <u>Adult</u>.  For the purposes of this instruction, an adult is a person who has either attained the age of 18 years of age, or is married.

3. <u>Advocacy Services</u>.  Services that are offered to victims of domestic abuse with the goal of increasing victim safety and autonomy.  Services must include, but not necessarily be limited to, responding to victim's emergency and ongoing safety concerns and needs; providing information about programs and services available to victims and their children in both the civilian and military communities; and providing victims with ongoing support and referrals.

4. <u>Alleged Abuser</u>.  An individual reported to the FAP for allegedly having committed child abuse or domestic abuse.

5. <u>Certification</u>.  Verification that family readiness services have been internally assessed and meet the standards of quality established by a national accrediting body.

6. <u>Child</u>.  An unmarried person under 18 years of age for whom a parent, guardian, foster parent, caregiver, employee of a residential facility, or any staff person providing out-of-home care is legally responsible.  The term "child" includes a biological child, adopted child, stepchild, foster child, or ward.  The term includes a sponsor's family member (except the sponsor's spouse) of any age who is incapable of self-support because of a mental or physical incapacity, and for whom treatment in a DoD medical treatment program is authorized.

7. <u>Child Abuse</u>.  The physical abuse, sexual abuse, emotional abuse, or neglect of a child by a parent, guardian, foster parent, or by a caregiver, whether the caregiver is intra-familial or extra-familial, under circumstances indicating the child's welfare is harmed or threatened.  Such acts by a sibling, other family member, or other family member must be deemed to be child abuse only when the individual is providing care under express or implied agreement with the parent, guardian, or foster parent.

8. <u>Child Emotional Abuse</u>.  Acts or a pattern of acts, omissions or a pattern of omissions, or passive or passive-aggressive inattention to a child's emotional needs resulting in an adverse effect upon the child's psychological well-being, including intentional berating, disparaging, or other verbally abusive behavior toward the child, and violent acts which may not cause observable physical injury.

OPNAVINST 1752.2C
20 May 2020

9.  Child Neglect.  The negligent treatment of a child through actions or omissions by a parent, guardian, or caretaker, for the child's welfare under circumstances indicating the child's welfare is harmed or threatened to include but is not limited to abandonment, deprivation of basic necessities (nourishment, shelter, clothing, and health care), educational neglect, lack of supervision, medical neglect, or non-organic failure to thrive.

10.  Child Sexual Abuse.  The employment, use, persuasion, inducement, enticement, or coercion of any child to engage in, or assist any other person to engage in, any sexually explicit conduct or simulation of such conduct for the purpose of producing a visual depiction of such conduct; or the rape, and in cases of caretaker or inter-familial relationships, statutory rape, molestation, prostitution, or other form of sexual exploitation of children, or incest with children.

11.  Civilian Protection Order.  For the purposes of this instruction, in implementation of the Armed Forces Domestic Security Act, a civilian protection order includes any injunction or other order issued for the purpose of preventing violent or threatening acts or harassment against, or contact or communication with or physical proximity to, another person.  This includes any temporary or final order issued by a civil and criminal court (other than a support or child custody order issued per State divorce and child custody laws, except to the extent that such an order is entitled to full faith and credit under other Federal law) whether obtained by filing an independent action or as a "pendente lite" order in another proceeding, so long as any civil order was issued in response to a complaint, petition, or motion filed by or on behalf of a person seeking protection.

12.  Clinical Case Management.  The FAP process of providing or coordinating the provision of clinical services as appropriate to the victim, alleged abuser, and family member in each FAP domestic and child abuse incident from entry into until exit from the FAP system.  It includes identifying risk factors; safety planning; conducting and monitoring clinical case assessments; presentation to the IDC; developing and implementing treatment plans and services; completion and maintenance of forms, reports, and records; communication and coordination with relevant agencies and professionals on the case (CCSM); case review and advocacy; case counseling with the individual victim, alleged abuser, and family member as appropriate; other direct services to the victim, alleged abuser, and family members as appropriate; and case transfer or closing.

13.  Clinical Case Staff Meeting (CCSM).  An installation FAP meeting with a minimum of three Tier III privileged clinical service providers, one of whom must be the FAR who will chair the meeting to assist the coordinated delivery of supportive services and clinical treatment in domestic and child abuse cases, as appropriate, by providing clinical consultation directed to ongoing safety planning for the victim; the planning and delivery of supportive services, and clinical treatment as appropriate, for the victim; the planning and delivery of rehabilitative treatment for the alleged abuser; and case management, including risk assessment and ongoing safety monitoring.

OPNAVINST 1752.2C
20 May 2020

14.  <u>Clinical Intervention</u>.  A continuous risk management process that includes identification of risk factors; safety planning; initial clinical assessment; formulation of a clinical treatment plan; clinical treatment grounded in the concepts of assessing readiness for, and motivating behavioral change, and life skills development; periodic assessment of behavior in the treatment setting; and monitoring of behavior and periodic assessment outside of treatment settings.

15.  <u>Control Flag</u>.  The indicator placed on a member's file, including electronic files, in the NAVPERSCOM assignment control system to let detailing personnel know they will require clearance prior to writing PCS orders on an individual.  The flagging process is intended to prevent further stress on the Service member and family members, prevent recurring abuse, and to ensure assignment to a geographic location that has adequate services available.  Control flags are used for both domestic and CSA cases.

16.  <u>Crime of Domestic Violence</u>.  For purposes of this instruction, an offense that has as its factual basis the use or attempted use of physical force, or threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common; by a person who is cohabitating with or has cohabitated with the victim as a spouse, parent, or guardian; or by a person similarly situated to a spouse, parent or guardian of the victims.

17.  <u>Crisis Intervention</u>.  Assistance provided in response to individual crises such as suicide, homicide, sexual assault, loss of life, or similar incidents.  Crisis intervention may be provided to individuals or groups in consultation and coordination with the command responsible for the client or group.

18.  <u>DoD-Sanctioned Activity</u>.  A U.S. Government activity or a non-governmental activity authorized by appropriate DoD officials to perform child care or supervisory functions on DoD controlled property.  The care and supervision of children may be either its primary mission or incidental in carrying out another mission (e.g., medical care).  Examples include CDCs, DoDEA schools, youth activities, school age or latch key programs, family day care providers, and child care activities that may be conducted as part of a chaplain's program, or as part of another morale, welfare, or recreation program.

19.  <u>Domestic Abuse</u>.  Domestic violence or a pattern of behavior resulting in emotional or psychological abuse, economic control, or interference with personal liberty that is directed toward a person who is:

    a.  a current or former spouse;

    b.  a person with whom the abuser shares a child in common; or

    c.  a current or former intimate partner with whom the abuser shares or has shared a common domicile.

OPNAVINST 1752.2C
20 May 2020

20.  <u>Domestic Violence</u>.  An offense under the USC, UCMJ, or State law which involves the use, attempted use, or threatened use of physical force against a person and is committed by a current or former spouse, parent, or guardian of the victim; by a person with whom the victim shares a child in common; by a person who is cohabitating with or has cohabitated with the victim as a spouse, parent, or guardian; or by a person who similarly situated to a spouse, parent, or guardian of the victim.

21.  <u>Duty to Warn</u>.  Mandatory duty for HCPs to report to appropriate LEA when they believe a person may pose a danger to themselves or others.

22.  <u>Educational Neglect</u>.  A type of child neglect including knowingly allowing the child to have extended or frequent absences from school, neglecting to enroll a child in home schooling or public or private education, or preventing the child from attending school for other than justified reasons.

23.  <u>Emotional Abuse</u>.  A type of domestic abuse including acts or threats adversely affecting the psychological well-being of a person, including those intended to intimidate, coerce, or terrorize the spouse or intimate partner.  Such acts and threats include those presenting likely physical injury, property damage or loss, or economic injury.

24.  <u>Extra-familial Child Abuse</u>.  Includes any type of child abuse by strangers or persons in loco parentis (a teacher or other adult responsible for children in place of a parent).

25.  <u>FAC</u>.  The policy-making, coordinating, recommending, and overseeing body for the installation FAP.

26.  <u>FACAT</u>.  A multi-disciplinary team composed of specially trained and experienced individuals who are on-call to provide advice and assistance on cases of child abuse that involve DoD-sanctioned activities.

27.  <u>FAO</u>.  A commander designated official who is responsible for administrative management and effective implementation of the FAP.  The FAO must facilitate the development, oversight, coordination, administration, and evaluation of the FAP.  FAOs are not involved in clinical case intervention management.

28.  <u>Family Advocacy Program (FAP)</u>.  A program designed to address prevention, identification, evaluation, treatment, rehabilitation, follow-up, and reporting of family abuse. FAPs consist of coordinated efforts designed to prevent and intervene in cases of family distress, and to promote healthy family life.

29.  <u>Family Advocacy Program Manager (FAPM)</u>.  A licensed doctoral-level psychologist or other masters level clinical counselor who is clinically privileged under the current DON guidelines, and who serves as the point of contact for identification, rehabilitation or behavioral

OPNAVINST 1752.2C
20 May 2020

counseling, and intervention.  The FAPM will provide recommendations to the regional or installation commander and assist the command in coordinating actions to ensure the safety and protection of victims and witnesses.  The FAPM, in conjunction with the IDC and CCSM, ensures the case status determination, disposition, and management of each reported case.

30.  <u>Family Advocacy Program Victim Advocate (FAP VA)</u>.  A DoD or military employee, a civilian working under a DoD contract, or civilian providing services by way of an MOU between the installation and a local victim advocacy agency.  The FAP VA role is to provide safety planning services and comprehensive assistance and liaison to and for victims of domestic abuse; and to educate personnel on the installation regarding the most effective responses to domestic abuse on behalf of victims and "at-risk" families.

31.  <u>FAR</u>.  A credentialed and privileged provider, who is responsible for implementing and managing the clinical rehabilitative and intervention aspects of the local FAP.

32.  <u>Family Members</u>.  Includes those individuals for whom the member provides medical, financial, and logistical (e.g., housing, food, clothing) support.  This includes, but is not limited to:  spouse, children under the age of 21 (or older, if unmarried and a full-time student; or unmarried, incapable of self-support due to physical or mental incapacity, and dependent upon sponsor for over half of support), or elderly adults, and persons with disabilities.

33.  <u>Family Readiness</u>.  The state of being prepared to effectively navigate the challenges of daily living experienced in the unique context of military service.  Ready individuals and families are knowledgeable about the potential challenges they may face; equipped with the skills to competently function in the face of such challenges; are aware of the supportive resources available to them; and make use of the skills and supports in managing such challenges.

34.  <u>Grievous Bodily Harm</u>.  Serious bodily injury.  It does not include minor injuries, such as a black eye or a bloody nose, but does include fractured or dislocated bones, deep cuts, torn members of the body, serious damage to internal organs, and other serious bodily injuries.

35.  <u>Healthcare Provider (HCP)</u>.  Those individuals who are employed or assigned as healthcare professionals, or are credentialed to provide healthcare services (including clinical social workers), at a military medical or military dental treatment facility, or a military family support center, or who provide such care at a deployed location or in an official capacity.  This term includes military personnel, DoD civilian employees, or DoD contractor personnel.

36.  <u>Incident Determination Committee (IDC)</u>.  A multidisciplinary team of designated individuals working at the installation level, tasked with the evaluation of reports of domestic and child abuse to the FAP to determine whether they meet the relevant criteria for alleged domestic and child abuse for entry into the Service FAP Central Registry of domestic and child abuse reports.

OPNAVINST 1752.2C
20 May 2020

37. Incident Status Determination (ISD).  The IDC decision of whether or not the reported incident meets the relevant criteria for alleged domestic or child abuse for entry into the Service FAP Central Registry of domestic and child abuse reports.

38. Intimate Partner.  The person with whom a Service member shares a child in common, or shares or has shared a common domicile in a domestic relationship.

39. Major Criminal Offense.  An offense punishable under the UCMJ by confinement of a term of more than 1 year, or similarly framed Federal statutes, State, local, or foreign laws or regulations.

40. Major Physical Injury.  This includes brain damage, skull fracture, subdural hemorrhage or hematoma, bone fracture, shaken baby syndrome, dislocations, sprain, internal injury, poisoning, burn, scald, severe cut, laceration, bruise, welt, or any combination thereof, which constitutes a substantial risk to the life or well-being of the victim.

41. Military Protective Order (MPO).  An order to a member prohibiting contact or communication with the protected person(s) and directing that the member take specified actions that support, or are in furtherance of the prohibition.

42. Molestation.  A type of CSA involving fondling or stroking a child's breasts or genitals, oral sex, or attempted penetration of the child's vagina or rectum.

43. Neglect.  The negligent treatment of a person through acts or omissions by an individual responsible for the victim's welfare under circumstances indicating the victim's welfare is harmed or threatened.

44. New Parent Support Program (NPSP).  A standardized secondary prevention program under the FAP that delivers intensive, voluntary strengths based home visitation services designed specifically for expectant parents, and parents of children from birth to 3 years of age, to reduce the risk of child abuse and neglect.

45. Physical Abuse.  The non-accidental use of physical force such as grabbing, pushing, holding, slapping, choking, punching, kicking, sitting or standing upon, lifting and throwing, burning, immersing in hot liquids or pouring hot liquids upon, hitting with an object (such as a belt or electrical cord), and assaulting with a knife, firearm, or other weapon that causes or may cause bodily injury.  Such injuries might include brain damage or skull fractures, subdural hemorrhage or hematoma, bone fractures, dislocations or sprains, internal injury, poisoning, burns or scalds, severe cuts, lacerations, bruises or welts.  An injury does not have to be visible for physical abuse to have occurred.  Does not include discipline administered by a parent or legal guardian to his or her child provided it is reasonable in manner, and moderate in degree and otherwise does not constitute cruelty.

OPNAVINST 1752.2C
20 May 2020

46. <u>Preponderance of the Information</u>.  The information that supports the report as meeting the relevant criteria that define abuse or neglect; requiring entry into the Service FAP Central Registry data base; and is of greater weight or more convincing than the information that indicates that the criteria that define abuse or neglect were not met.  The voting member need not be certain that the information meets the criterion but may vote to "concur" if he or she is only 51 percent sure that it does (i.e., he or she may vote to "concur" even if there is reasonable doubt) as long as the voting member finds that given the information, the abuse or neglect is more likely than not to meet criteria.

47. <u>Reasonable Suspicion</u>.  Any referral for abuse or neglect in which the FAPM, FAP supervisor or FAP clinician believes the incident referral:  1) has sufficient information; 2) represents an act or omission which may support an allegation of or reasonable potential for abuse or neglect; 3) represents an allegation that is more than simply poor judgment (for instance, driving over the speed limit); and/or; 4) is not malicious, harassing or a retaliatory report.  This definition applies to unrestricted reports only.

48. <u>Restricted Reporting</u>.  A process allowing an adult victim of domestic abuse, who is an eligible beneficiary, including OCONUS civilians, and contractors who are eligible beneficiaries, the option of reporting an incident of domestic abuse to a specified individual without initiating the investigative process or notification to the victim's or alleged abuser's commander.

49. <u>Safety Planning</u>.  A process whereby a FAP case manager, clinical provider, and FAP VA, working with a domestic abuse victim, create a plan, tailored to that victim's needs, concerns, and situation, that will help increase the victim's safety and help the victim to prepare for, and potentially avoid, future abuse.

50. <u>Service Member</u>.  Includes any member of a Military Service on active duty or in the Ready Reserve.  This includes members of the Coast Guard only when operating with the Navy.  The term active duty member, when used here, refers to duty when orders specify a period in excess of 30 consecutive days of active duty.

51. <u>Severity Level</u>.  In an incident that met criteria for abuse, a clinical designation indicating level of physical or psychological impact on the victim, or the threat of potential physical or psychological impact on the victim.  Includes consideration of physical injury, psychological harm, fear reaction, psychological distress, and stress related somatic symptoms.

52. <u>Sexual Assault</u>. Sexual assault is generally defined as intentional sexual contact, characterized by use of force, threats, intimidation, abuse of authority, or when the victim does not or cannot consent.  Sexual assault includes rape, and other unwanted sexual contact that is aggravated or abusive, including attempts to commit these acts.  The term used within this instruction includes a broad category of sexual offenses consisting of the following specific UCMJ offenses:  rape, sexual assault, aggravated sexual contact, abusive sexual contact, or attempts to commit these offenses.

OPNAVINST 1752.2C
20 May 2020

53. <u>Special Victim Investigation and Prosecution (SVIP)</u>. A distinct, recognizable group of appropriately skilled professionals, consisting of specially trained and selected military criminal investigation organization investigators, judge advocates, victim witness assistance personnel, and administrative paralegal support personnel, who work collaboratively to investigate allegations of adult sexual assault, domestic violence involving sexual assault or grievous bodily harm, and child abuse involving CSA or aggravated assault with grievous bodily harm; to provide support for the victims of these offenses.

54. <u>Transitional Compensation of Abused Dependents</u>. Transitional compensation is a program that helps alleviate the financial hardship family member's face when they decide to leave an abusive relationship. This program applies to Service members who have been on active duty for more than 30 days and who, after 29 November 1993, have been convicted at a court-martial and sentenced to be separated from active duty for a dependent-abuse offense; administratively separated from active duty when the basis for separation includes a dependent-abuse offense; or administratively separated or convicted and sentenced to be separated from active duty on grounds that do not include a dependent-abuse offense, but have a dependent abuse offense that meets criteria.

55. <u>Unrestricted Reporting</u>. A process allowing a victim of domestic abuse to report an incident using reporting channels that would initiate an investigation, e.g. chain of command, law enforcement or criminal investigative organization, and FAP for clinical intervention.

56. <u>Victim</u>. A person who has suffered direct physical, emotional, or pecuniary harm as a result of the commission of a crime committed in violation of the UCMJ, (or in violation of the law of another jurisdiction if any portion of the investigation is conducted primarily by the DoD components).

57. <u>Victim and Witness Assistance Program</u>. Program that assists victims and witnesses of crimes punishable under the UCMJ from initial contact with the program through investigation, prosecution, and confinement.

OPNAVINST 1752.2C
20 May 2020

APPENDIX D
RECORDS MANAGEMENT, FORMS, AND INFORMATION MANAGEMENT CONTROL

1.    Records Management

    a.    Records created as a result of this instruction, regardless of format or media, must be maintained and dispositioned for the standard subject identification codes 1000 through 13000 series per the records disposition schedules located on the Department of the Navy/Assistant for Administration (DON/AA), Directives and Records Management Division (DRMD) portal page at https://portal.secnav.navy.mil/orgs/DUSNM/DONAA/DRM/Records-and-Information-Management/Approved%20Record%20Schedules/Forms/AllItems.aspx.

    b.    For questions concerning the management of records related to this instruction or the records disposition schedules, please contact the local records manager or the DON/AA DRMD program office.

2.    Forms and Information Management Control

    a.    The forms in paragraphs 2a through 2f are available via the DoD Forms Management Program Web site at:  http://www.esd.whs.mil/Directives/forms/.

        (1) DD Form 2701 Initial Information for Victims and Witnesses of Crime.

        (2) DD Form 2873 Military Protective Order (MPO).

        (3) DD Form 2901 Child Abuse or Domestic Violence Related Fatality Notification.

        (4) DD Form 2910 Victim Reporting Preference Statement.

        (5) DD Form 2951 Initial Report of Suspected Child Sexual Abuse in DoD Operated or Sponsored Out-Of-Home Care Activities.

        (6) DD Form 2967 Domestic Abuse Victim Reporting Option Statement.

    b.    Data collections contained in chapter 3, paragraphs 1 and 17 and chapter 6, paragraph 8 are exempt from information control in line with SECNAV M-5214.1 of December 2005, part IV, subparagraph 7n.